**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

APR - 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOHN F. SULLIVAN                          )
1774 Wainwright Drive                     )
Reston, Virginia  20190                   )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )
                                          )
CENTRAL INTELLIGENCE AGENCY               )
Washington, D.C. 20505                    )
                                          )
            and                           )
                                          )        Case: 1:07-cv-00685
                                          )        Assigned To : Roberts, Richard W.
GENERAL MICHAEL V. HAYDEN                 )        Assign. Date : 4/5/2007
Director, Central Intelligence Agency     )        Description: Sullivan v. CIA
Washington, D.C. 20505                    )
                                          )
            and                           )
                                          )
DOES 1-10                                 )
(Employees of the Central Intelligence    )
Agency, whose exact identity is unknown   )
to Plaintiff at this time and/or classified) )
                                          )
            Defendants.                   )

## COMPLAINT

Plaintiff John F. Sullivan brings this action against defendants Central Intelligence

Agency, General Michael V. Hayden, Director, Central Intelligence Agency, and Does 1-

10, inclusive, jointly and severally, pursuant to the First and Fifth Amendments to the

United States Constitution, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the

Privacy Act, 5 U.S.C. § 552a *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C.

§ 2201, the All Writs Act, 28 U.S.C. § 1651, and the Central Intelligence Agency's

internal regulations and procedures.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552a (g)(1), 702 and 28 U.S.C. §§ 1331, 1346 (b), 2675.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C §§ 552a (g)(5), 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff John F. Sullivan ("Sullivan") was employed by the Central Intelligence Agency from 1968 - 1999. At the time of his retirement, Sullivan was a polygrapher with the CIA. Upon information and belief, Sullivan conducted more polygraph examinations at the CIA than any other polygrapher.

4. Defendant Central Intelligence Agency ("CIA") is an agency of the United States Government as defined by 5 U.S.C. §§ 552a(a)(1), 701.

5. Defendant General Michael V. Hayden became the Director of the Central Intelligence Agency ("DCI") on May 30, 2006. Porter J. Goss was his immediate predecessor having served from September 24, 2004 to May 26, 2006. Upon information and belief, the DCI in office at the time (as well as other unknown senior CIA leadership who report to the DCI) has likely been personally briefed and involved, in his professional capacity, in matters pertaining to Sullivan. The DCI maintains an office within the District of Columbia and, upon information and belief, events pertaining to Sullivan took place within this jurisdiction.

6. Does 1-10 inclusive were at all times described herein, employees of the CIA and were responsible for the actions described *infra*. At all times described herein, Does 1-10

2

inclusive acted both inside and outside the scope of their employment and acted as agents

of each other. At this time Sullivan is unaware of the identities of Does 1-10 and/or the

individuals' identities may be classified.

## FACTUAL BACKGROUND

7. In 2002, Sullivan wrote *Of Spies and Lies: A CIA Lie Detector Remembers
Vietnam (University Press of Kansas, 2002)*.

8. Because of a secrecy agreement with the CIA, Sullivan was required to and did

submit that book to the CIA for review by the Publication Review Board ("PRB"). After

the required complete review and having been informed no classified information was

contained in the book (or that information that was classified was properly excised) the

book was published. Upon information and belief, elements and individuals within the

CIA were not pleased with the publication of Sullivan's book.

9. In early 2004, Sullivan submitted a second manuscript to the PRB for review:

*Gatekeeper: Memoirs of a CIA Polygraph Examiner* (Potomac Books, 2007). Sullivan

did not receive final approval for publication from the PRB until nearly three years later

on or about January 22, 2007. Upon information and belief, certain individuals and

offices within the CIA deliberately contributed to the substantial delay that Sullivan

experienced in this process. The book is scheduled for publication on or about April 10,

2007. This book presents a very critical portrait of the CIA's polygraph program and

several specific polygraphers.

10. In November 2003, Sullivan applied for a position with the Clandestine Service

Reserve Cadre. Also, during this period, Sullivan was offered a position at Raytheon

Company. Both positions required security clearance.

3

11. As part of the process of having his security clearance renewed, Sullivan was required to and did submit to a CIA administered polygraph. Such an examination is unclassified and Sullivan is permitted to discuss what transpired without restriction.

12. During the course of the polygraph examination, which occurred subsequent to the submittal of Sullivan's second manuscript, the examiner failed to follow standard polygraph procedures.

13. Moreover, the polygraph examination failed to comply with CIA policies.

14. The polygraph examiner, Doe 1, intentionally included certain details within his report that CIA policy notes should be excluded. His report also includes out-of-context mild expletive reactions that resulted from the polygrapher intentionally and falsely accusing Sullivan of being deceptive and reporting removal of material without ascertaining if the material was significant or if it had been compromised.

