## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

defendants the Central Intelligence Agency and defendant General Michael V. Hayden

respectfully move this Court to dismiss this action for lack of subject matter jurisdiction and

failure to state a claim on which relief can be granted. The grounds in support of this motion are

set out more fully in the annexed memorandum.

Dated: August 31, 2007                    Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          JEFFREY A. TAYLOR
                                          United States Attorney

                                          JOHN TYLER
                                          Senior Trial Counsel


                                           /s/ Peter Bryce                        

                                          PETER BRYCE (NY and IL Bars)
                                          Trial Attorney

                                          United States Department of Justice
                                          Civil Division, Rm. 7308
                                          20 Massachusetts Ave, NW
                                          Washington, D.C.  20530
                                          Telephone:  (202) 616-8335
                                          Fax:  (202) 616-8470
                                          E-mail: Peter.Bryce@usdoj.gov

                                          Counsel for Federal Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff John F. Sullivan ("plaintiff") brings several Privacy Act and constitutional

claims against the Central Intelligence Agency and its Director, General Michael V. Hayden

(collectively, the "CIA" or "defendants").[1]  In particular, plaintiff claims that the agency

wrongfully denied him a security clearance in order to discourage him from publishing a book

that he had written and submitted to the CIA's Publication Review Board.  Although the CIA

---

[1]  Since it does not appear that any of the Doe defendants have been identified or served
with process, this motion is filed on behalf of the CIA and defendant General Michael V.
Hayden, the Director of the Central Intelligence Agency.

approved plaintiff's book for publication, and reversed its initial security clearance denial on direct administrative appeal, plaintiff nonetheless asks this Court to award equitable and monetary relief for claimed "injuries" sustained as a result of the CIA's actions. Plaintiff's claims should be dismissed on various jurisdictional and substantive grounds.

Plaintiff's Privacy Act claims are predicated on perceived harms arising from the agency's denial of plaintiff's request for a security clearance, which was reversed by the agency on direct appeal well over two years ago. Under the Supreme Court's decision in <u>Department of Navy v. Egan</u>, this Court lacks jurisdiction over the Privacy Act claims because they would require the Court to engage in an improper review of the merits of the agency's initial security clearance decision. Plaintiff's Privacy Act claims are also time-barred under the applicable two-year statute of limitations because plaintiff knew or should have known about any alleged deficiencies in his records more than two years before filing suit. Finally, these claims must be dismissed because plaintiff has not alleged any actionable conduct under the Privacy Act.

Plaintiff's constitutional claims also fail. At the outset, his money damages claims for purported constitutional violations must be dismissed for lack of jurisdiction because he has failed to identify any applicable waiver of sovereign immunity. Plaintiff also seeks declaratory relief under the First Amendment, claiming that the CIA used its prepublication review process and security clearance proceedings to intimidate him and discourage him from publishing his book about the CIA. However, plaintiff lacks standing under the Constitution to assert this claim for prospective relief because he has not alleged any real and immediate threat that he will be subjected to such illegality again in the future. In any event, plaintiff has failed to state a First Amendment retaliation claim because he does not allege any actionable retaliatory conduct and

because he cannot allege that such conduct had any affect on his speech.

Finally, plaintiff's Due Process liberty interest claim based on the agency's initial denial of his request for a security clearance must also be dismissed. Plaintiff has not alleged any cognizable infringement of his liberty interests. Nor has he identified any deficiency in the process afforded him.

## FACTUAL BACKGROUND[2]

Plaintiff worked for the CIA from 1968 until 1999, when he retired from his job as a polygrapher. Compl. ¶ 3. In 2004, pursuant to a secrecy agreement, plaintiff initiated a manuscript review process with the CIA's Publication Review Board ("PRB") whereby plaintiff sought approval to publish a book he had written: Gatekeeper: Memoirs of a CIA Polygraph Examiner (Potomac Books, 2007). Compl. ¶¶ 8-9. The PRB reviewed the manuscript and approved publication in January 2007. Compl. ¶ 9. As of the filing of the complaint on April 5, 2007, the book was scheduled to be published on April 10, 2007, Compl. ¶ 9, and it has in fact now been published.[3]

Prior to initiating the manuscript review process, plaintiff also began seeking new employment. In November 2003, plaintiff applied for a position with the Clandestine Reserve Cadre. Compl. ¶ 10. Also, during this period, plaintiff was offered a position at Raytheon

---

[2] While defendants do not concede any of plaintiffs' allegations, they are assumed to be true for purposes of this Motion to Dismiss.

[3] The Court may take judicial notice of the fact of publication. See, e.g., Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management L.P., 435 F.3d 396, 401 n. 15 (3d Cir. 2006) (court may take judicial notice of published newspaper articles); In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 425 n. 15 (S.D.N.Y. 2003) (same).

Company.  Id.  These positions required a security clearance.  Id.  As part of the process of

obtaining a security clearance from the CIA, plaintiff submitted to a polygraph examination

administered by the CIA.  Compl. ¶ 11.  In addition, on March 25, 2004, plaintiff met with a

"Security Professional" for an interview.  Compl. ¶ 16.

On or about February 11, 2005, plaintiff received a letter dated January 28, 2005,

denying his request for a security clearance.  Compl. ¶ 17.  The denial letter, which plaintiff

incorporates by reference into the complaint, explained that the agency's decision was based on

plaintiff's security violations and personal conduct.[4]  Ex. A to Tormey Decl.  In particular, the

CIA explained that plaintiff had admitted to removing various classified documents from the

CIA when he retired in 1999, and it also cited his conduct during the polygraph examination,

including plaintiff's hostile behavior and use of profanity in the second testing session.  Id.  The

letter further explained that defendant could seek review of the agency's decision, and provided

information and instructions on the process for doing so.  Id.

Plaintiff thereafter timely appealed the initial security clearance denial.  Compl. ¶ 18-19.

