## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN F. SULLIVAN                              *
1774 Wainwright Drive                         *
Reston, Virginia  20190                       *
                                              *
       Plaintiff,                             *
                                              *
   v.                                      *
                                              *
CENTRAL INTELLIGENCE AGENCY                   *
Washington, D.C. 20505                        *
                                              *
       and                                    *
                                              *
GENERAL MICHAEL V. HAYDEN                     *    Civil Action No: 07-0685 (RWR)
Director, Central Intelligence Agency         *
Washington, D.C. 20505                        *
                                              *
       and                                    *
                                              *
DOES #1 - #10                                 *
(Employees of the Central Intelligence        *
Agency, whose exact identity is unknown       *
to Plaintiff at this time and/or classified)  *
                                              *
       and                                    *
                                              *
DEPARTMENT OF JUSTICE                         *
Washington, D.C. 20530                        *
                                              *
       Defendants.                            *
*   *   *   *   *   *   *   *   *   *   *   *

## FIRST AMENDED COMPLAINT

    Plaintiff John F. Sullivan brings this action against defendants Central Intelligence

Agency, General Michael V. Hayden, Director, Central Intelligence Agency, Does 1-10,

and the Department of Justice, inclusive, jointly and severally, pursuant to the First and

Fifth Amendments to the United States Constitution, the Administrative Procedure Act,

5 U.S.C. § 701 *et seq*., the Privacy Act, 5 U.S.C. § 552a *et seq*., the Federal Declaratory

Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651, and the Central

Intelligence Agency's internal regulations and procedures.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 552a (g)(1),

702 and 28 U.S.C. §§ 1331, 1346 (b), 2675.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C §§ 552a (g)(5), 703 and

28 U.S.C. § 1391.

## PARTIES

3. Plaintiff John F. Sullivan ("Sullivan") was employed by the Central Intelligence

Agency from 1968 - 1999. At the time of his retirement, Sullivan was a polygrapher with

the CIA. Upon information and belief, Sullivan conducted more polygraph examinations

at the CIA than any other polygrapher.

4. Defendant Central Intelligence Agency ("CIA") is an agency of the United States

Government as defined by 5 U.S.C. §§ 552a(a)(1), 701.

5. Defendant General Michael V. Hayden became the Director of the Central

Intelligence Agency ("DCI") on May 30, 2006. Porter J. Goss was his immediate

predecessor having served from September 24, 2004 to May 26, 2006. Upon information

and belief, the DCI in office at the time (as well as other unknown senior CIA leadership

who report to the DCI) has likely been personally briefed and involved, in his

professional capacity, in matters pertaining to Sullivan. The DCI maintains an office

within the District of Columbia and, upon information and belief, events pertaining to Sullivan took place within this jurisdiction.

6.  Does #1 - #10 inclusive were at all times described herein, employees of the CIA and were responsible for the actions described *infra*. At all times described herein, Does #1-#10 inclusive acted both inside and outside the scope of their employment and acted as agents of each other. At this time Sullivan is unaware of the identities of Does #1 - #10 and/or the individuals' identities may be classified.

7.  Defendant Department of Justice ("DOJ") is an agency of the United States Government as defined by 5 U.S.C. §§ 552a(a)(1).

## FACTUAL BACKGROUND

8.  In 2002, Sullivan wrote *Of Spies and Lies: A CIA Lie Detector Remembers Vietnam (University Press of Kansas, 2002)*.

9.  Because of a secrecy agreement with the CIA, Sullivan was required to and did submit that book to the CIA for review by the Publication Review Board ("PRB"). After the required complete review and having been informed no classified information was contained in the book (or that information that was classified was properly excised) the book was published. Upon information and believe, elements and individuals within the CIA were not pleased with the publication of Sullivan's book.

10.  In early 2004, Sullivan submitted a second manuscript to the PRB for review: *Gatekeeper: Memoirs of a CIA Polygraph Examiner* (Potomac Books, 2007). Sullivan did not receive final approval for publication from the PRB until nearly three years later on or about January 22, 2007. Upon information and belief, certain individuals and offices within the CIA deliberately contributed to the substantial delay that Sullivan

experienced in this process. The book was published in or around April 2007. The book

presents a very critical portrait of the CIA's polygraph program and several specific

polygraphers.

