**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN F. SULLIVAN, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) <br> ) |
| and | ) <br> ) |
| GENERAL MICHAEL V. HAYDEN <br> Director, Central Intelligence Agency | ) <br> ) |
| and | ) <br> ) |
| DOES 1-10 <br> (Employees of the Central Intelligence Agency, <br> whose exact identity is unknown to Plaintiff <br> at this time and/or classified) | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## ERRATA

Pursuant to discussions with the clerk's office, defendant hereby substitutes redacted copies of exhibits to its pending Motion to Dismiss. Plaintiff's counsel, Mark Zaid, e-mailed the undersigned on Sunday night, November 4, 2007, to request that the Department of Justice redact or otherwise take steps to protect certain personal information contained in the exhibits to the declaration submitted with Defendant's Motion To Dismiss (docket entry #4). Although defendant denies any suggestion that an improper disclosure occurred, in order to accommodate plaintiff's concerns, the undersigned contacted the clerk's office to see about either placing the exhibits under seal, or substituting redacted versions of the documents. Pursuant to those discussions, the undersigned understands that the clerk's office placed the relevant exhibits

under seal during that phone conversation. Further, pursuant to instructions from the clerk's office, defendant hereby submits the attached redacted versions of such exhibits so that they may be substituted for the unredacted versions that are now under seal.

Dated: November 5, 2007                                Respectfully submitted,


                                                       PETER D. KEISLER
                                                       Assistant Attorney General

                                                       JEFFREY A. TAYLOR
                                                       United States Attorney

                                                       JOHN TYLER
                                                       Senior Trial Counsel

                                                        /s/ Peter Bryce

                                                       PETER BRYCE (NY and IL Bars)
                                                       Trial Attorney

                                                       United States Department of Justice
                                                       Civil Division, Rm. 7308
                                                       20 Massachusetts Ave, NW
                                                       Washington, D.C.  20530
                                                       Telephone:  (202) 616-8335
                                                       Fax:  (202) 616-8470
                                                       E-mail: Peter.Bryce@usdoj.gov

                                                       Counsel for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, <br><br> and <br><br> GENERAL MICHAEL V. HAYDEN <br> Director, Central Intelligence Agency <br><br> and <br><br> DOES 1-10 <br> (Employees of the Central Intelligence Agency, <br> whose exact identity is unknown to Plaintiff <br> at this time and/or classified) <br><br> Defendants. | Case No. 1:07-cv-00685 (RWR) |

# EXHIBIT A

JAN 28 2005

Mr. John F. Sullivan
▓▓▓▓▓▓▓▓▓▓▓▓▓

Dear Mr. Sullivan:

    The Agency disapproved you for access to classified information. This letter provides the reasons for the Agency's security decision and explains how to request a review of your case.

    People who are given access to classified information must meet strict security standards as outlined in the enclosed attachment. Any doubt about whether an individual should receive access to classified information must be resolved in favor of national security.

    The Agency considered you for access to classified information between November 2003 and November 2004, after your employer submitted you for access. On your National Security Form (SF-86), dated 14 November 2003, you indicated that the Central Intelligence Agency (CIA) had investigated your background and/or granted you a Top Secret and Sensitive Compartmentalized Information clearance in May 1999. You stated that you were employed by the CIA from June 1968 to September 1999 as a polygraph examiner, and again from February to April 2003 as an interviewer.

    During your security testing on 11 March 2004, you admitted removing classified documents from the CIA when you retired in 1999. You admitted deliberately removing a book containing information classified as high as Secret, and an award citation classified Confidential. You also stated that you kept a document, classified Confidential, which you inadvertently removed at that time. During your second testing session you raised your voice and cursed the examiner after being questioned on the topic of compromise. You questioned the examiner's professional ability and wondered if there was a hidden agenda for the test. The results of your security testing indicate you may not have discussed the full extent of your concerns regarding the issue of compromise of classified information.

    During an interview with a security professional on 25 March 2004, you reiterated taking home the classified

Mr. John F. Sullivan

information you discussed during security testing. You returned all classified material that you had kept to the security interviewer. These materials included five documents classified at the Confidential level, one document classified at the Secret level, and several other documents that you considered sensitive, but had no classification marks.

The Agency disapproved you for access to classified information based on the issues of security violations and personal conduct, as evidenced by the information stated above. Your behavior raises concerns about your judgment, candor, and willingness to follow rules and regulations.

You may request a review of the Agency's security determination. Please see the attached pages for information and instructions.

Sincerely,

*Elizabeth V. York*

Elizabeth V. York
Senior Adjudication Officer

## FACTORS USED TO DETERMINE ELIGIBILITY FOR A SECURITY CLEARANCE

The security adjudication process carefully reviews the issues below when considering a person for classified access. These issues are defined in Director of Central Intelligence Directive 6/4. All information, past and present, both favorable and unfavorable, is considered.