15. The examiner's questions pertained to, and in fact emphasized, the substantive content of Sullivan's second book. Upon further information and belief because the submitted manuscript dealt with the CIA's use of the polygraph, the PRB disseminated the manuscript to the Polygraph Division for comment and it was circulated and discussed within the Division.

16. On March 25, 2004, Sullivan met with a "Security Professional" (Doe 2). At that meeting Sullivan learned of additional false accusations. At the end of that interview, Doe 2 stated "There is something about your book that you're not telling us, and until you do I can't help you." Thereafter, Doe 2 smirked and accused Sullivan of lying. This very clearly implied to Sullivan that he would be a "liar" for as long as he was trying to have this book about the CIA's polygraph program published.

4

17. On or about February 11, 2005, Sullivan received a letter dated, January 28, 2005, denying his request for a security clearance. Upon information and belief, the lengthy delay that Sullivan experienced during security processing is exploited by the CIA as part of a deliberate pattern of practice by the agency to inflict harm on individuals, cause them to withdraw from the process and/or hinder the individual's ability to secure employment.

18. Sullivan timely appealed the denial decision.

19. As part of his administrative appeal, Sullivan was provided an unclassified redacted copy of his investigative file that was compiled in conjunction with Sullivan's security processing. This file, which serves as the basis for the CIA's clearance decision, includes various background investigation reports and can be disseminated by Sullivan without restriction.

20. Upon reviewing the investigative documents Sullivan noted numerous factual inaccuracies and omissions were present. For example, interviews with individuals who served as favorable references for Sullivan were missing. Moreover, the file noted Sullivan's wife was a foreign national whom he had met in Vietnam. Sullivan's wife's birthplace, in fact, was Laredo, Texas. This fact was known to the CIA because Sullivan's wife had worked for the CIA for many years, and he had provided his wife's birthplace and date of birth in his SF-86.

21. Moreover, standard procedure in reinvestigations of individuals for a security clearance includes a personal interview of the applicant by the background investigator. The Background Investigator, Doe 3, never interviewed Sullivan.

22. In approximately late June 2005, the CIA sent Sullivan an unclassified letter informing him that the decision to deny him a security clearance was reversed. Notwithstanding this fact all the false derogatory information the CIA claimed applied to Sullivan in the first place continues to be maintained by the CIA and can and will be used again whenever future security clearance proceedings are initiated.

23. Upon information and belief, before a security clearance denial is reversed, various levels of senior CIA management personnel are involved in the review process.

24. In Sullivan's case, the CIA reversed the denial decision without so much as a hearing, an interview, or utilization of any of the other formal steps normally employed in such appeals. Upon information and belief, it is extremely rare, and almost statistically unprecedented, that the CIA reverses its position regarding factual determinations underlying a security clearance. To effectuate such a reversal on the filing of an appeal alone, is not only unique, but also indicates that the initial determination was seriously flawed.

25. Upon information and belief, the reversal of Sullivan's unfavorable security determination would not have occurred under these rare circumstances had his performance on the polygraph been as had been represented, i.e., had the "security professional", Doe 2, actually believed that Sullivan was a liar, or if the stated reasoning had any factual basis. Upon information and belief, the CIA's action to initially deny Sullivan's clearance was nothing more than retaliation for the exercising of his First Amendment rights.

26. As a result of the intentional delays associated with the granting of Sullivan's security clearance, the positions for which he had applied or were offered to him were

lost. In fact, because he had been wrongfully denied his security clearance in retaliation for exercising his First Amendment rights, Sullivan was unable to attend job fairs that required a security clearance for several months.

**FIRST CAUSE OF ACTION**
**(FIFTH AMENDMENT LIBERTY INTEREST)**

27. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

28. Defendants, jointly and severally, engaged in the conduct described above in order to illegally and improperly delay or deprive Sullivan of his security clearance and in so doing to:

        a. deny him the employment he was seeking at that time;

        b. impugn his reputation during this period so as to seriously damage his standing and associations in the community, particularly the Intelligence Community and the entities associated therewith;

        c. foreclose his freedom to take advantage of employment opportunities during this time by excluding him from a range of government and private enterprise employment opportunities;

        d. preclude him from continuing in his chosen career while in this period of time.

29. As a result of the actions of one or more of the defendants, Sullivan lost the positions for which he applied, lost the opportunity to obtain other positions of employment, had his reputation in the community impugned which has resulted in foreclosing his freedom to take advantage of a range of employment opportunities and has precluded him from pursing his chosen career as a polygrapher/security analyst.