---

[4]  The CIA's denial of plaintiff's request for a security clearance and plaintiff's
subsequent appeal of that denial are referenced in the complaint and are central to plaintiff's
claims.  As a result, the CIA's denial letter and plaintiff's submissions on appeal can be
considered in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) without converting it
into a motion for summary judgment.  See, e.g., Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d
182, 186 (D.D.C. 2001) ("[W]here a document is referred to in the complaint and is central to
plaintiff's claim, such a document attached to the motion papers may be considered without
converting the motion to one for summary judgment."); Kaempe v. Myers, 367 F.3d 958, 965
(D.C. Cir. 2004) (documents may be considered on motion to dismiss because they are "referred
to in the complaint and are integral to Kaempe's conversion claim.").  Of course, on a motion
under Fed. R. Civ. P. 12(b)(1), the Court may always refer to materials outside the complaint.
Brady Campaign v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004).

4

His appellate submissions, which are also incorporated by reference in the complaint,[5] include a letter dated February 15, 2005, in which he enumerated and discussed several reasons why he felt the initial security clearance decision should be reconsidered.  See Ex. B to Tormey Decl. As part of the appeal process, the CIA provided plaintiff with the unclassified redacted copy of the investigative file compiled in conjunction with his security processing, including various background investigation reports.  Compl. ¶ 19.  Plaintiff reviewed the information in his file for accuracy and completeness.  Compl. ¶ 20.  On March 15, 2005, in another submission in support of his appeal, plaintiff proffered additional explanation and argument relating to this investigative file.  See Ex. C to Tormey Decl.

Shortly thereafter, the CIA decided to reverse its initial decision.  Compl. ¶¶ 22, 24.  In late June 2005, the CIA sent plaintiff an unclassified letter informing him that the initial decision to deny him a security clearance had been reversed.  Compl. ¶ 22.

### ARGUMENT

## I.    Plaintiff's Privacy Act Claims Must Be Dismissed

Plaintiff's Privacy Act claims seek money damages for claimed injuries arising out of the CIA's now reversed security clearance denial.  In particular, Counts III and IV assert the CIA violated the Act, 5 U.S.C. § 552a(g)(1)(C), by failing to maintain records with sufficient accuracy, relevance, timeliness, and completeness, and that as a result plaintiff suffered an "initial unfavorable security clearance determination" and "is or may be constructively or actually precluded from participating in classified projects conducted by the federal

---

[5] See supra note 4.

5

government."[6]  Compl. ¶¶ 37-38, 50-51.  In addition, Count V alleges that the CIA wrongfully

disseminated inaccurate records, see 5 U.S.C. § 552a(e)(6), by telling unspecified government

contractors that there were "issues" relating to plaintiff's security clearance, "thereby causing

them to either never offer [sic] or withdraw an existing offer."  Compl. ¶¶ 59-61.

### A.    The Court Lacks Jurisdiction Over Plaintiff's Privacy Act Claims

As noted, plaintiff's claimed Privacy Act injuries arise out of the CIA's allegedly

improper initial denial of his request for a security clearance.  E.g., Compl. ¶ 26 (asserting that as

a result of delays associated with granting of his security clearance, the positions for which he

had applied or were offered to him were lost, and that he was unable to attend job fairs for

several months); ¶¶ 38, 39 (alleging the CIA violated the Privacy Act "by sabotaging the

granting of his security clearance"); ¶ 51 (asserting that as a result of the CIA's actions, plaintiff

"is or may be constructively or actually precluded from participating in classified projects

conducted by the federal government"); ¶ 59 (asserting that the CIA inaccurately informed

government contractors about security clearance problems).  Because these claims would require

---

[6]  Count IV contains a sentence that suggests that he is also attempting to rely on 5 U.S.C. § 552a(e)(2) (requiring agencies that maintain a system of records to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs").  The complaint, however, fails to include any allegations whatsoever that could support such a claim.  To the contrary, it does not allege that information was collected from anyone other than plaintiff.  The only allegations relating to information collection at all deal exclusively with information collected from plaintiff.  See Compl. ¶¶ 11-16.  In the absence of any alleged instance in which the CIA failed to collect information directly from plaintiff, there are, of course, no allegations addressing the Act's "practicability" standard, the nature of the improperly collected information, how the failure harmed plaintiff or resulted in an adverse determination, or how the alleged failure was sufficiently willful or intentional to warrant money damages under the Act.  See, e.g., Hubbard v. U.S. E.P.A. Adm'r, 809 F.2d 1 n. 8 (D.C. Cir. 1986) (summarily rejecting a § 552a(e)(2) claim where allegations were more substantial than those alleged here).

the Court to evaluate the merits of the agency's intial security clearance decision, they must be dismissed for lack of jurisdiction under Department of Navy v. Egan, 484 U.S. 518 (1988).

It is well-settled that courts and other "nonexpert" bodies outside the Executive Branch have neither the competence nor the authority under the Constitution to review the substance of an agency's security clearance decision. See, e.g., Egan, 484 U.S. 518; Ryan v. Reno, 168 F.3d 520, 523 (D.C. Cir. 1999). That decision is a "sensitive and inherently discretionary judgment call" and "is committed by law to the appropriate agency of the Executive Branch." Egan, 484 U.S. at 528. As the Supreme Court explained in Egan:

> For "reasons ... too obvious to call for enlarged discussion," CIA v. Sims, 471 U.S. 159, 170, 105 S.Ct. 1881, 1888, 85 L.Ed.2d 173 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

See id. at 529. See also, e.g., Ryan, 168 F.3d at 523 (Egan bars review of security clearance decisions by a non-expert body, "whether administrative or judicial").