11.  In November 2003, Sullivan applied for a position with the Clandestine Service

Reserve Cadre. This position required an active security clearance.

12.  On or about March 11, 2004, Sullivan was required to and did submit to a CIA

administered polygraph. Such an examination is unclassified and Sullivan is permitted to

discuss what transpired without restriction.

13.  During the course of the polygraph examination, which occurred prior to the

submission of Sullivan's second manuscript, the examiner failed to follow standard

polygraph procedures as set forth within CIA regulations.

14.  Moreover, the polygraph examination failed to comply with CIA written policies

to include, but not limited to, the examiner's failure to submit the examination for Quality

Assurance ("QAS") review. A letter from John Doe #2, Chief, Polygraph Division, dated

October 11, 2005, revealed that on March 11, 2004, the date of Sullivan's polygraph

examination, the polygraph examiner was told to return to the test site and not to run

another chart until Sullivan made an admission. This information was later substantiated

by the Team Leader who heard the Chief Examiner give that order to the examiner who

did the test.

15.  The polygraph examiner, Doe #1, intentionally included certain details within his

report that CIA written policy notes should be excluded.

16.  The examiner's questions pertained to, and in fact emphasized, the substantive

content of Sullivan's second book. Upon further information and belief, because the

submitted manuscript dealt with the CIA's use of the polygraph, the PRB disseminated the manuscript to the Polygraph Division for comment and it was circulated and discussed within the Division.

17.  On March 25, 2004, Sullivan met with a "Security Professional" (Doe #3), who told him his test was "Unresolved Reactions to All Issues". This was a violation of CIA written security procedures. At the end of that interview, Doe #3 stated "There is something about your book that you're not telling us, and until you do I can't help you." Thereafter, Doe #2 smirked and accused Sullivan of lying. This very clearly implied to Sullivan that he would be a "liar" for as long as he was trying to have this book about the CIA's polygraph program published.

18. In or around August 2004, Sullivan was asked to take a position requiring a security clearance with Raytheon Company. Upon information and belief, the CIA interfered with Sullivan's security clearance being transferred to Raytheon for this position and he was unable to start work on the contract.

19.  On or about February 11, 2005, Sullivan received a letter dated, January 28, 2005, denying his request for a security clearance. Upon information and belief, the lengthy delay that Sullivan experienced during security processing is exploited by the CIA as part of a deliberate pattern of practice by the agency to inflict harm on individuals, cause them to withdraw from the process and/or hinder the individual's ability to secure employment. Furthermore, the CIA routinely informs individuals who complain about a polygraph examination that it is only one part of the process that is relied upon to reach a clearance decision. However, in Sullivan's case the CIA's decision

rested solely upon the polygraph examination, which is a violation of written CIA regulations.

20. Sullivan timely appealed the denial decision.

21. As part of his administrative appeal, Sullivan was provided an unclassified redacted copy of his investigative file that was compiled in conjunction with Sullivan's security processing. This file, which serves as the basis for the CIA's clearance decision, includes various background investigation reports and can be disseminated by Sullivan without restriction.

22. Upon reviewing the investigative documents Sullivan noted numerous factual inaccuracies and omissions were present. For example, interviews with individuals who served as favorable references for Sullivan were missing. Moreover, the file noted Sullivan's wife was a foreign national whom he had met in Vietnam. Sullivan's wife's birthplace, in fact, was Laredo, Texas. This fact was known to the CIA because Sullivan's wife had worked for the CIA for many years, and he had provided his wife's birthplace and date of birth in his SF-86.

23. On or about June 26, 2005, Sullivan inquired with a former colleague in order to try and determine why he was denied a clearance. In a telephone conversation with "Robert Roe", Chief/QAS, he was told "You have been treated very unfairly by this office." Apparently, "Robert Roe" was not even aware of Sullivan's test having taken place. Upon information and believe, the Chief Polygraph Examiner had intentionally withheld the test results from QAS, which constitutes an egregious violation of polygraph protocol as set forth in written CIA regulations. Upon further information and believe, it

is likely this fact alone was a key motivating factor in the CIA's reversal of Sullivan's clearance denial.