- Allegiance to the U.S.
- Foreign Influence
- Foreign Preference
- Sexual Behavior
- Personal Conduct-Judgment
- Financial Responsibility
- Alcohol Consumption
- Drug Involvement
- Emotional/Mental/Personality Disorders
- Criminal Conduct
- Security Violations
- Outside Activities-employment/organizations
- Misuse of Information Technology Systems

---

## INSTRUCTIONS FOR REQUESTING AN INITIAL REVIEW

To request a review of the Agency's security decision, send your written request within 45 days to the following:

Elizabeth V. York
PO Box 6282
West Hyattsville, MD  20782

Your request should contain the following, if appropriate:

a.  A statement that the Agency's information is incorrect and why;

b.  Information that explains your situation;

c.  New information about the issues involved;

d.  Specific medical release forms if appropriate;

e.  A request for a personal appearance, which must be completed before the initial review (see next page for details); and/or

f.  A request for the "investigative file", which is a copy of the specific documents, records and/or reports used to reach the security decision (see next page for details).

As part of the review process, you may be asked to undergo additional security processing. The results of the review will be given to you in writing. If you are not satisfied with the result of the review, you will be offered the opportunity to appeal the decision to an appeal panel.

If your appeal is successful, the granting of a security clearance will not be immediate. Should you reapply for clearances, additional processing may be required.

## PERSONAL APPEARANCE AND INVESTIGATIVE FILE INITIAL REVIEW

### Personal Appearance

- You may, at your own expense, appear in person before a government representative to provide documents, materials or information about your case.

- You may also, at your own expense, use an attorney or another individual to act on your behalf.

- If you request a personal appearance, you will be contacted by this office to schedule your appearance. Your personal appearance must be made prior to the first-level review. Only you and/or your representative may attend. You must tell this office at the time your personal appearance is scheduled if you are bringing a representative with you.

- There will be no opportunity to present or cross-examine witnesses involved in the case. This is your opportunity to provide additional information relevant to your case. Information and documents you provide will be retained and considered in reviewing the security decision.

- Your personal appearance will be documented for use during the review process.

- Regulations prohibit bringing any photographic, recording or transmitting equipment of any kind while on government property and you may not bring these types of items to the personal appearance. For safety reasons, you and your representative will be asked to undergo a screening similar to an airport security inspection.

### Investigative File

- If you request a copy of the investigative file, you must send a statement signed under penalty of perjury (28 U.S.C. Sec. 1746) attesting to your identity, or an original notarized statement containing your place of birth and citizenship status.

- Within 30 days of receiving your request, a copy of the requested information will be sent to you. It will be released in the same manner as information is released under the Privacy Act or the Freedom of Information Act.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, <br><br> and <br><br> GENERAL MICHAEL V. HAYDEN <br> Director, Central Intelligence Agency <br><br> and <br><br> DOES 1-10 <br> (Employees of the Central Intelligence Agency, <br> whose exact identity is unknown to Plaintiff <br> at this time and/or classified) <br><br> Defendants. | Case No. 1:07-cv-00685 (RWR) |

# EXHIBIT B

## JOHN F. SULLIVAN



February 15, 2005

Ms. Elizabeth V. York
P.O. Box 6082
West Hyattsville, MD  20782

Dear Ms. York:

Attached is a copy of my request for a review of the security decision to deny me a security clearance.

Yours truly,

*John F. Sullivan*
John F. Sullivan

Enclosure

MAR 4 8 2005

15 February 2005

Dear Sir or Madam:

In requesting a review of the security decision to deny me a security clearance, I do so for the following reasons:

1. At no time during my polygraph interview did I "curse" the examiner, as is claimed in the denial letter. Any emotion, or anger, that I displayed was directed at the situation and not the examiner.

    As I recall, the only language that may have been inappropriate was said in response to the examiner's contention that I had compromised classified material. My response, as I recall, was, "That's bull s---!" I fail to see how this could be interpreted as "cursing" the examiner.

2. The "book" that I removed did have an overall classification of SECRET. At the time I removed it, I believe that over 90 percent of the material therein had been automatically declassified, and certainly none of it was current. A box of those books was left on a table in the Polygraph Division (PD) facility in 1986 or 1987, and the examiners were invited to take a copy. That book sat in a box in my office until 31 August 1999.

    At the time I removed the book, I recognized that it was marked SECRET, but I also assumed that the material therein was declassified due to the 25-year-declassification rule, as I cannot recall any post Vietnam material in the book.