30. As a result of the actions of one or more of the defendants, Sullivan has suffered loss of freedom, mental anguish, emotional pain and suffering and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
## (RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHT)

31. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

32. Upon information and belief, several or all of the defendants wanted to discourage him from publishing his second book, *Gatekeeper: Memoirs of a CIA Polygraph Examiner*, because the book is critical of the Polygraph Division and other security personnel at the CIA.

33. Although Sullivan agreed to have his writings subjected to the formal review procedures established by the CIA, he did not agree to the unauthorized procedures described above and he did not agree to be subjected to the attempted intimidation regarding his writings as described herein. Upon information and belief the CIA took advantage of what would have otherwise been normal security proceedings to retaliate against Sullivan based on the exercise of his First Amendment rights.

34. As a result of the actions of one or more of the defendants, Sullivan suffered mental anguish, emotional pain and suffering and loss of enjoyment of life.

## THIRD CAUSE OF ACTION
## (PRIVACY ACT)

35. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

36. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Sullivan.

37. The CIA failed to maintain records concerning Sullivan "with such accuracy, relevance, timeliness, and completeness" as would have been necessary "to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to" Sullivan that should have been "made on the basis of said record and consequently determinations were made which" were adverse to Sullivan thereby violating 5 U.S.C. § 552a(e)(5).

38. The adverse actions included, but were not limited to, having to undergo false security proceedings, concocted adverse security decisions, and an initial unfavorable security clearance determination,

39. On one or more occasions the CIA, and one or more of the individual defendants, has intentionally interfered with Sullivan's efforts to obtain employment in his chosen field of profession with government contractors, particularly by sabotaging the granting of his security clearance.

40. In failing to properly maintain said records, defendant Central Intelligence Agency violated the provisions or 5 U.S.C. § 552a (g)(1)(C).

41. Upon information and belief, the CIA continues to maintain records pertaining to Sullivan in violation of 5 U.S.C. § 552a (g)(1)(C).

42. As a result of the actions of the CIA and its employees, Sullivan lost employment positions for which he applied, lost the opportunity to obtain other positions of employment, has had his reputation in the community impugned which has resulted in foreclosing his freedom to take advantage of a range of employment opportunities and has precluded him from pursing his chosen career as a polygrapher/security analyst.

9

43. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

44. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Sullivan's privacy rights.

45. As a result of one or more of the defendants' violations of the Privacy Act, Sullivan has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

### FOURTH CAUSE OF ACTION
### (PRIVACY ACT)

46. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

47. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Sullivan.

48. On one or more occasions the CIA, and one or more of the individual defendants, has intentionally interfered with Sullivan's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed within his System of Records that would preclude the granting of a security clearance.

49. Upon information and belief, because of the actions of one or more of the defendants government contractors either withdrew an existing employment offer or decided not to offer employment to Sullivan.

50. The CIA and one or more of the individual defendants failed to maintain Sullivan's records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to denote an accurate clearance status with the CIA.

51. The CIA willfully and/or intentionally retaliated against Sullivan in a manner that was derogatory to his reputation. Based on the CIA's actions and decisions, it appears Sullivan is or may be constructively or actually precluded from participating in classified projects conducted by the federal government thereby losing a right, benefit, privilege, or opportunity that was available to him under Federal law. The CIA compiled information and arrived at conclusions that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to Sullivan.

52. The CIA's failure to collect information directly from Sullivan resulted in adverse determinations concerning his rights, benefits, privileges, or opportunities in violation of 5 U.S.C. § 552a(e)(2) and (g)(1(C).

53. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

54. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Sullivan's privacy rights.

55. As a result of one or more of the defendants' violations of the Privacy Act, Sullivan has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## FIFTH CAUSE OF ACTION
## (PRIVACY ACT)

56. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

57. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Sullivan.

58. On one or more occasions since his retirement, the CIA, and one or more of the individual defendants, has intentionally interfered with Sullivan's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

59. Although no legitimate security clearance issues existed that would cause a problem in Sullivan attaining access to classified information government contractors were told differently thereby causing them to either never offer or withdraw an existing employment offer.

60. Prior to disseminating records about Sullivan to persons other than an agency, the CIA and one or more of the individual defendants failed to make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

61. The CIA and one or more of the individual defendants has already disseminated inaccurate information from Sullivan's Privacy Act System of Records to one ore more government contractors that resulted in interfering with Sullivan's hiring due to alleged security concerns. The actions by the CIA violated 5 U.S.C. § 552a(e)(6).

62. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

63. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Sullivan's privacy rights.

64. As a result of one or more of the defendants' violations of the Privacy Act, Sullivan has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## SIXTH CAUSE OF ACTION
## (NAME CLEARING HEARING)

65. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 26 above, inclusive.