This jurisdictional bar precludes otherwise valid statutory claims that would call into question the merits of an agency's security clearance determination. In Ryan, for example, the D.C. Circuit held that "employment actions based on denial of security clearance are not subject to judicial review, *including under Title VII*." Id. (emphasis added). Such Title VII claims necessarily call into question the merits of the agency's security clearance decision because they require the court to assess the validity of the agency's proffered non-discriminatory reasons for the denial or revocation. See id. "Because the district court" thus "could not proceed with the appellants' discrimination action without reviewing the merits of DOJ's decision not to grant a

clearance, the court was foreclosed from proceeding at all." Id. at 524. See also, e.g., Weber v. United States, 209 F.3d 756, 759 (D.C. Cir. 2000) (an adverse decision on an issue of security clearance is not subject to review under the whistleblower protection provisions of the Civil Service Reform Act); United States Info. Agency v. Arc, 905 F.2d 389, 395-97 (D.C. Cir. 1990) (Foreign Service Act did not give the Foreign Service Grievance Board jurisdiction to review a decision of a security program manager to withdraw plaintiff from overseas postings; nor did the court have jurisdiction under the Administrative Procedure Act to review the decision); Beattie v. Boeing Co., 43 F.3d 559, 566 (10th Cir. 1994) (merits of security clearance decisions not subject to judicial review, thus precluding Bivens constitutional tort claim); Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir. 1992) (individual security classification determinations not subject to judicial review for alleged violations of Rehabilitation Act of 1973).

Plaintiff's Privacy Act claims are clearly barred by this authority. Indeed, the jurisdictional concerns at the heart of Egan are particularly acute in this case because of the nature of plaintiff's Privacy Act claims. As discussed below, see Part I.C, the complaint does not even attempt to identify any actionable deficiencies in the *records* underlying the CIA's security clearance decision, as would a properly alleged Privacy Act claim. Instead, plaintiff seeks to invoke the Privacy Act to to challenge the decision itself. See, e.g., Compl. ¶ 24 (asserting that the CIA's "initial determination was seriously flawed"); ¶ 26 (alleging that plaintiff was "wrongfully denied his security clearance"); ¶ 51 (noting that the CIA "compiled information and arrived at *conclusions* that were irrelevant, false, malicious and defamatory, incomplete, inaccurate, and untimely as to Sullivan") (emphasis added); ¶ 59 (asserting that no "legitimate" security clearance issues existed that would cause a problem in granting a security

8

clearance).  Plaintiff's Privacy Act claims thus reflect a direct, and uniquely intrusive, challenge to the "sensitive and inherently discretionary judgment call" that the Constitution commits to the expert discretion of the Executive Branch.  Egan, 484 U.S. at 528.

Moreover, even if plaintiff had properly alleged his Privacy Act claims, they would still require the sort of substantive review prohibited by Egan.  As noted, plaintiff's claimed Privacy Act injuries allegedly arise from the CIA's now-reversed security clearance denial.  To recover money damages on his various accuracy claims, therefore, plaintiff would have to show, inter alia, that the denial was *caused by* inaccuracies in the CIA's records pertaining to him.  See, e.g., Hubbard v. U.S. E.P.A. Adm'r, 809 F.2d 1, 4-5 (D.C. Cir. 1986); Reuber v. United States, 829 F.2d 133, 140-41 (D.C. Cir. 1987).  Obviously, the Court cannot decide whether the CIA's security clearance denial resulted from inaccurate records without assessing the validity of the denial itself.  For example, plaintiff's claims would require the Court to ascertain whether the security clearance denial was based upon inaccuracies in plaintiff's records, or instead upon the CIA's stated grounds for the denial, namely, plaintiff's admissions that he improperly removed classified documents from the CIA when he retired in 1999, and his conduct during the examination process.  This sort of review is precisely what cases such as Egan and Ryan prohibit.  See, e.g., Ryan, 168 F.3d at 524; Weber, 209 F.3d at 759.  Accordingly, plaintiff's Privacy Act claims must be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

### B.    Plaintiff's Privacy Act Claims Are Time-Barred

Plaintiff's Privacy Act claims are also time-barred under the Privacy Act's two-year statute of limitations.  Under the Privacy Act, an individual must file a civil action "within two years from the date on which the cause of action arises."  5 U.S.C. § 552a(g)(5).  "A cause of

action arises under the Privacy Act at the time that (1) an error was made in maintaining

plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had

reason to know of the error."  Mitchell v. Bureau of Prisons, 2005 WL 3275803 (D.D.C. 2005)

(Roberts, J.) (quoting Szymanski v. United States Parole Comm'n, 870 F. Supp. 377, 378

(D.D.C. 1994)).  "The critical issue for determining whether plaintiff's action is barred by §

552a(g)(5) is the time at which the plaintiff first knew or had reason to know that allegedly

inaccurate records were being maintained."  Id. (citation omitted)).

Plaintiff's Privacy Act claims are clearly time-barred under these standards.  Although

plaintiff has completely failed to identify any actionable inaccuracies in his records, see Part I.C,

his complaint alleges (albeit in conclusory fashion) that the agency maintained and disseminated

inaccurate records bearing on his security clearance.  Compl. ¶¶ 37-39, 50-52, 58-60.  According

to the allegations in the complaint, plaintiff learned of the security clearance denial on February

11, 2005 – more than two years before plaintiff filed suit on April 5, 2007.  Compl. ¶ 17

(alleging that plaintiff received on February 11, 2005 the denial letter dated January 28, 2005).

Since plaintiff claims that "no legitimate security clearance issues existed that would cause a

problem in . . . attaining access to classified information," Compl. ¶ 59, plaintiff should have

known about purported errors at that time, and his Privacy Act claims are thus time-barred under

the two-year statute of limitations.  See 5 U.S.C. § 552a(g)(5).