24.  In approximately late June 2005, the CIA sent Sullivan an unclassified letter informing him that the decision to deny him a security clearance was reversed. Notwithstanding this fact all the false derogatory information the CIA claimed applied to Sullivan in the first place continues to be maintained by the CIA and can and will be used again whenever future security clearance proceedings are initiated.

25. Upon information and belief, before a security clearance denial is reversed, various levels of senior CIA management personnel are involved in the review process.

26.  In Sullivan's case the denial was reversed prior to even an initial personal appearance being held. Upon information and belief, it is extremely rare, and almost statistically unprecedented, that the CIA ever reverses its position regarding factual determinations underlying a denial of a security clearance, particularly before a personal appearance (when requested) or additional interview of the applicant occurs.

27.  Upon information and belief, the reversal of Sullivan's unfavorable security determination would not have occurred under these rare circumstances had his performance on the polygraph been as had been represented, i.e., had the "security professional", Doe #3, actually believed that Sullivan was a liar, or if the stated reasoning had any factual basis. Upon information and belief, the CIA's action to initially deny Sullivan's clearance was nothing more than retaliation for the exercising of his First Amendment rights. In fact, in an e-mail dated September 28, 2005, "Robert Roe" wrote: "I can assure you that the security professional was not correct regarding the results of your test….I am at a lost (sic) to explain the time involved in your situation."

28.  As a result of the intentional delays associated with the granting of Sullivan's security clearance, the positions for which he had applied or were offered to him were lost. This includes, but it not limited to, the positions with the Clandestine Service Reserve Cadre and Raytheon Company.  In fact, because he had been wrongfully denied his security clearance in retaliation for exercising his First Amendment rights, Sullivan was unable to attend job fairs that required a security clearance for several months.

29. In or around Spring/Summer 2007, the CIA retrieved one or more documents, to include, but is not limited to, a letter from the CIA to Sullivan dated 28 January 2005, a letter from Sullivan to the CIA dated 15 February 2005, and a letter from Sullivan to the CIA dated 15 March 2005, that were filed within a Privacy Act System of Records

30. Sullivan's letters contained his personal e-mail address, and home telephone number and address.

31. The CIA's letter to Sullivan contained his social security number.

32. The CIA disclosed one or more documents, to include those described in paragraph 29, to the DOJ where they were then filed within a DOJ system of records.

33. On or about August 31, 2007, the DOJ, as the legal representative and/or agent of the CIA, publicly filed within the U.S. District Court for the District of Columbia these three documents containing Sullivan's e-mail address, home telephone number and address and social security number.

34. At no time did Sullivan ever provide either the CIA or DOJ his written or verbal consent to publicly disclose or disseminate these three records or the information contained therein.

35. On November 5, 2007, Sullivan submitted a request for amendment in order to correct inaccuracies within records maintained in various CIA System of Records that pertain to him. Should the CIA deny this request the appropriate cause of action will be added to this or another lawsuit.

36. Sullivan continues to write and speak on matters related to his employment with the CIA. Pursuant to his secrecy agreement it is a mandatory requirement that he submit all such writings to the PRB for classification review. Any negative submission concerning specific individuals within the CIA's polygraph program will likely serve as the cause of further retaliation and harassment. In fact, in July 2007, Sullivan submitted a proposed chapter for a new textbook for the Department of Defense polygraph school, DACA, for PRB review. On or about August 22, 2007, the PRB responded with recommendations for redactions that were so extensive as to cause him to abandon the project. The letter received by Sullivan was perceived as intimidating. On September 11, 2007, a PRB representative called Sullivan and asked him to reconsider resubmitting the document because the PRB "may have been a little over the top with the redactions." However, Sullivan chose not to appeal because the CIA's prior actions chilled his interest in pursuing any challenge. Most recently he submitted a short document to the PRB on October 30, 2007, that was not controversial. Additional submissions are planned but the CIA's actions have chilled Sullivan's interests in taking on any controversy projects.