    I am certain that none of the material I removed was compromised. From the time I brought the book home until I returned it to the Security Professional, no one, except me, ever saw it. It was retained in a box, out of sight, in my office. The only time I can recall using that book was to look up the date of the Bay of Pigs invasion; information of public record.

    The material classified CONFIDENTIAL, with one exception, were documents relating to personnel actions which I kept for their sentimental value. I had not been under cover since 1987 and saw no potential for compromise in taking them home.

3. I do not recall questioning the examiner's competence. I did ask to see the charts, because I did not believe that my charts were showing indications of deception.

    That being said, I don't believe I said anything during the interview that was any kind of attack on his competence. I neither told him, nor even suggested to him, that I thought he was incompetent

My thoughts on there being a "hidden agenda" were based on the fact that I was tested outside the PD facility and by comments made by two security officers prior to my interview. Both told me that it was "strange" and questioned whether or not my upcoming test was an Agency test. One of them commented, "They're getting you for your book."

The comment that my denial of a security clearance was based, in part, on my personal conduct is very difficult to accept. I cannot believe that anything I said during my polygraph interview could be used as the basis for questioning my personal conduct. I was neither verbally abusive nor out of control during the interview, which the denial letter seems to imply.

Since my test on 11 March 2004, I have been asked to work on two Agency programs that require clearances. When I asked the recruiters to verify my clearance status with the Agency, they never called back. I have lost money, feel that my reputation has been put into question, and request a fair and unbiased review of this case.

John Sullivan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case No. 1:07-cv-00685 (RWR)<br>CENTRAL INTELLIGENCE AGENCY, )<br>)<br>and )<br>)<br>GENERAL MICHAEL V. HAYDEN )<br>Director, Central Intelligence Agency )<br>)<br>and )<br>)<br>DOES 1-10 )<br>(Employees of the Central Intelligence Agency, )<br>whose exact identity is unknown to Plaintiff )<br>at this time and/or classified) )<br>)<br>Defendants. )<br>) | |

# EXHIBIT C

# JOHN F. SULLIVAN



15 March 2005

Ms. Elizabeth V. York
P.O. Box 6282
West Hyattsville, MD  20782

Dear Ms. York:

Thank you very much for your reply to my request for my investigative file. At this point, among the questions I have is, why wasn't I provided with all of the interviews in the Report of Investigation? Specifically, Page #3 of 9 and Page #6 of 9 in the Employment References of the Report of Investigation are blank. Were only two people interviewed? Were any of my references interviewed?

If only two interviews were interviewed, this is in and of itself surprising. The two men, whose interview reports were provided, were two people with whom I had minimal contact. Kent Holmes was gone for about six months during my time at Raytheon, and I had very little interaction with him. We worked in adjoining offices, and in the time I was at Raytheon, I doubt that I had more than ten conversations with him.

Warren Strothers is a friend with whom I had only casual contact. He noted that my wife was Vietnamese and that I married her in Vietnam. My wife is not Vietnamese, and we were not married in Vietnam. She was born in Laredo, Texas, and is a former CIA staff employee who accompanied me to Vietnam. In order to accompany me to Vietnam, my wife had to resign from the Agency and work as an Independent Contractor. While in Vietnam, her staff status was restored. All of this information, with the exception of the information re my wife's service in Vietnam, is in my SF-86. After Vietnam, my wife worked as an Independent Contractor, out of our home, from February 1980 until August 1998. My wife's place and date of birth are cited in my Standard Form 86 (SF-86). I am surprised that the investigator did not pick up on this and maybe try and interview someone who knew me better.

Two of my supervisors while I was an IC were listed in my SF-86 and know me better than either of the aforementioned. Apparently, they were not interviewed.

I don't know whether or not my interview with the Security Professional on 25 March 2004 was recorded, but when he noted that I received *The Central Agency: The First 30 Years, 1947–1977* in 1994-95, he is in error. I told him and the polygraph examiner that I

MAR 3 0 2005

had gotten the book in 1986-1987. That book remained in a box in my office for twelve or thirteen years. I also noted that no one, except me, had seen the book during the time it was in my home.

In presenting me with information re my polygraph test and security interview, comments seem to have been taken out of context and selectively chosen. Specifically, the last comment made to me by the Security Professional on 25 March was, "There is something about your book you are not telling us, and unless you do, I can't help you." Also, when the examiner asked me, at the end of the interview, "What do you think I should do," my answer was, "If you believe I am lying, that is what your report should say. Let your conscience be your guide. You are wrong, but I wouldn't have you do anything else."

Under "Mitigators" on Page 3 of Current Investigative Information, no mention was made of my insistence that from the time I removed the book until the day I returned it, no one except me, saw it.

Thank you for your consideration.

Yours truly,

John F. Sullivan