66. Sullivan was subjected to security proceedings under false pretenses and in retaliation to the exercising of his First Amendment rights. As a result the CIA falsely accused him of failing a polygraph examination and initially denied him a clearance. Although this decision was later overturned known false and derogatory information continues to be maintained by the CIA despite his attempts to correct the information.

67. On one or more occasions since his retirement the CIA, and one or more of the individual defendants, has intentionally interfered with Sullivan's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

13

68. Although no legitimate security clearance issue existed, the CIA's actions caused one or more government contractors to either never offer or withdraw an existing employment offer.

69. The effect of the CIA's actions is to stigmatize and harm Sullivan and, as a practical matter, serves to continue to deny/revoke his security clearance without affording him any administrative rights as required by law to challenge such a decision.

70. The CIA is not permitted, notwithstanding any contractual language to the contrary, to violate Sullivan's Constitutional rights, as set forth by the Constitution of the United States.

71. The CIA, through the actions of its officials and employees including Does 1-10 conspired to seriously damage or destroy Sullivan's good name.

72. As no opportunity was ever provided Sullivan for an opportunity to refute any allegations made against him, especially those that serve as a practical matter to deny/revoke his security clearance, or clear his name, he is entitled to a name-clearing hearing and a written decision arising there from.

73. Sullivan has suffered actual adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

WHEREFORE, John Sullivan requests that the Court award him the following relief:

(1) Declare and find that the defendants violated the Administrative Procedure Act, its internal regulations and/or statutes governing its conduct involving Sullivan, and award any damages that are deserved there from;

(2) Declare and find that the defendants violated the Privacy Act by failing to collect information directly from Sullivan, failed to maintain accurate, relevant, timely or complete records pertaining to Sullivan and/or failed to make reasonable efforts to assure that such records regarding Sullivan are accurate, complete, timely and relevant prior to dissemination, and award any damages that are deserved there from;

(3) Declare and find that the defendants violated Sullivan's liberty interest under the Fifth Amendment to the Constitution, and award any damages that are deserved there from;

(4) Declare and find that the defendants violated Sullivan's interests under the First Amendment to the Constitution, and award any damages that are deserved there from;

(5) Declare and find that the CIA intentionally misuses the security clearance process as a retaliatory tool;

(6) Award any damages caused by the CIA's failure to timely process Sullivan's manuscript and permit publication;

(7) Award any damages caused by CIA's retaliatory behavior in initially denying him a security clearance and/or continually maintaining and disseminating false information to defense contractors;

(8) Invoke its equitable powers to expunge all records or information that is inaccurate, derogatory or infringes upon Sullivan's express or implied constitutional or statutory rights;

(9) Refer those CIA officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

15

(10) Award Sullivan the costs of the action and reasonable attorney fees under the

Equal Access to Justice Act or any other applicable law; and

(11) grant such other relief as the Court may deem just and proper.

Date:   April 5, 2007

Respectfully submitted,

Mark S. Zaid, Esq.
DC Bar #440532
Mark S. Zaid, P.C.
1920 N Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 454-2809
ZaidMS@aol.com

Of Counsel:
Alan J. Cilman, Esq.
Virginia State Bar #13066
4160 Chain Bridge Road
Fairfax, Virginia 22030
(703) 385-7300

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I. (a) PLAINTIFFS

John Sullivan

## DEFENDANTS

Central Intelligence Agency; General Michael V. Hayden; Does 1 - 10

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF      Fairfax
(EXCEPT IN U.S. PLAINTIFF CASES)      88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark S. Zaid, Esq.
1920 N Street, N.W., Suite 300
Washington, D.C. 20036
(202) 454-2809

Case: 1:07-cv-00685
Assigned To : Roberts, Richard W.
Assign. Date : 4/5/2007
Description: Sullivan v. CIA

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- O 3 Federal Question (U.S. Government Not a Party)
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### O A. Antitrust

- ☐ 410 Antitrust

### O B. Personal Injury/ Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### O C. Administrative Agency Review

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### O D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### O E. General Civil (Other)    OR    O F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| | | | |
|---|---|---|---|
| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| | | | |
|---|---|---|---|
| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities- Employment<br>☐ 446 Americans w/Disabilities- Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Retaliation for exercising First Amendment rights, Fifth Amendment, Administrative Procedure Act, 5 USC 701 et seq, Privacy Act, 5 USC 552a et seq.

| | | |
|---|---|---|
| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ Check YES only if demanded in complaint<br>JURY DEMAND:    YES ☐  NO ☒ |
| **VIII. RELATED CASE(S) IF ANY** | (See instruction)    YES ☐    NO ☒ | If yes, please complete related case form. |

DATE 4/5/07    SIGNATURE OF ATTORNEY OF RECORD  *Mark S. Zaid*

J C

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.