Plaintiff does not suggest any reason why he could not have known about any actionable

inaccuracies at the time of the initial security clearance denial, but even if he were to do so, his

Privacy Act claims would still be time-barred.  The complaint specifically alleges: (1) that

plaintiff timely appealed the agency's security clearance denial, Compl. ¶ 18, (2) that as part of

that process, the CIA provided him with the unclassified copy of his "investigative file," which was "compiled in conjunction with [plaintiff's] security processing," Compl. ¶ 19, and (3) that he reviewed the documents in this file and noted "numerous factual inaccuracies and omissions," Compl. ¶ 20.[7]  Moreover, plaintiff's own appeal papers, which are incorporated by reference into the complaint, see supra n. 4, irrefutably demonstrate that he had received and reviewed this information *before* April 5, 2005, and thus that he knew about any purported inaccuracies more than two years before filing suit.  See Ex. C to Tormey Decl. (March 15, 2005 letter raising questions about the information in his file).  See also Ex. B to Tormey Decl. (February 15, 2005 letter challenging the stated basis for the security clearance denial and claiming that plaintiff has lost money as a result of the denial).

### C.    Plaintiff Has Failed To State A Privacy Act Claim

In any event, even if the Court did not lack jurisdiction, and even if the Privacy Act claims were not time-barred, they would still have to be dismissed because plaintiff has failed to allege any actionable conduct under the Privacy Act.  "It is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'" Mueller v. Winter, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (citation omitted).  In particular, the Act is intended to remedy "factual or historical errors," and is not a vehicle for addressing "the *judgments* of federal officials ... reflected in records maintained by federal agencies." Kleiman v. Dep't of Energy, 956 F.2d 335, 337-38 (D.C. Cir.1992)  (emphasis in original) (citation and internal formatting omitted)).  Accordingly, "a complaint that is not about

---

[7]  As discussed further below, however, the complaint does not actually identify any cognizable inaccuracies in plaintiff's records.

the accuracy of . . . records, but about the underlying decision they reflect" is not cognizable

under the Privacy Act.  Levant v. Roche, 384 F. Supp. 2d 262, 270 (D.D.C. 2005) (dismissing

Privacy Act claims under Fed. R. Civ. P. 12(b)(6)).  See also Doyon v. U.S. Dept. of Justice, 304

F. Supp. 2d 32 (D.D.C. 2004) (same).

 As the complaint in this case repeatedly makes clear, plaintiff's Privacy Act claims are in

fact challenges to the CIA's initial security clearance denial, and not to the historical accuracy of

any records underlying that decision.  For example, plaintiff asserts, without elaboration, that the

CIA failed to maintain his records with the accuracy "necessary to denote an accurate clearance

status with the CIA."  Compl. ¶ 50.  Plaintiff does not dispute, however, the historical fact of the

CIA's initial security clearance denial (or its subsequent reversal of that denial).  Compl. ¶ 17.

Instead, the gravamen of his complaint is that the denial *itself* was incorrect.  See, e.g., Compl. ¶

24 (asserting that the CIA's "initial determination was seriously flawed"); ¶ 26 (alleging that

plaintiff was "wrongfully denied his security clearance"); ¶ 51 (noting that the CIA "compiled

information and arrived at *conclusions* that were irrelevant, false, malicious and defamatory,

incomplete, inaccurate, and untimely as to Sullivan") (emphasis added); ¶ 59 (asserting that no

"legitimate" security clearance issues existed that would cause a problem in granting a security

clearance); ¶ 39 (alleging that the CIA "sabotag[ed] the granting of his security clearance") ¶¶

48, 58 ("impeding the transfer of his security clearance").  "[S]uch 'error' is not the stuff of

which Privacy Act suits are made."  Kleinman, 956 F.2d at 337.

 Indeed, plaintiff fails to identify *any* actionable inaccuracies in his records, even though

he admits to having reviewed the unclassified investigative file compiled during his security

proceedings.  Compl. ¶ 20.  Most of plaintiff's allegations are simply challenges to the

*procedure* used in his security clearance proceedings, not to the accuracy of any records compiled.[8]  See Compl. ¶ 14 (polygraph examiner included in his report details which "CIA policy" states should be excluded); ¶¶ 16, 25 (in personal interview with "security professional," security professional "smirked" at plaintiff and accused him of lying); ¶ 21 (CIA failed to have a "background investigator" interview plaintiff); ¶ 20 (CIA failed to interview plaintiff's favorable references).  Again, such allegations are not cognizable under the Privacy Act.  E.g., Bernard v. Department of Defense, 362 F. Supp. 2d 272, 281 (D.D.C. 2005) (plaintiff's challenges to the procedure used to revoke his security clearance not actionable under Privacy Act because they sought to invalidate the security clearance decision and did not identify factual or historical error in plaintiff's records).

## II.    PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED

Plaintiff's constitutional claims under the First Amendment (Count II) and Due Process Clause of the Fifth Amendment (Counts I and VI) must also be dismissed.

### A.    The Court Lacks Jurisdiction To Award Money Damages For Asserted Constitutional Violations

As a preliminary matter, plaintiff's money damages claims based on alleged

---

[8]  The complaint contains only one arguable allegation of factual or historical error. See Compl. ¶ 20 (asserting that plaintiff's "file" inaccurately noted that plaintiff's wife was "a foreign national whom [plaintiff] had met in Vietnam").  This alleged "inaccuracy," however, could not support plaintiff's money damages claims because plaintiff does not suggest that it had anything whatsoever to do with the security clearance denial.  See Hubbard, 809 F.2d at 4-5 (adverse determination must be "proximately caused" by inaccuracy).  In any event, it is clear from plaintiff's appeal submissions, see supra n. 4, that the statement about plaintiff's wife is simply a record of what one of plaintiff's references said during an interview with the CIA. There is no allegation that the CIA inaccurately recorded what the interviewee said, and in any event, plaintiff's complaint makes clear that plaintiff's records (i.e., his SF-86) contain the correct information about plaintiff's wife.  Compl. ¶ 20.

constitutional violations must be dismissed for lack of jurisdiction because plaintiff has failed to identify any applicable waiver of sovereign immunity.  It is axiomatic that absent a waiver of sovereign immunity, a district court lacks jurisdiction over claims against the federal government.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  The "terms of [the government's] consent to be sued in any court define the court's jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  Sovereign immunity bars "suits for money damages against officials in their official capacity, including constitutional claims, absent a specific waiver by the government."  Clark v. Library of Congress, 750 F.2d 89, 103-04 (D.C. Cir. 1984).