## FIRST CAUSE OF ACTION
### (FIFTH AMENDMENT LIBERTY INTEREST - CIA)

37.  Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

38.  Defendants, jointly and severally, engaged in the conduct described above in order to illegally and improperly delay or deprive Sullivan of his security clearance and in so doing to:

>    a. deny him the employment he was seeking at that time;

>    b. impugn his reputation during this period so as to seriously damage his standing and associations in the community, particularly the Intelligence Community and the entities associated therewith;

>    c. foreclose his freedom to take advantage of employment opportunities during this time by excluding him from a range of government and private enterprise employment opportunities;

>    d. preclude him from continuing in his chosen career while in this period of time.

39. As a result of the actions of one or more of the defendants, Sullivan lost specific positions for which he applied, lost or will lose the opportunity to obtain other positions of employment, had his reputation in the community impugned which has resulted in foreclosing his freedom to take advantage of a range of employment opportunities and has precluded him from pursing his chosen career as a polygrapher/security analyst.

40.  As a result of the actions of one or more of the defendants, Sullivan has suffered loss of freedom, mental anguish, emotional pain and suffering and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
## (RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHT - CIA)

41.  Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

42.  Upon information and belief, several or all of the defendants wanted to discourage him from publishing his second book, *Gatekeeper: Memoirs of a CIA Polygraph Examiner*, because the book is critical of the Polygraph Division and other security personnel at the CIA. Sullivan's speech was a matter of public concern.

43.  Sullivan was mandated by his secrecy agreement to submit his manuscript for pre-publication review by the CIA. Although he does not challenge this review process, he did not agree to the unauthorized procedures described above and he did not agree to be subjected to the attempted intimidation regarding his writings as described herein. Upon information and belief the CIA took advantage of what would have otherwise been normal security proceedings to retaliate against Sullivan based on the exercise of his First Amendment rights.

44. The retaliation for the lawful exercising of his First Amendment rights resulted in an adverse official action by the CIA to falsely and deliberately deny Sullivan a security clearance. That this action was subsequently reversed almost one year later, thereby constituting at least a tacit admission that the initial decision lacked a substantive basis, does not minimize the impact that it had on Sullivan, or the nature of the unlawful conduct.

45.  As a result of the actions of one or more of the defendants, Sullivan suffered mental anguish, emotional pain and suffering and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
### (PRIVACY ACT)

46.  Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

47.  The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Sullivan.

48.  The CIA failed to maintain records concerning Sullivan "with such accuracy, relevance, timeliness, and completeness" as would have been necessary "to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to" Sullivan that should have been "made on the basis of said record and consequently determinations were made which" were adverse to Sullivan thereby violating 5 U.S.C. § 552a(e)(5).

49.  Although Sullivan received his investigative file in or around March 2005, significant information was redacted that he reasonably believes is false as it pertains to his having to undergo false security proceedings, concocted adverse security decisions, and an initial unfavorable security clearance determination. He has yet to be provided with a complete copy of his investigative file to permit a full response.

50.  In failing to properly maintain said records, defendant Central Intelligence Agency violated the provisions or 5 U.S.C. § 552a (g)(1)(C).

51.  Upon information and belief, the CIA continues to maintain records pertaining to Sullivan in violation of 5 U.S.C. § 552a (g)(1)(C).

52.  As a result of the actions of the CIA and its employees, Sullivan lost employment positions for which he applied, lost the opportunity to obtain other positions of employment, has had his reputation in the community impugned which has resulted in

foreclosing his freedom to take advantage of a range of employment opportunities and has precluded him from pursing his chosen career as a polygrapher/security analyst.

53. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

54. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Sullivan's privacy rights.

55. As a result of one or more of the defendants' violations of the Privacy Act, Sullivan has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

### FOURTH CAUSE OF ACTION
### (PRIVACY ACT - CIA)

56. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

57. The CIA maintains records within one or more Privacy Act Systems of Records that pertain to Sullivan.

58. On one or more occasions since his retirement, the CIA, and one or more of the individual defendants, has intentionally interfered with Sullivan's efforts to obtain employment in his chosen field of profession with government contractors, particularly by impeding the transfer of his security clearance or by implying derogatory information existed that would preclude the granting of a security clearance.