Here, although plaintiff requests money damages for claimed constitutional violations, he does not identify any applicable waiver of sovereign immunity.  Accordingly, these claims for monetary relief must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[9]  See, e.g., Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006) (money damages claim for First Amendment retaliation barred by sovereign immunity).

**B.    Plaintiff's First Amendment Claim Must Be Dismissed**

Count II purports to assert a claim that CIA retaliated against plaintiff in violation of the First Amendment.  Specifically, plaintiff alleges that defendant used the security clearance and prepublication proceedings to intimidate him and retaliate against him in order to discourage him from publishing his book.  Compl. ¶¶ 31-34.  This claim must be dismissed for lack of

---

[9]  Plaintiff does not purport to assert an individual capacity claim against Director Hayden, the only identified defendant official in this action.  Moreover, the complaint does not assert that Director Hayden had any personal involvement in the events alleged, see Compl. ¶ 5, nor is there any indication that he has been served in his individual capacity.  See, e.g., Brown v. Wachovia Bank, --- F.R.D. ----, 2007 WL 2219315 (D.D.C. 2007).

jurisdiction because  plaintiff has no standing to obtain the requested declaratory relief.  Fed. R.

Civ. P. 12(b)(1).  Moreover, even if plaintiff's claim were not jurisdictionally barred under the

Constitution, it would have to be dismissed because plaintiff has failed to state a First

Amendment retaliation claim.  Fed. R. Civ. P. 12(b)(6).

### 1.    Plaintiff's First Amendment Claim Must Be Dismissed For Lack of Article III Standing

As demonstrated above, see Part II.A, this Court lacks jurisdiction over plaintiff's claims

for money damages under the Constitution because plaintiff has not identified a valid waiver of

sovereign immunity that would permit such claims.  The only other form of relief that plaintiff

seeks for the claimed First Amendment violation is a declaratory judgment stating that the CIA

used the security clearance process to retaliate against plaintiff in violation of the First

Amendment.  However, even assuming plaintiff could make out a retaliation claim, he lacks

standing to seek such prospective relief because he has not alleged any likelihood that he will

again be subjected to the alleged illegality.

Standing is a jurisdictional doctrine grounded in the case-or-controversy requirement of

Article III of the Constitution . See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

At the pleadings stage, the plaintiff must "clearly and specifically" allege facts demonstrating

standing, Whitmore v. Arkansas, 495 U.S. 149, 155 (1990), and must demonstrate standing

separately for each form of relief sought."  Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.,

Inc., 528 U.S. 167 (2000).  To demonstrate standing under Article III, a party must show an

injury-in-fact caused by the conduct of the defendants that can be redressed by judicial relief.

See Lujan, 504 U.S. at 560-61.  Where, as here, the plaintiff seeks prospective relief, such as a

declaratory judgment, "'[p]ast exposure to illegal conduct'" alone does not suffice to show

standing.  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (alteration in original) (quoting

O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  He must also be able to show a "real and

immediate" threat that he will be subjected to the alleged illegality again in the future.  See

Lyons, 461 U.S. 105.  In Lyons, for example, the Court held that a plaintiff who had been

subjected to an allegedly illegal chokehold by police had not shown a sufficient danger that he

would again be subjected to illegal chokeholds in the immediate future.  See id.  See also, e.g.,

Fair Employment Council v. BMC Marketing Corp., 28 F.3d 1268 (D.C. Cir. 1994).

     In this case, plaintiff does not attempt to allege *any* likelihood – much less a real and

immediate one – that he will be subjected to the claimed First Amendment retaliation again.

Plaintiff claims that the CIA used its prepublication review and security clearance proceedings to

intimidate him and discourage him from publishing his book.  Compl. ¶¶ 31-34.  Plaintiff admits,

however, that the CIA approved publication and that the initial security clearance denial was

reversed early in the appeals process.  Compl. ¶¶ 9, 17.  Nothing in the complaint suggests that

there is any likelihood whatsoever that the alleged retaliation will occur again.  He does not

allege, for example, that he is writing another book, that he will submit to future prepublication

review and/or security clearance proceedings, and that when he does, the CIA will use such

proceedings to intimidate him in violation of the First Amendment and to discourage him from

publishing any such book.  See Lyons, 461 U.S. at 105-106; see also BMC Marketing Corp., 28

F.3d at 1273 (reversing denial of motion to dismiss because complaint plaintiffs did not allege

that they would reinitiate contact with defendant in near future, and that defendant would again

discriminate against them).  Any such allegation, of course, would not only be speculative, but

downright incredible, particularly given plaintiff's own allegations that (1) the CIA approved

publication; (2) it decided to reverse its own initial security clearance denial early in the appeals

process; and (3) plaintiff ultimately obtained a security clearance.  Compl. ¶¶ 9, 22, 26.

In short, "the facts as alleged in the complaint do not come close" to indicating that

plaintiff "'will again be subjected to the alleged illegality.'" BMC Marketing, 28 F.3d at 1274.

Consequently, plaintiff lacks standing to seek declaratory relief, and his First Amendment

retaliation claim must be dismissed for lack of jurisdiction.

## 2.    *Plaintiff Has Failed To Allege A First Amendment Retaliation Claim*

Wholly apart from the jurisdictional defect discussed above, plaintiff has failed to state a

First Amendment retaliation claim.  First, plaintiff has not identified any actionable retaliatory

conduct under the First Amendment.  Although plaintiff claims that defendant used the security

clearance and prepublication review proceedings to intimidate him, Compl. ¶ 33, such

proceedings do not constitute the sort of conduct that could give rise to a First Amendment

retaliation claim.  Plaintiff was not "subjected" to these proceedings; he voluntarily submitted to

them in hopes of obtaining additional employment and permission to publish his book.  Compl.