59. Although no legitimate security clearance issues existed that would cause a problem in Sullivan attaining access to classified information government contractors

were told differently thereby causing them to either never offer or withdraw an existing employment offer.

60. Prior to disseminating records about Sullivan to persons other than an agency, the CIA and one or more of the individual defendants failed to make reasonable efforts to assure that such records were accurate, complete, timely, and relevant for agency purposes.

61. The CIA and one or more of the individual defendants has already disseminated inaccurate information from Sullivan's Privacy Act System of Records to one ore more government contractors that resulted in interfering with Sullivan's hiring due to alleged security concerns. The actions by the CIA violated 5 U.S.C. § 552a(e)(6).

62. The CIA, its employees and officers, to include one or more of the individual defendants, knew or should have known that their actions were improper, unlawful and/or in violation of the Privacy Act.

63. The CIA, its employees and officers, to include one or more of the individual defendants, acted intentionally or willfully in violation of Sullivan's privacy rights.

64. As a result of one or more of the defendants' violations of the Privacy Act, Sullivan has suffered adverse and harmful effects, including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and lost or jeopardized present or future financial opportunities.

## FIFTH CAUSE OF ACTION
### (APA - CIA)

65. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

66. The CIA polygraph examiners and security specialists who conducted Sullivan's examinations and interviews were not competent or ethical. Their actions fell outside acceptable parameters and standards of appropriate conduct as set forth by, but not limited to, the Department of Defense Polygraph Institute and the American Polygraph Association to such an extent as to unfairly taint the examinations.

67. The CIA has engaged in, and continues to engage in, an unlawful and/or flawed process with respect to the utilization of polygraph examinations.

68. The CIA is not permitted to violate Sullivan's Constitutional rights, such as that exist but not limited to under the Fifth Amendment, or violate its own regulations. Identification of specific CIA regulations that have been violated cannot be made at this time as the CIA has not publicly released copies of the relevant regulations.

69. The CIA maintains a specific system of records within its Privacy Act system of records wherein information pertaining to Sullivan and his polygraph/security processing are filed. The CIA permits information and records from within this system to be disseminated as a routine use, under the appropriate circumstances, to other federal, state and local agencies. Additionally, the CIA's misuse of the polygraph/security proceedings in Sullivan's case also resulted in inaccurate information being maintained within databases available to defense contractors.

70. Sullivan has applied or is in the process of applying for employment that requires a security clearance. Notwithstanding the eventual favorable determination from the CIA regarding Sullivan's security clearance, the CIA has already disseminated or will disseminate adverse and inaccurate information from CIA files, particularly pertaining to false polygraph results, concerning Sullivan.

71. The CIA inappropriately and unlawfully denied Sullivan's security clearance by relying upon information derived from a polygraph examination and interview in violation of CIA regulations and the Fifth Amendment to the U.S. Constitution. This constituted a final agency decision, and stigmatized Sullivan.

72. The CIA, its officers and employees, committed and undertook actions that were arbitrary, capricious and/or an abuse of discretion pertaining to Sullivan, including, but not limited to, conducting an improper polygraph examination and unfairly relying on the results of the polygraph examination, and took actions that were unwarranted by the facts, unsupported by substantial evidence, in violation of internal regulations and federal statutes as set forth above, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right thereby causing Sullivan to suffer legal wrongs under the Administrative Procedures Act.

## SEVENTH CAUSE OF ACTION
### (PRIVACY ACT – CIA)

73. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

74. In or around Spring/Summer 2007, the CIA retrieved one or more documents, to include, but is not limited to, a letter from the CIA to Sullivan dated 28 January 2005, a letter from Sullivan to the CIA dated 15 February 2005, and a letter from Sullivan to the CIA dated 15 March 2005, that were filed within a Privacy Act System of Records pertaining to Sullivan and disclosed these documents and the information contained therein to officials within the DOJ, including but not limited to Trial Attorney Peter Bryce, with the specific intention that the documents would be publicly filed with the U.S. District Court for the District of Columbia.