¶¶ 9-11.  Such proceedings are a critical means of protecting the United States' "compelling

interest" in preventing unauthorized disclosure of national security information.  See Egan, 484

U.S. at 527 (quoting Snepp v. United States, 444 U.S. 507, 509 n. 3 (1980)).  See also Weaver v.

United States Information Agency, 87 F.3d 1429, 1442 (D.C. Cir. 1996) (stating that

prepublication review is "essential" to preventing dissemination of classified information).

Moreover, neither proceeding resulted in any adverse action being taken against plaintiff. To the

contrary, plaintiff specifically alleges that he received approval to publish his book, and that the

initial denial of his security clearance was reversed by the CIA in the earliest stages of the appeal

17

process.  Compl. ¶¶ 8, 22-24.  See Penthouse Internat'l Ltd. v. Meese, 939 F.2d 1011, 1015

(D.C. Cir. 1991) ("[T]he Supreme Court has never found a government abridgement of First

Amendment rights in the absence of some actual or threatened imposition of governmental

power or sanction.")

  Plaintiff's allegations of purportedly intimidating or harassing conduct, whether

considered separately or in combination, cannot transform these lawful and, indeed, necessary

security investigations into actionable retaliatory conduct.  Indeed, even where (unlike here)

plaintiffs have been subjected to investigations against their will, courts have repeatedly rejected

retaliation claims in the absence of some tangible adverse outcome.  See, e.g., Colson v.

Grohman, 174 F.3d 498, 510-513 (5th Cir. 1999) (retaliatory criticisms, investigations, and false

accusations of criminal conduct not actionable under the First Amendment where they do not

result in any official action being taken against plaintiff); Jones v. Fitzgerald, 285 F.3d 705, 715

(8th Cir. 2002) (internal investigation was not adverse employment action where employee

"suffered no material disadvantage in a term or condition of employment as a result of the

investigations"); Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir.1998) (allegedly

retaliatory referral of employee for psychological testing not actionable because such "referral

was designed to gather facts to form the basis for an employment decision").  Nor is the initial

security clearance denial actionable (assuming a security clearance denial could *ever* be

reviewed as actionable retaliatory conduct, see Egan, 484 U.S. 528) because plaintiff admits it

was reversed by the CIA early in the appeals process.  See, e.g., Benningfield, 157 F.3d at 376

(allegedly retaliatory lowering of job performance rating not actionable because employer

subsequently returned it to its previous level).

Apart from his failure to allege any actionable retaliatory conduct, plaintiff has also failed to allege the requisite adverse affect on speech. To establish a First Amendment retaliation claim plaintiff must, in addition to showing retaliatory motive, establish that "defendants' actions effectively chilled the exercise of his First Amendment right." Hatfill v. Ashcroft, 404 F. Supp. 2d 104, 117-18 (D.D.C. 2005) (citation omitted). As the Supreme Court has held, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972). "The widely accepted standard for assessing whether 'harassment for exercising the right of free speech [is] ... actionable' ... depends on whether the harassment is '[ ]likely to deter a person of ordinary firmness from that exercise.' " Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 585 (D.C. Cir. 2002) (citations omitted). In this case, it is clear that plaintiff's free speech has not been chilled in any manner. Indeed, notwithstanding the CIA's purported efforts to discourage him from publishing his book, plaintiff admits in his April 5, 2007 complaint that the book was scheduled for publication on April 10, 2007. Compl. ¶ 9. Moreover, the book has now been published, a fact of which this Court can take judicial notice, see supra n. 3. Thus, plaintiff's complaint not only fails to identify any actual chilling effect, it affirmatively establishes that plaintiff has not been chilled at all. "And where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Hatfill, 404 F. Supp. 2d at 118-119 (dismissing First Amendment retaliation claim under Fed. R. Civ. P. 12(b)(6)) (internal formatting and citation omitted).[10]

_____

[10]  See also, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir.1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); Spear v. Town of W. Hartford, 954 F.2d 63,

### C.    Plaintiff's Due Process Liberty Interest Claim and Request for a Name-Clearing Hearing Must Be Dismissed

In Counts I and VI, plaintiff asserts that defendants deprived him of a liberty interest without due process by delaying or depriving him of a security clearance, a constitutional violation that he claims entitles him to a name-clearing hearing.  Compl. ¶¶ 27-30, 65-73.  These claims must be dismissed, however, because he has not alleged a cognizable liberty interest under the Fifth Amendment's Due Process Clause.  Moreover, the complaint makes clear that he received ample process.

To establish a liberty interest claim in the employment context, plaintiff must first show that the government negatively altered his employment status "in a tangible way."  United States Information Agency v. Krc, 905 F.2d 389, 397 (D.C. Cir. 1990); Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995).  In addition, plaintiff must show that in altering his employment status, the defendant also:

> stigmatize[d] the employee or impugn[ed] his reputation so as to either (1) seriously damage his standing and associations in his community ("reputation-plus"), or (2) foreclose[d] his freedom to take advantage of other employment opportunities by either (a) automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing his chosen career ("stigma or disability").

See M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001).  Accord O'Donnell v. Barry, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998).  Finally, even if plaintiff can show that the CIA deprived him of a liberty interest under these standards, he must also show it did so without affording him due

---

67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit claiming retaliation for its editorial criticizing police handling of anti-abortion demonstrators, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit); Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002) (no actionable retaliation where plaintiff continued to speak out notwithstanding alleged retaliation).

process.  Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989).  Here, plaintiff's liberty interest

claim misses every gate from start to finish.

      First, plaintiff has not alleged any alteration in his employment status.  The requirement

of a tangible status change, such as a "discharge from government employment or at least a

demotion in rank and pay," functions in part "to limit the scope of permissible due process

claims to a small set of truly serious claims."   O'Donnell, 148 F.3d at 1140 (citation and internal

quotes omitted).  Here, plaintiff appears to be claiming that the agency's now-reversed security

clearance denial amounted to an alteration in status.  See Compl. ¶¶ 28, 66.  The non-final denial

of a security clearance, however, particularly one that is subsequently reversed, is clearly *not* the

sort of "tangible" alteration of status that gives rise to such "truly serious" due process claims.