16

75. These documents contain, among other protected information, Sullivan's social security number, home address and telephone number, as well as his personal e-mail address.

76. On or about August 31, 2007, DOJ officials, including but not limited to Trial Attorney Peter Bryce, acting as the agents and legal representatives of the CIA, and therefore on behalf of (or otherwise in the shoes of), the CIA publicly filed the three specific documents referenced above in this litigation. In accordance with accepted principles of agency law, DOJ's actions are to be imputed to the CIA.

77. At no time has Sullivan ever provided either verbal or written consent to the CIA to permit its dissemination to DOJ or to have the CIA, through its agents within the DOJ, publicly file any records or information from within any of his Privacy Act Systems.

78. The records and information disclosed by CIA occurred without Sullivan's prior written consent in violation of 5 U.S.C. § 552a (b) and no justification exists to excuse CIA's actions.

79. The release of Sullivan's Privacy Act protected information numbers did not constitute a routine use as defined in 5 U.S.C. § 552a (b)(3) or CIA's "Statement of General Routine Uses" published in the <u>Federal Register</u>, and was not compatible with the purpose for which the information was collected.

80. CIA, its employees and officers, to include but is not limited to Kathleen B. Tormey,  and Does 1-5, knew or should have known that release of the documents and information in question was improper, unlawful and/or in violation of the Privacy Act.

81. CIA violated the Privacy Act by releasing the personal and Privacy Act protected information in the stated correspondence. In doing so, CIA, its employees and officers,

including Kathleen B. Tormey, acted intentionally, willfully, with flagrant disregard for Sullivan's privacy rights and/or acted without grounds for believing their actions to be lawful.

82. CIA violated its own regulations concerning disclosure of records by failing to protect Sullivan's Privacy Act protected information.

83. As a result of CIA's non-compliance with the Privacy Act and its own internal regulations, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

## EIGHTH CAUSE OF ACTION
## (PRIVACY ACT - CIA)

84. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

85. The release of documents by CIA containing protected and privileged information pertaining to Sullivan demonstrates that CIA has failed to instruct persons in the proper operation and maintenance of the systems of records containing Privacy Act requests with respect to the rules and requirements of the Privacy Act and the penalties for noncompliance in violation of 5 U.S.C. § 552a(e)(9).

86. As a result, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

## NINTH CAUSE OF ACTION
## (PRIVACY ACT - CIA)

87. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

88. The release of Sullivan's Privacy Act protected information by CIA demonstrates that CIA has failed to establish appropriate administrative, technical, and physical

safeguards to insure the security and confidentiality of records in violation of 5 U.S.C. § 552a(e)(10).

89. As a result, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

### TENTH CAUSE OF ACTION
### (PRIVACY ACT – DOJ)

90. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

91. In or around Spring/Summer 2007, the CIA retrieved one or more documents, to include, but is not limited to, a letter from the CIA to Sullivan dated 28 January 2005, a letter from Sullivan to the CIA dated 15 February 2005, and a letter from Sullivan to the CIA dated 15 March 2005, that were filed within a Privacy Act System of Records pertaining to Sullivan and disclosed these documents to officials within the DOJ, including but not limited to Trial Attorney Peter Bryce, with the specific intention that the documents would be publicly filed with the U.S. District Court for the District of Columbia.

92. Upon receipt by DOJ these records were placed within a DOJ System of Records pertaining to Sullivan.

93. These documents contain, among other protected information, Sullivan's social security number, home address and telephone number, as well as his personal e-mail address.

94. On or about August 31, 2007, DOJ officials, including but not limited to Trial Attorney Peter Bryce, acting as the agents and legal representatives of the CIA, and

therefore on behalf of (or otherwise in the shoes of), the CIA publicly filed the three specific documents referenced above in this litigation.

95. At no time has Sullivan ever provided either verbal or written consent to the DOJ to permit its dissemination of records from within any of its Privacy Act Systems.

96. The records and information disclosed by DOJ occurred without Sullivan's prior written consent in violation of 5 U.S.C. § 552a (b) and no justification exists to excuse DOJ's actions.