See id.  Plaintiff also alleges that the delay in ultimately granting clearance caused the loss of

some employment opportunities.  Compl. ¶ 26 (alleging that certain offers were either never

made or were withdrawn, and that plaintiff could not attend job fairs requiring a security

clearance "for several months").  As the D.C. Circuit ruled in Krc, however, "the 'loss of some

employment opportunities do[es] not ... amount to an alteration of a legal right,' particularly

when the loss of employment flows directly from the modification of a security clearance, which

itself represents only a change in the terms of an agency's exercise of its discretion."  See id.

(citing, inter alia, Egan, 484 U.S. at 528).  See also Siegert v. Gilley, 500 U.S. 226, 233 (1991).

Ultimately, plaintiff has not even really alleged that he "lost" anything, since he did not have a

security clearance or government job at the time he commenced the security clearance process.

      Second, plaintiff has also failed to allege any actionable reputational harm or stigma.

Plaintiff has not stated a "reputation-plus" claim because he has not identified any public

accusations that will damage his standing and associations in the community.  See Doe v.

Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989); M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C.

2001).  At best, plaintiff alleges (in one of the Privacy Act counts), that the CIA told unidentified

"government contractors" there were "security clearance issues."  Compl. ¶ 60.  But even if

defendant had informed certain government contractors about the denial, it would not amount to

the kind of "public" dissemination required.  See Molerio v. FBI, 749 F.2d 815, 824 (D.C. Cir.

1984) ("it is doubtful" that "the government's confidential and unpublished denial of a security

clearance, even for a specified defamatory reason, would be sufficiently disseminated to

constitute the sort of 'stigmatizing' that the Paul v. Davis line of cases had in mind").  More

fundamentally, however, the disclosure of the security clearance denial would lack the requisite

defamatory content necessary to make out a reputation-plus claim.  See id.  As the Supreme

Court in Egan explained, "a clearance does not equate with passing judgment on an individual's

character."  Egan, 484 U.S. at 528.  See also Molerio, 749 F.2d at 824 ("to be denied [a security

clearance] on unspecified grounds in no way implies disloyalty or any other repugnant

characteristic").  Consequently, "the loss of security clearance and termination of employment"

do not "sufficiently damage a plaintiff's reputation" to give rise to a liberty interest claim.  M.K.,

196 F. Supp. 2d at 15.[11]  It follows, a fortiori, that a non-final denial of a security clearance that

is unaccompanied by any termination or other adverse action is also insufficient.

      Plaintiff also cannot make out a "stigma or disability" claim because his allegations do

---

[11]  See also Jamil v. Sec'y of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990) ("because of
the inherently discretionary judgment required in the decisionmaking process, 'no one has a right
to a security clearance,' and revocation does not constitute an adjudication of one's character");
Jones v. Department of the Navy, 978 F.2d 1223, 1226 (Fed. Cir. 1992) ("loss of [security
clearance] did not reflect upon their character").

not show that he has been automatically excluded from a definite range of employment opportunities with the government or that he has been broadly precluded from pursuing his chosen profession.  See id.  The complaint contains no allegations, for example, that he was unable to obtain employment (or even that he sought employment) since the events in question.  Nor are there any factual or legal allegations in the complaint that would support (or even make sense of) plaintiff's inexplicable contention that unspecified "false and derogatory information" maintained by the CIA "serve[s], as a practical matter, to continue to deny/revoke his security clearance."[12]  To the contrary, the complaint specifically alleges that (1) the CIA's security clearance denial was reversed early in the appeals process, Compl. ¶¶ 22-24; (2) plaintiff subsequently obtained a security clearance, Compl. ¶ 26 (referring to the "granting of [plaintiff's] security clearance"); and (3) his inability to go to job fairs that require a security clearance was only temporary, Compl. ¶ 26.  Quite simply, "[t]here is nothing to suggest that [plaintiff] would be unable to gain employment in another government job, or in the private sector within [his] career field."  M.K., 196 F. Supp. 2d at 16 (dismissing liberty interest claims under Rule 12(b)(6)).[13]

---

[12]  Even if there were some support in the complaint for the notion that the now-reversed security clearance denial somehow makes plaintiff less attractive to prospective employers (and there is none), it would not save his liberty interest claim.  E.g., Mazaleski v. Treusdell, 562 F.2d 701, 713 (D.C. Cir. 1977) (plaintiff must show that government action has "foreclose[d] his freedom to take advantage of other employment opportunities," not created a mere "disadvantage or impediment."  Accord Perry v. Federal Bureau of Investigation, 781 F.2d 1294, 1302 (7th Cir. 1986) ("liberty interest not implicated merely by a reduction in an individual's attractiveness to potential employers").

[13]  In any event, plaintiff's claims ignore the "obvious" point that no one has a right to a security clearance.  Egan, 484 U.S. at 528.  In Dorfmont v. Brown, 913 F.2d 1399, 1403-1404 (9th Cir. 1990), the court rejected plaintiff's claim that revocation of her security clearance deprived her of her ability to practice her chosen profession, since without it she could no longer

Finally, even assuming (incorrectly) that plaintiff had alleged the denial of a liberty interest, he has not identified any deficiency in the process afforded him. To the contrary, the allegations in the complaint establish that plaintiff has already been afforded ample process in his security clearance proceedings, and that he successfully availed himself of that process by seeking and obtaining reversal of the CIA's initial security clearance decision. Plaintiff claims that the initial decision was reversed without "a hearing, an interview, or utilization of any of the other formal steps normally employed in such appeals." Compl. ¶ 24. The "process due" in the liberty interest context, however, is simply an "opportunity" for a plaintiff "to clear his or her name." See Doe v. Casey, 796 F.2d 1508, 1524 (D.C. Cir. 1986), aff'd in part, rev'd in part on other grounds, Webster v. Doe, 486 U.S. 592 (1988). No "formal" or oral hearing is required, so long as plaintiff was provided "an opportunity to be heard in a meaningful manner." Id.