97. The release of Sullivan's Privacy Act protected information numbers did not constitute a routine use as defined in 5 U.S.C. § 552a (b)(3) or DOJ's "Statement of General Routine Uses" published in the <u>Federal Register</u>, and was not compatible with the purpose for which the information was collected.

98. DOJ, its employees and officers, to include but is not limited to Peter Bryce, Trial Attorney, and Does 1-5, knew or should have known that release of the documents and information in question was improper, unlawful and/or in violation of the Privacy Act.

99. DOJ violated the Privacy Act by releasing the personal and Privacy Act protected information in the stated correspondence. In doing so, DOJ, its employees and officers, including Peter Bryce, Trial Attorney, acted intentionally, willfully, with flagrant disregard for Sullivan's privacy rights and/or acted without grounds for believing their actions to be lawful.

100. DOJ violated its own regulations concerning disclosure of records and information by failing to protect Sullivan's Privacy Act protected information.

101. As a result of DOJ's non-compliance with the Privacy Act and its own internal regulations, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

### ELEVENTH CAUSE OF ACTION
### (PRIVACY ACT - DOJ)

102. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

103. The release of documents by DOJ containing protected and privileged information pertaining to Sullivan demonstrates that DOJ has failed to instruct persons in the proper operation and maintenance of the systems of records containing Privacy Act requests with respect to the rules and requirements of the Privacy Act and the penalties for noncompliance in violation of 5 U.S.C. § 552a(e)(9).

104. As a result, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

### TWELFTH CAUSE OF ACTION
### (PRIVACY ACT - DOJ)

105. Sullivan repeats and realleges the allegations contained in paragraphs 1 through 36 above, inclusive.

106. The release of Sullivan's Privacy Act protected information by DOJ demonstrates that DOJ has failed to establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records in violation of 5 U.S.C. § 552a(e)(10).

107. As a result, Sullivan suffered adverse and harmful affects and is entitled to an amount to be determined later, but no less than the statutory minimum of $1,000.00.

WHEREFORE, John Sullivan requests that the Court award him the following relief:

(1) Declare and find that the defendants violated the Administrative Procedure Act, its internal regulations and/or statutes governing its conduct involving Sullivan, and award any appropriate relief to be determined in future proceedings;

(2) Declare and find that the defendants violated the Privacy Act by failing to make reasonable efforts to assure that such records regarding Sullivan are accurate, complete, timely and relevant prior to dissemination, and award any damages, or other appropriate relief, that are deserved there from;

(3) Declare and find that the defendants violated Sullivan's liberty interest under the Fifth Amendment to the Constitution, and award any appropriate relief to be determined in future proceedings;

(4) Declare and find that the defendants violated Sullivan's interests under the First Amendment to the Constitution, and award any appropriate relief to be determined in future proceedings;

(5) Declare and find that the CIA intentionally misuses the polygraph device and security clearance process as a retaliatory tool;

(6) Award any damages caused by the CIA's failure to timely process Sullivan's manuscript and permit publication;

(7) Award any damages caused by CIA's retaliatory behavior in initially denying him a security clearance and/or continually maintaining and disseminating false information to defense contractors;

(8) Invoke its equitable powers to expunge all records or information that is inaccurate, derogatory or infringes upon Sullivan's express or implied constitutional or statutory rights;

(9) Refer those CIA officials responsible for violating the Privacy Act for prosecution under 5 U.S.C. § 552a(i)(1);

(10) Award Sullivan the costs of the action and reasonable attorney fees under the

Equal Access to Justice Act, the Privacy Act or any other applicable law; and

(11) grant such other relief as the Court may deem just and proper.

Date:   November 5, 2007

Respectfully submitted,

/s/

_____

Mark S. Zaid, Esq.
DC Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
Mark@MarkZaid.com

Brad Moss, Esq.
DC Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
Brad@MarkZaid.com

Of Counsel:
Alan J. Cilman, Esq.
Virginia State Bar #13066
4160 Chain Bridge Road
Fairfax, Virginia 22030
(703) 385-7300