Here, plaintiff was provided more than sufficient process. Id. In particular, plaintiff admits that (1) he provided information to the CIA on his SF-86, and participated in a polygraph exam, as well as an interview with a "security professional," Compl. ¶¶ 11, 20, (2) he was notified of the initial denial decision and was provided with the unclassified investigative file that was compiled during his security processing, Compl. ¶ 19, and (3) he reviewed his file as part of the appeal process, Compl. ¶¶ 18-24. Documents incorporated in the complaint further

---

obtain employment with a defense contractor. The court found that "[t]he ability to pursue such employment stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring a security clearance." Id. Therefore, even if a plaintiff was precluded from obtaining employment in the area of national security because of his inability to meet CIA security requirements, he has not been deprived of a liberty interest. See also Hill, 844 F.2d at 1411 ("Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right").

confirm that plaintiff was given notice of the specific concerns underlying the CIA's denial, Ex.

A to Tormey Decl., as well as an opportunity to (1) fully respond in writing, and at length, to the

CIA's alleged concerns, (2) submit additional written argument and explanation after having

reviewed his investigative file, and (3) identify what he believed to be mitigating circumstances,

Ex. B & C to Tormey Decl. Indeed, that he was given a "meaningful opportunity to be heard" is

established simply by virtue of plaintiff's own allegation that his appeal was successful, and that

the CIA reversed its initial decision upon reviewing his submissions. Compl. ¶ 22. Particularly

"[i]n the context of a very sensitive agency such as the CIA," the Constitution requires nothing

more. Doe v. Casey, 796 F.2d at 1524.

      Plaintiff also cannot show that he was deprived of due process because he does not allege

that he ever *requested* a more formal hearing. See, e.g., Quinn v. Shirey, 293 F.3d 315, 322 (6th

Cir. 2002) (dismissing liberty interest claim for failure to allege that plaintiff requested a name-

clearing hearing and was denied); Arrington v. County of Dallas, 970 F.2d 1441, 1447 (5th

Cir.1992) (plaintiff must allege "that he requested a name-clearing hearing, and that the hearing

was denied"). The need to request such a hearing is particularly acute in this case. Where, as

here, a plaintiff's appeal is successful in the earliest stages of review, the agency would

obviously have no occasion to employ the more formal procedures available in later stages, nor

any reason to know that the already successful plaintiff would have any desire to pursue them.

See Winskowski v. City of Stephen, 442 F.3d 1107, 1111 (8th Cir. 2006) ("Allowing an

employee to claim damages for being deprived of a hearing never requested would greatly

expand government employers' potential liability and force such employers prophylactically to

offer name-clearings when it is not at all clear that the employee is entitled to-or even

desires-one.  It would also reward employees for lying in wait and later asserting a right that the

employer had no reason to suspect the employee wanted to exercise in the first place.")

## **CONCLUSION**

For the reasons set forth above, defendants respectfully ask the Court to dismiss this

action in its entirety.

Dated: August 31, 2007                                  Respectfully submitted,

                                                       PETER D. KEISLER
                                                       Assistant Attorney General

                                                       JEFFREY A. TAYLOR
                                                       United States Attorney

                                                       JOHN TYLER
                                                       Senior Trial Counsel

                                                        /s/ Peter Bryce

                                                       PETER BRYCE (NY and IL Bars)
                                                       Trial Attorney

                                                       United States Department of Justice
                                                       Civil Division, Rm. 7308
                                                       20 Massachusetts Ave, NW
                                                       Washington, D.C.  20530
                                                       Telephone:  (202) 616-8335
                                                       Fax:  (202) 616-8470
                                                       E-mail: Peter.Bryce@usdoj.gov

                                                       Counsel for Federal Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN F. SULLIVAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
|  | ) |
| and | ) |
|  | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
|  | ) |
| and | ) |
|  | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## PROPOSED ORDER

Upon consideration of defendants' Motion to Dismiss, the briefing of the parties, and the

entire record herein, it is hereby:

ORDERED that defendants' Motion to Dismiss is GRANTED;

ORDERED that this action is DISMISSED WITH PREJUDICE.


Dated: _____, 2007        _____

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN F. SULLIVAN,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)　　1:07-CV-00685
　　　　　　　　　　　　　　　　　　)
CENTRAL INTELLIGENCE AGENCY,　　　)
GENERAL MICHAEL V. HAYDEN,　　　　 )
DOES 1-10,　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　 )
_____)

DECLARATION OF KATHLEEN B. TORMEY, INFORMATION
REVIEW ANALYST, OFFICE OF SECURITY
CENTRAL INTELLIGENCE AGENCY

I, Kathleen B. Tormey, hereby declare and say:

1.  I am the Information Review Analyst of the Office of Security of the Central Intelligence Agency (CIA).  I have been employed at the CIA since 1976.

2.  I have attached to this declaration true and correct copies of the following correspondence between the CIA and Mr. John F. Sullivan, the plaintiff in the above-titled litigation:

　　　Exhibit A:　　A letter from the CIA to Mr. Sullivan
　　　　　　　　　　dated 28 January 2005.

　　　Exhibit B:　　A letter from Mr. Sullivan to the CIA
　　　　　　　　　　dated 15 February 2005.

　　　Exhibit C:　　A letter from Mr. Sullivan to the CIA
　　　　　　　　　　dated 15 March 2005.

\* \* \* \*

    I hereby declare under penalty of perjury that the

foregoing is true and correct.

    Executed this 30<u>th</u> day of August, 2007.

                Kathleen B. Tormey
                Information Review Analyst
                Office of Security
                Central Intelligence Agency