**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

defendants the Central Intelligence Agency, General Michael V. Hayden, and the Department of

Justice respectfully move this Court to dismiss this action for lack of subject matter jurisdiction

and failure to state a claim on which relief can be granted.  The grounds in support of this motion

are set out more fully in the annexed memorandum.

Dated: January 31, 2008                     Respectfully submitted,

                                            JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                             /s/ Peter Bryce_____
                                            ELIZABETH J. SHAPIRO (D.C. Bar 418925)
                                            Peter Bryce (NY and IL Bars)
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Rm. 7308
                                            20 Massachusetts Ave, NW
                                            Washington, D.C.  20530
                                            Telephone:  (202) 616-8335
                                            Fax:  (202) 616-8470
                                            E-mail: Peter.Bryce@usdoj.gov

                                            *Counsel for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

## INTRODUCTION

This action arises out of the Central Intelligence Agency's ("CIA's") denial of plaintiff's

request for a security clearance in early 2005.  The challenged denial was actually reversed by

the CIA on direct administrative appeal long before plaintiff filed suit, but plaintiff sued anyway,

purporting to challenge the now-reversed decision under various provisions of the Privacy Act

and the United States Constitution.  Defendant moved to dismiss for lack of jurisdiction and

failure to state a claim, attaching as support the challenged security clearance decision and plaintiff's submissions on appeal. Plaintiff did not address the numerous substantive and jurisdictional deficiencies identified in the motion to dismiss. Instead, he added six new Privacy Act claims against both the CIA and its litigation counsel, the Department of Justice ("DOJ"), all purportedly based on the "disclosure" of the documents attached to the motion to dismiss. Plaintiff's claims remain substantively and jurisdictionally defective. His attempt to secure judicial review of an Executive Branch security clearance decision (and a reversed one at that) is fundamentally improper, as are his accusations that the CIA and DOJ violated the Privacy Act by defending this action in Court. The amended complaint should be dismissed.

First, plaintiff's Privacy Act challenges to the reversed security clearance denial must be dismissed. This Court lacks authority to review these claims under <u>Department of Navy v. Egan</u>, 484 U.S. 518 (1988), because they would require the court to evaluate the merits of an Executive Branch security clearance decision. Moreover, because plaintiff was an applicant for federal employment, his claims are also precluded by the Civil Service Reform Act, which provides a comprehensive remedial scheme for addressing challenges to personnel decisions. Further, plaintiff's Privacy Act challenges to security clearance denial are also time-barred under the applicable two-year statute of limitations because plaintiff knew or should have known about any deficiencies in his records more than two years before filing suit. Finally, these claims must also be dismissed because plaintiff does not identify any actionable conduct under the Privacy Act.

Plaintiff's constitutional claims also fail. Plaintiff seeks declaratory relief under the First Amendment, claiming that the CIA denied the security clearance to discourage him from

publishing a book about the CIA. However, plaintiff lacks standing to assert this claim (and/or the claim is moot) because the security clearance decision was reversed on appeal, and because plaintiff has not demonstrated any "real and immediate" threat that he will be subjected to the alleged illegality again in the future. In any event, plaintiff has failed to state a First Amendment retaliation claim because he does not allege any actionable retaliatory conduct or that such conduct had any affect on his speech. Plaintiff's Due Process liberty interest claim based on the reversed security clearance denial must also be dismissed. Plaintiff has not alleged any cognizable infringement of his liberty interests. Nor has he identified any deficiency in the process afforded him. Indeed, plaintiff has already been afforded ample process, and has successfully availed himself of that process, so his Due Process claim is moot.

Plaintiff's newly added challenge to the security clearance denial under the Administrative Procedure Act ("APA") must also be dismissed, and for some of the same reasons as his other claims. Again, since the security clearance denial has been reversed, and he alleges no real or immediate threat that he will again be subjected to the alleged illegality, his claims should be dismissed for lack of standing and mootness. Moreover, plaintiff's APA claim must also be dismissed because it would require improper review of an Executive Branch agency's security clearance decision, and because it is in any event precluded under Civil Service Reform Act. Further, plaintiff has also failed to identify any "final agency action" subject to judicial review under the APA.

Finally, plaintiff's Privacy Act claims based on the documents attached to the CIA's original motion to dismiss are completely without merit. The attachment of plaintiff's security clearance denial, and related appeals submissions, is not actionable under the Privacy Act

because it falls squarely within the "Routine Use" exception to the Privacy Act's disclosure provisions. These documents are central to plaintiff's claims in this action, and the CIA and the DOJ, like many agencies, have long relied upon published routine uses which allow for these sorts of litigation disclosures. Indeed, plaintiff's own counsel in this case has previously brought Privacy Act claims virtually identical to those asserted here, only to face summary dismissal on routine use grounds, and an order to show cause in the D.C. Circuit why he should not be sanctioned for filing a frivolous appeal. Moreover, plaintiff's claims are subject to dismissal for various additional reasons quite apart from the applicable routine use exception.

## FACTUAL BACKGROUND[1]

Plaintiff worked for the CIA from 1968 until 1999, when he retired from his job as a polygrapher. Am. Compl. ¶ 3. In 2004, pursuant to a secrecy agreement, plaintiff initiated a manuscript review process with the CIA's Publication Review Board ("PRB") whereby plaintiff sought approval to publish a book he had written: Gatekeeper: Memoirs of a CIA Polygraph Examiner (Potomac Books, 2007). Am. Compl. ¶¶ 9-10. The PRB approved publication in January 2007, and the book was published the following April. Am. Compl. ¶ 10.

Around the same time that plaintiff initiated the manuscript review process, plaintiff also began seeking new employment. In November 2003, plaintiff applied for a position with the Clandestine Service Reserve Cadre. Am. Compl. ¶ 11. This position required an active security clearance. Id. As part of the process of obtaining a security clearance from the CIA, plaintiff submitted to a polygraph examination administered by the CIA. Am. Compl. ¶ 12. In addition,

---

[1] While defendants do not concede any of plaintiff's allegations, they are assumed to be true for purposes of this Motion to Dismiss.

on March 25, 2004, plaintiff met with a "Security Professional" for an interview.  Am. Compl. ¶ 17.  Plaintiff claims that various procedural irregularities occurred, and that he was treated discourteously, during his security processing.  Am. Compl. ¶¶ 13-23.

On or about February 11, 2005, plaintiff received a letter dated January 28, 2005, denying his request for a security clearance.  Am. Compl. ¶ 19.  The denial, which is incorporated by reference into the complaint,[2] explained that the agency's decision was based on plaintiff's security violations and personal conduct.  Exhibit A to Tormey Declaration ("Tormey Decl.").  In particular, the CIA explained that his request was being denied because plaintiff admitted to removing various classified documents from the CIA when he retired in 1999, and because of his conduct during the polygraph examination, including plaintiff's use of profanity in the second testing session.  Id.  The letter further explained that defendant could seek review of the agency's decision, and provided information and instructions on the process for doing so. Id.

Plaintiff thereafter timely appealed the initial security clearance denial.  Am. Compl. ¶ 20.  His appellate submissions, which are also incorporated by reference in the complaint,[3]

---

[2] The CIA's denial of plaintiff's request for a security clearance and plaintiff's subsequent appeal of that denial are referenced in the complaint and are central to plaintiff's claims.  As a result, the CIA's denial letter and plaintiff's submissions on appeal can be considered in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) without converting it into a motion for summary judgment.  See, e.g., Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment."); Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) (documents may be considered on motion to dismiss because they are "referred to in the complaint and are integral to Kaempe's conversion claim.")

[3] See supra note 2.

include a letter dated February 15, 2005, in which he enumerated and discussed several reasons

why he felt the initial security clearance decision should be reconsidered.  See Ex. B to Tormey

Decl.  As part of the appeal process, the CIA provided plaintiff with the unclassified redacted

copy of the investigative file compiled in conjunction with his security processing, including

various background investigation reports.  Am. Compl. ¶ 21.  Plaintiff reviewed the information

in his file for accuracy and completeness.  Am. Compl. ¶ 22.  On March 15, 2005, in another

submission in support of his appeal, plaintiff proffered additional explanation and argument

relating to this investigative file.  See Ex. C to Tormey Decl.

Shortly thereafter, the CIA decided to reverse its initial decision.  Am. Compl. ¶¶ 24, 26.

In late June 2005, the CIA sent plaintiff an unclassified letter informing him that the initial

decision to deny him a security clearance had been reversed, Am. Compl. ¶ 24, and the

complaint further states that plaintiff was ultimately granted a security clearance, Am. Compl. ¶¶

28, 70.

## PROCEDURAL BACKGROUND

On April 5, 2007, plaintiff brought this action against the CIA, asserting Privacy Act and

constitutional challenges to the reversed security clearance denial.  Plaintiff challenged the

decision under the accuracy provisions of the Privacy Act, see 5 U.S.C. §§ 552a(e)(5) & (6),

asserting, inter alia, that the CIA's "initial determination was seriously flawed," Compl. ¶ 24;

that plaintiff was "wrongfully denied his security clearance," ¶ 26; and that the CIA "sabotag[ed]

the granting of his security clearance," ¶¶ 48, 58.  Plaintiff also sued under the First Amendment,

claiming that the CIA wrongfully denied the clearance in order to discourage him from

publishing his book.  Compl. ¶¶ 31-34.  Finally, plaintiff claimed that the CIA had deprived him

6

of a Fifth Amendment "liberty interest" without due process when it denied his security

clearance request, Compl. ¶¶ 27-30, 65-73, despite the complaint's further allegation that this

denial had been reversed on direct administrative appeal, and that plaintiff had ultimately been

granted a security clearance, Compl. ¶¶ 22, 26. Plaintiff contended that his successful appeal

showed that the initial determination was "seriously flawed." Compl. ¶ 24.

On August 31, 2007, the CIA moved to dismiss for lack of jurisdiction and failure to state

a claim. In support of this motion, the CIA submitted the declaration of Kathleen B. Tormey,

which was filed with the Court on the public record along with the motion to dismiss. The CIA

attached to the Tormey Declaration three documents, including the challenged security clearance

denial, dated January 28, 2005, and plaintiff's two administrative appeal submissions dated

February 15, 2005 and March 15, 2005. These documents, which are incorporated by reference

in the complaint, supported various grounds to dismiss.

On September 29, 2007, approximately thirty days after defendant filed the motion to

dismiss, plaintiff filed a motion to extend the time to respond. Prior to filing this motion,

plaintiff's counsel communicated with defendant's counsel via e-mail and telephone to seek his

consent to the request, which defendant's counsel gave. During this time, plaintiff's counsel did

not raise any concerns about the documents filed with the CIA's motion to dismiss. Bryce

Declaration ("Bryce Decl.") at ¶ 3. The Court thereafter granted plaintiff's extension motion,

giving him until Monday, November 5, 2007, to respond to defendant's motion.

Late at night on November 4, 2007, plaintiff's counsel e-mailed defendant's counsel at

the DOJ, informing him about concerns regarding the documents filed in support of the CIA's

motion to dismiss. Id. ¶ 4. Specifically, plaintiff's counsel informed defendant's counsel that

the documents contained certain "Privacy Act protected information," including plaintiff's social security number, home address, e-mail address, and phone number.  <u>Id.</u>  Claiming that he was not seeking any admission that a Privacy Act violation had occurred, plaintiff's counsel stated that he was instead requesting DOJ's assistance in minimizing his concerns about possible identity theft by getting the information off the public docket.  <u>Id.</u>  Defendant's counsel responded by e-mail the next morning that he understood counsel's concerns, and would take steps to ask the Court to put the documents under seal.  <u>Id.</u> ¶ 5.  Immediately thereafter, defendant's counsel contacted the court's ECF help line and spoke to a court employee, who placed the documents under seal during the conversation, and advised defendant's counsel to refile redacted versions of the documents along with an "errata."  <u>Id.</u>  Counsel did so later that day after allowing plaintiff's counsel to review the redacted versions.  <u>Id.</u>

The same day, shortly after the documents had been placed under seal, plaintiff's counsel notified defendant's counsel for the first time that he was filing an amended complaint which added the DOJ as a defendant.  <u>Id.</u> ¶ 6.  The amended complaint added six new money damages claims under the Privacy Act against the CIA and its litigation counsel, the DOJ, all purportedly based on the documents filed in support of the CIA's motion to dismiss.  Plaintiff also re-asserted his prior challenges to the reversed security clearance denial under the Privacy Act and Constitution, as well as adding a new challenge under the Administrative Procedure Act ("APA").  Am. Compl. ¶¶ 66, 68-70.

## **ARGUMENT**

## I.    **PLAINTIFF'S PRIVACY ACT CHALLENGES TO THE REVERSED SECURITY CLEARANCE DENIAL MUST BE DISMISSED**

Plaintiff's Privacy Act claims seek money damages for claimed injuries arising out of the

8

CIA's reversed security clearance denial. In particular, Count III asserts that the CIA violated the Act, 5 U.S.C. § 552a(g)(1)(C), by failing to maintain accurate records about plaintiff during the security clearance process which resulted in an adverse security clearance determination against him. Am. Compl. ¶¶ 48-55. In addition, Count IV alleges that the CIA wrongfully disseminated inaccurate records, see 5 U.S.C. § 552a(e)(6), by telling unspecified government contractors that there were "issues" relating to plaintiff's security clearance when in fact "there were no legitimate issues," "thereby causing them to either never offer [sic] or withdraw an existing employment offer." Am. Compl. ¶¶ 59-61.

A.    **Plaintiff's Privacy Act challenges to the CIA's security clearance denial must be dismissed on separation of powers grounds**

It is well-settled that courts and other "nonexpert" bodies outside the Executive Branch, have neither the competence nor the authority under the Constitution to review the substance of an agency's security clearance decision. See, e.g., Egan, 484 U.S. 518; Ryan v. Reno, 168 F.3d 520, 523 (D.C. Cir. 1999). That decision is a "sensitive and inherently discretionary judgment call" and "is committed by law to the appropriate agency of the Executive Branch." Egan, 484 U.S. at 528. As the Supreme Court explained in Egan:

> For "reasons ... too obvious to call for enlarged discussion," CIA v. Sims, 471 U.S. 159, 170, 105 S.Ct. 1881, 1888, 85 L.Ed.2d 173 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

See id. at 529. See also, e.g., Ryan, 168 F.3d at 523 (Egan bars review of security clearance decisions by a non-expert body, "whether administrative or judicial").

9

This jurisdictional bar precludes otherwise valid statutory claims that would call into question the merits of an agency's security clearance determination. In <u>Ryan</u>, for example, the D.C. Circuit held that "employment actions based on denial of security clearance are not subject to judicial review, including under Title VII." <u>Id.</u> Such Title VII claims call into question the merits of the agency's security clearance decision because they require the court to assess the validity of the agency's proffered non-discriminatory reasons for the denial or revocation. <u>See id.</u> "Because the district court" thus "could not proceed with the appellants' discrimination action without reviewing the merits of DOJ's decision not to grant a clearance, the court was foreclosed from proceeding at all." <u>Id.</u> at 524. <u>See also</u>, <u>e.g.</u>, <u>Weber v. United States</u>, 209 F.3d 756, 759 (D.C. Cir. 2000) (an adverse decision on an issue of security clearance is not subject to review under the whistleblower protection provisions of the Civil Service Reform Act); <u>United States Info. Agency v. Krc</u>, 905 F.2d 389, 395-97 (D.C. Cir. 1990) (Foreign Service Act did not give the Foreign Service Grievance Board jurisdiction to review a decision of a security program manager to withdraw plaintiff from overseas postings; nor did the court have jurisdiction under the Administrative Procedure Act to review the decision); <u>Beattie v. Boeing Co.</u>, 43 F.3d 559, 566 (10th Cir. 1994) (merits of security clearance decisions not subject to judicial review, thus precluding <u>Bivens</u> constitutional tort claim); <u>Guillot v. Garrett</u>, 970 F.2d 1320, 1326 (4th Cir. 1992) (individual security classification determinations not subject to judicial review for alleged violations of Rehabilitation Act of 1973).

Plaintiff's Privacy Act claims are clearly barred by this authority. As noted, plaintiff's claimed Privacy Act injuries allegedly arise from the CIA's now-reversed security clearance denial. To recover money damages on his various accuracy claims, therefore, plaintiff would

have to show, <u>inter alia</u>, that the denial was *caused by* inaccuracies in the CIA's records

pertaining to him.  <u>See</u>, <u>e.g.</u>, <u>Hubbard v. U.S. E.P.A. Adm'r</u>, 809 F.2d 1, 4-5 (D.C. Cir. 1986);

<u>Reuber v. United States</u>, 829 F.2d 133, 140-41 (D.C. Cir. 1987).  Obviously, the Court cannot

decide whether the CIA's security clearance denial was based on – i.e., caused by – inaccurate

records without assessing the merits of the denial itself.  For example, plaintiff's claims would

require the Court to ascertain whether the security clearance denial was based upon (as yet

unidentified) inaccuracies in plaintiff's records, or instead upon the CIA's stated grounds for the

denial, namely, plaintiff's admitted security violations and his conduct during the examination

process, including the use of profanity.  Ex. A to Tormey Decl.  This substantive review of the

agency's *reasons* for its security clearance decision is precisely what cases such as <u>Egan</u> and

<u>Ryan</u> prohibit.  <u>See</u>, <u>e.g.</u>, <u>Ryan</u>, 168 F.3d at 524; <u>Weber</u>, 209 F.3d at 759.

 Accordingly, plaintiff's Privacy Act claims must be dismissed for lack of jurisdiction

under Fed. R. Civ. P. 12(b)(1).

**B.** **Plaintiff's Privacy Act challenges to the security clearance denial are precluded by the Civil Service Reform Act**

 Because plaintiff was seeking employment at the CIA, and did not obtain a job,  Am.

Compl. ¶¶ 11, 28, his Privacy Act claims fall within the purview of the Civil Service Reform Act

("CSRA").  The CSRA is an "enormously complicated and subtle scheme" that "govern[s]

employee relations in the federal sector." <u>Steadman v. Governor, United States Soldiers' & Airmen's Home</u>, 918 F.2d 963, 967 (D.C. Cir. 1990).  In order to avoid disrupting this

"comprehensive and integrated . . . scheme," courts have held that CSRA precludes federal

employees from challenging agency personnel decisions in judicial actions outside that scheme.

<u>See</u>, <u>e.g.</u>, <u>United States v. Fausto</u>, 484 U.S. 439, 454-55 (1988).  In particular, plaintiffs may not

circumvent the CSRA by using the Privacy Act to collaterally attack agency personnel decisions. See, e.g., Kleiman v. Dep't of Energy, 956 F.2d 335, 338 (D.C. Cir. 1992) ("This court has refused to allow 'the exhaustive remedial scheme of the CSRA' to be 'impermissibly frustrated,' by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA.") (citation omitted).

Plaintiff's accuracy claims under the Privacy Act claims are precluded by the CSRA.[4] "Since Congress specifically chose to oust the district courts of jurisdiction to review government personnel practices, it would be anomalous to construe the pre-existing Privacy Act to grant the district court power to do indirectly that which Congress precluded directly." Hubbard v. Environmental Protection Agency, 809 F.2d 1, 5 (D.C. Cir. 1986). Accordingly, to ensure that courts reviewing such accuracy claims do not exceed their jurisdiction, they must "*carefully analyze* the asserted causation link" between the allegedly inaccurate records and the agency's adverse determination. Id. (emphasis added). In this case, plaintiff claims that he failed to get a job with the CIA because the CIA wrongfully denied his request for a security clearance. Am. Compl. ¶¶ 11, 28. However, as discussed more fully below, see Part I.D, plaintiff has failed to explain how his claimed injuries were caused by inaccuracies in his records. Indeed, plaintiff has failed to identify any inaccuracies in his records at all, let alone identify the "causation link" that this Court must "carefully analyze" in order to determine its own jurisdiction. Instead, plaintiff asserts that the security clearance denial itself was improper,

---

[4] Plaintiff's status as a job applicant, rather than a current government employee, does not change the analysis. The CSRA broadly defines "personnel action" to include "an appointment," 5 U.S.C. § 2302(a)(2)(A)(i), which thereby encompasses job applicants for federal employment in federal agencies such as plaintiff. See, e.g., Spagnola v. Mathis, 859 F.2d at 225 n. 3; Hubbard v. Administrator, E.P.A., 809 F.2d 1, 8 n. 10 (D.C.Cir.1986).

and that as a result of this denial, he failed to get the desired position at the CIA. As a result, not only has plaintiff failed to state a Privacy Act claim, <u>see</u> Part I.D, but such defective claims are also precluded by the CSRA. The "bad fit between the facts asserted by [plaintiff] and a colorable Privacy Act claim" shows that, at best, "his complaint really alleges only a wrongful personnel decision," not a violation of the Privacy Act.[5] <u>Hubbard</u>, 809 F.2d at 5-6.

### C.    Plaintiff's Privacy Act challenges to the security clearance denial are time-barred

Plaintiff's Privacy Act claims are also time-barred under the Act's two-year statute of limitations. Under the Privacy Act, an individual must file a civil action "within two years from the date on which the cause arises." 5 U.S.C. § 552a(g)(5). "A cause of action arises under the Privacy Act at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error." <u>Mitchell v. Bureau of Prisons</u>, 2005 WL 3275803 (D.D.C. 2005) (Roberts, J.) (quoting <u>Szymanski v. United States Parole Comm'n</u>, 870 F. Supp. 377, 378 (D.D.C. 1994)). "The critical issue for determining whether plaintiff's action is barred by § 552a(g)(5) is the time at which the plaintiff first knew or had reason to know that allegedly inaccurate records were being maintained." <u>Id.</u> (citation omitted)).

---

[5] The CSRA is no less preclusive simply because plaintiff's claims would undoubtedly not be subject to any sort of relief under the CSRA either. To the contrary, the "failure to include" any relief "within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available." <u>Fornaro v. James</u>, 416 F.3d 63, 67 (D.C. Cir. 2005) (quoting <u>Carducci v. Regan</u>, 714 F.2d 171, 174-75 (D.C.Cir.1983)); <u>see also</u>, <u>e.g.</u>, <u>Fausto</u>, 484 U.S. at 448-49 (the CSRA's exclusion of certain categories of employees "is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by [the CSRA]").

Plaintiff's Privacy Act claims are clearly time-barred under these standards.  Although plaintiff has completely failed to identify any actionable inaccuracies in his records, <u>see</u> Part I.D, his complaint contains conclusory allegations that the agency maintained and disseminated inaccurate records bearing on his security clearance.  Am. Compl. ¶¶ 48-49, 60-61.  According to the allegations in the complaint, plaintiff received the security clearance denial on February 11, 2005 – more than two years before plaintiff filed suit on April 5, 2007.  Am. Compl. ¶ 19.  Since plaintiff claims that "no legitimate security clearance issues existed that would cause a problem in . . . attaining access to classified information," Am. Compl. ¶ 59, plaintiff should have known about any purported errors at that time, and his Privacy Act claims are thus time-barred under the two-year statute of limitations.  <u>See</u> 5 U.S.C. § 552a(g)(5).

Plaintiff does not suggest any reason why he could not have known about any actionable inaccuracies at the time of the initial security clearance denial, but even if he were to do so, his Privacy Act claims would still be time-barred.  The complaint specifically alleges: (1) that plaintiff timely appealed the agency's security clearance denial, Am. Compl. ¶ 20, (2) that as part of that process, the CIA provided him with the unclassified redacted copy of his "investigative file," which was "compiled in conjunction with [plaintiff's] security processing," Am. Compl. ¶ 21, and (3) that he reviewed the documents in this file and noted "numerous factual inaccuracies and omissions," Am. Compl. ¶ 22.  Plaintiff's own administrative appeal papers demonstrate that he received and reviewed this information *before* April 5, 2005, and thus that he should have known about any purported inaccuracies more than two years before filing suit.  <u>See</u>  Ex. C to Tormey Decl. (March 15, 2005 letter raising questions about the information in his file).  <u>See also</u> Ex. B to Tormey Decl. (February 15, 2005 letter challenging security

14

clearance denial and claiming that plaintiff has lost money as a result of the denial).  Indeed, plaintiff's amended complaint now *admits* that he received his investigative file in March 2005 – again more than two years before filing suit.  Am. Compl. ¶ 49.  Accordingly, plaintiff's own allegations establish that his Privacy Act claims are time-barred.

### D.    Plaintiff Has Failed To State A Privacy Act Claim

In any event, even if the Court did not lack jurisdiction, and even if the Privacy Act claims were not time barred, they would still have to be dismissed because plaintiff has failed to allege any actionable conduct under the Privacy Act.  "It is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'" Mueller v. Winter, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (citation omitted).  In particular, the Act is intended to remedy "factual or historical errors," and is not a vehicle for addressing "the *judgments* of federal officials . . . reflected in records maintained by federal agencies." Kleiman, 956 F.2d at 337-38 (emphasis in original) (citation and internal formatting omitted)).  Accordingly, "a complaint that is not about the accuracy of . . . records, but about the underlying decision they reflect" is not cognizable under the Privacy Act.  Levant v. Roche, 384 F. Supp. 2d 262, 270 (D.D.C. 2005) (dismissing Privacy Act claims under Fed. R. Civ. P. 12(b)(6)); see also Enigwe v. Bureau of Prisons, 2006 WL 3791379 (D.D.C. Dec. 22, 2006) (same); Doyon v. U.S. Dept. of Justice, 304 F. Supp. 2d 32 (D.D.C. 2004) (same).

In this case, plaintiff's Privacy Act claims are in fact challenges to the CIA's initial security clearance denial (and thus ultimately to his failure to get the desired CIA job), and not to the historical accuracy of any records underlying that decision.  Am. Compl. ¶ 28 (alleging that plaintiff was "wrongfully denied his security clearance"); ¶ 59 (asserting that no "legitimate"

15

security clearance issues existed that would cause a problem in granting a security clearance); ¶ 39 (alleging that the CIA "sabotag[ed] the granting of his security clearance") ¶ 44 (alleging that the CIA "falsely" denied plaintiff a security clearance); ¶ 44 (initial decision "lacked a substantive basis").  Indeed, plaintiff fails to identify *any* actionable inaccuracies in his records, even though he admits to having reviewed the unclassified redacted copy of the investigative file compiled during his security proceedings.  Am. Compl. ¶ 21-22, 49.  At best, plaintiff's allegations challenge the *procedure* used in his security clearance proceedings, not the accuracy of any records compiled.[6]  See Am. Compl. ¶ 15 (polygraph examiner included in his report details which "CIA policy" states should be excluded); ¶¶ 17, 27 (in personal interview with "security professional," security professional "smirked" at plaintiff and accused him of lying); ¶ 23 (failing to provide polygraph results to "QAS"); ¶ 22 (failing to interview individuals listed as favorable references).  Such allegations are not cognizable under the Privacy Act.  E.g., Bernard v. Department of Defense, 362 F. Supp. 2d 272, 281 (D.D.C. 2005) (plaintiff's challenges to the procedure used to revoke his security clearance not actionable under Privacy Act because they did not identify factual or historical error in plaintiff's records).

Tacitly recognizing this deficiency, plaintiff now asserts for the first time in his amended

---

[6]  One allegation is worded to appear as if it relates factual or historical error, but his own appeal submission demonstrates otherwise.  See Am. Compl. ¶ 22 (asserting that plaintiff's "file" inaccurately noted that plaintiff's wife was "a foreign national whom [plaintiff] had met in Vietnam").  As Exhibit C to the Tormey Declaration makes clear, the statement about plaintiff's wife is simply a record of what one of plaintiff's friends said during an interview.  There is no allegation that the CIA inaccurately recorded what the interviewee said.  Indeed, plaintiff's own complaint makes clear that his records (i.e., his SF-86) contain the *correct* information about his wife.  Am. Compl. ¶ 22.  In any event, plaintiff does not (and cannot) allege that the "inaccuracy" had anything whatsoever to do with the security clearance denial.  See Hubbard, 809 F.2d at 4-5 (adverse determination must be "proximately caused" by inaccuracy).

16

complaint that he "reasonably believes" false information was redacted from his investigative file because he was wrongfully denied a security clearance. Am. Compl. ¶ 49. This tautology only confirms the point made here, i.e., that plaintiff's only "basis" for suing under the Privacy Act is his view that he was wrongfully denied a security clearance. Allowing accuracy claims to proceed under the Privacy Act simply because a plaintiff disagrees with an agency determination is precisely what the D.C. Circuit has found unacceptable. See Hubbard, 809 F.2d at 5-6; Kleiman, 956 F.2d at 337-38. In any event, regardless of whether the initial security clearance decision is viewed as "right" or "wrong" (and again, this Court lacks authority to make such an assessment), it would imply nothing whatsoever about the accuracy of plaintiff's records. As discussed, security clearance decisions rest on a "sensitive and inherently discretionary judgment call." Egan, 484 U.S. at 528. That some person might exercise discretion differently from the Executive Branch official making the decision (and to whose discretion that decision is committed by law) indicates nothing about the accuracy of the records underlying the decision. See id.

    In any event, plaintiff has also failed to allege, as he must, that any inaccuracies *caused* his injuries. The security clearance denial itself informed plaintiff that his request was denied because of his admissions that he improperly removed classified documents from the CIA when he retired in 1999, and also because of his behavior in the examination process, including the use of profanity. Ex. A to Tormey Decl. See supra at 5. Of course, this Court has no authority to question the bases for the CIA's security clearance decision, or to evaluate whether the stated grounds rest on accurate or inaccurate information. In this case, however, plaintiff does not even *address* the CIA's stated reasons for the denial, let alone assert that the denial was caused by any

17

particular inaccurate records.  Rather, as explained above, plaintiff's amended complaint simply asserts that the decision itself was wrong, that his security processing was procedurally flawed, and that he was treated discourteously by his examiners.  Am. Compl. ¶¶ 13-23.  Accordingly, plaintiff has not alleged that any inaccurate records caused his injuries, and his Privacy Act claims must be dismissed.

## II.    PLAINTIFF'S CONSTITUTIONAL CHALLENGES TO THE REVERSED SECURITY CLEARANCE DENIAL MUST BE DISMISSED

Plaintiff's constitutional claims under the First Amendment (Count II) and Due Process Clause of the Fifth Amendment (Counts I and VI) must also be dismissed.

### A.    Plaintiff's First Amendment Claim Must Be Dismissed

Count II purports to assert a claim that CIA retaliated against plaintiff in violation of the First Amendment.  Specifically, plaintiff alleges that defendant used the security clearance proceedings to intimidate him and retaliate against him in order to discourage him from publishing his book.  Am. Compl. ¶¶ 41-45.  This claim must be dismissed for lack of jurisdiction because  plaintiff has no standing to obtain the requested declaratory relief.  Fed. R. Civ. P. 12(b)(1).  Even if plaintiff's claim were not jurisdictionally barred under the Constitution, it would have to be dismissed because plaintiff has failed to state a First Amendment retaliation claim.  Fed. R. Civ. P. 12(b)(6).

### 1.    *Plaintiff's First Amendment Claim Must Be Dismissed For Lack of Article III Standing*

Standing is a jurisdictional doctrine grounded in the case-or-controversy requirement of Article III of the Constitution . See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  At the pleadings stage, the plaintiff must "clearly and specifically" allege facts demonstrating

standing, <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990), and must demonstrate standing

separately for each form of relief sought," <u>Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.,</u>

<u>Inc.</u>, 528 U.S. 167 (2000).  To demonstrate standing under Article III, a party must show an

injury-in-fact caused by the conduct of the defendants that can be redressed by judicial relief.

<u>See</u> <u>Lujan</u>, 504 U.S. at 560-61.  Where, as here, the plaintiff seeks prospective relief, such as a

declaratory judgment,[7] "'[p]ast exposure to illegal conduct'" alone does not suffice to show

standing.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983). (alteration in original)

(quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974)).  He must also be able to show a "real

and immediate" threat that he will be subjected to the alleged illegality again in the future.  <u>See</u>

<u>Lyons</u>, 461 U.S. 105.  In <u>Lyons</u>, for example, the Court held that a plaintiff who had been

subjected to an allegedly illegal chokehold by police had not shown a sufficient danger that he

would again be subjected to illegal chokeholds in the immediate future.  <u>See</u> <u>id.</u>  <u>See also</u>, <u>e.g.</u>,

<u>Fair Employment Council v. BMC Marketing Corp.</u>, 28 F.3d 1268 (D.C. Cir. 1994).

        In this case, plaintiff does not attempt to allege *any* likelihood – much less a real and

immediate one – that he will be subjected to the claimed First Amendment retaliation again.

Plaintiff claims that the CIA denied him a security clearance to discourage him from publishing

his book.  Am. Compl. ¶¶ 41-45.  Plaintiff admits, however, that the initial security clearance

denial was reversed early in the appeals process, and that the book was published.  Am. Compl.

¶¶ 10, 24-26.  Nothing in the complaint suggests that there is any likelihood whatsoever that the

perceived retaliation will occur again.  Plaintiff does not allege that that he will seek a security

---

        [7] As explained below, see Part II.C, plaintiff's money damages claims under the
Constitution must be dismissed for lack of jurisdiction on sovereign immunity grounds.

clearance at any time in the immediate future, and that when he does, the CIA will deny his request and use such proceedings to discourage him from publishing a book. See Lyons, 461 U.S. at 105-106; see also BMC Marketing Corp., 28 F.3d at 1273 (reversing denial of motion to dismiss because complaint plaintiffs did not allege that they would reinitiate contact with defendant in near future, and did not allege that defendant would again discriminate against them); Munsell v. Department of Agriculture, 509 F.3d 572, 581 (D.C. Cir. 2007) (no standing for First Amendment retaliation claims because "even if Munsell could establish that agency officials violated his First Amendment rights by retaliating against him in the past, neither he nor MQF demonstrated a real and immediate threat that they would be subject to the same conduct in the future"). Any such allegation, of course, would not only be speculative, but downright incredible, particularly given plaintiff's own allegations that (1) plaintiff's book has been published; (2) that the CIA decided to reverse its own initial security clearance denial early in the appeals process; and (3) that plaintiff ultimately obtained a security clearance. Am. Compl. ¶¶ 10, 24-26, 28, 70.

In short, "the facts as alleged in the complaint do not come close" to indicating that plaintiff "'will again be subjected to the alleged illegality.'" Id. at 1274. Consequently, plaintiff lacks standing to seek declaratory relief, and his First Amendment retaliation claim must be dismissed for lack of jurisdiction.

## 2.    *Plaintiff Has Failed To Allege A First Amendment Retaliation Claim*

Wholly apart from his lack of standing, plaintiff has failed to state a First Amendment retaliation claim. First, plaintiff has not identified any actionable retaliatory conduct under the First Amendment. Although plaintiff claims that defendant used the security clearance process

to intimidate him, Am. Compl. ¶ 43, such proceedings do not constitute the sort of conduct that gives rise to a First Amendment retaliation claim. Plaintiff was not "subjected" to these proceedings; he voluntarily submitted to them in hopes of obtaining employment with the CIA's Clandestine Service Reserve Cadre. Am. Compl. ¶ 11. Such proceedings are a critical means of protecting the United States' "compelling interest" in preventing unauthorized disclosure of national security information. See Egan, 484 U.S. at 527 (citation omitted). Moreover, that proceeding did not conclude with any adverse action being taken against plaintiff. To the contrary, plaintiff specifically alleges that the initial denial of his security clearance was reversed by the CIA in the earliest stages of the appeal process. Am. Compl. ¶¶ 24-26, 28, 70. See Penthouse Internat'l Ltd. v. Meese, 939 F.2d 1011, 1015 (D.C. Cir. 1991) ("[T]he Supreme Court has never found a government abridgement of First Amendment rights in the absence of some actual or threatened imposition of governmental power or sanction.")

Plaintiff's allegations of purportedly intimidating or harassing conduct, whether considered separately or in combination, cannot transform these lawful and, indeed, necessary security investigations into actionable retaliatory conduct. Indeed, even where (unlike here) plaintiffs have been subjected to investigations against their will, courts have repeatedly rejected retaliation claims in the absence of some tangible adverse outcome. See, e.g., id.; Colson v. Grohman, 174 F.3d 498, 510-513 (5th Cir. 1999) (retaliatory criticisms, investigations, and false accusations of criminal conduct not actionable under the First Amendment where they do not result in any official action being taken against plaintiff); Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir. 2002) (internal investigation is no adverse employment action where employee "suffered no material disadvantage in a term or condition of employment as a result of the

investigations"); <u>Benningfield v. City of Houston</u>, 157 F.3d 369, 376 (5th Cir. 1998) (allegedly retaliatory referral of employee for psychological testing not actionable because such "referral was designed to gather facts to form the basis for an employment decision").  Moreover, the initial security clearance denial is also not actionable (assuming a security clearance denial could *ever* be reviewed as actionable retaliatory conduct, <u>but see</u> <u>Egan</u>, 484 U.S. 528) because plaintiff admits it was reversed by the CIA early in the appeals process.  <u>See</u>, <u>e.g.</u>, <u>Benningfield</u>, 157 F.3d at 376 (allegedly retaliatory lowering of job performance rating not actionable because employer subsequently returned it to its previous level).

Apart from his failure to allege any actionable retaliatory conduct, plaintiff has also failed to allege the requisite adverse affect on speech.  To establish a First Amendment retaliation claim plaintiff must, in addition to showing retaliatory motive, establish that "defendants' actions effectively chilled the exercise of his First Amendment right."  <u>Hatfill v. Ashcroft</u>, 404 F. Supp. 2d 104 (D.D.C 2005) (citation omitted).  As the Supreme Court has held, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific objective harm or a threat of specific future harm."  <u>Laird v. Tatum</u>, 408 U.S. 1, 13-14 (1972). "The widely accepted standard for assessing whether 'harassment for exercising the right of free speech [is] ... actionable' ... depends on whether the harassment is '[ ]likely to deter a person of ordinary firmness from that exercise.' "  <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576, 585 (D.C. Cir. 2002) (citations omitted).  In this case, it is clear that plaintiff's free speech has not been chilled in any manner.  Indeed, notwithstanding the CIA's purported efforts during the security clearance process to discourage him from publishing his book, plaintiff admits that he went ahead and published it in April 2007, after the CIA's Publication Review Board approved it.

Am. Compl. ¶ 10.  Thus, plaintiff's complaint not only fails to allege any actual chilling effect

from the security clearance process, it affirmatively establishes that plaintiff was not chilled at

all.  "And where a party can show no change in his behavior, he has quite plainly shown no

chilling of his First Amendment right to free speech."  Krieger v. U.S. Dept. of Justice, ---

F.Supp.2d ----, 2008 WL 62627 at *21 (D.D.C. Jan. 7, 2008) (internal formatting and citation

omitted); Hatfill, 404 F. Supp. 2d at 118-119 (dismissing First Amendment retaliation claim

under Fed. R. Civ. P. 12(b)(6) because plaintiff continued exercising First amendment rights

after alleged retaliation).[8]

### B.    Plaintiff's Due Process Liberty Interest Claim Must Be Dismissed

To establish a liberty interest claim in the employment context, plaintiff must first show

that the government negatively altered his employment status "in a tangible way."  United States

Information Agency v. Krc, 905 F.2d 389, 397 (D.C. Cir. 1990); Orange v. District of Columbia,

59 F.3d 1267, 1274 (D.C. Cir. 1995).  In addition, plaintiff must show that in altering his

employment status, the defendant also:

> stigmatize[d] the employee or impugn[ed] his reputation so as to either (1) seriously
> damage his standing and associations in his community ("reputation-plus"), or (2)
> foreclose[d] his freedom to take advantage of other employment opportunities by
> either (a) automatically excluding him from a definite range of employment
> opportunities with the government or (b) broadly precluding him from continuing his
> chosen career ("stigma or disability").

---

[8] See also, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) (finding
no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through
which he criticized the village government); Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d
Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit claiming retaliation for
its editorial criticizing police handling of anti-abortion demonstrators, the plaintiff continued to
write criticizing editorials in the same manner as before the lawsuit); Naucke v. City of Park
Hills, 284 F.3d 923, 928 (8th Cir. 2002) (no actionable retaliation where plaintiff continued to
speak out notwithstanding alleged retaliation).

See M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001).  Accord O'Donnell v. Barry, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998).  Finally, if plaintiff can show that the CIA deprived him of a liberty interest under these standards, he must also show it did so without affording him due process.  Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989).  Here, plaintiff's liberty interest claim misses every gate from start to finish.

First, plaintiff has not alleged any alteration in his employment status.  The requirement of a tangible status change, such as a "discharge from government employment or at least a demotion in rank and pay," functions in part "to limit the scope of permissible due process claims to a small set of truly serious claims."  O'Donnell, 148 F.3d at 1140 (citation and internal quotes omitted).  Here, plaintiff appears to be claiming that the agency's now-reversed security clearance denial amounted to an alteration in status.  Am. Compl. ¶ 38.  The non-final denial of a security clearance, however, particularly one that is subsequently reversed, is clearly *not* the sort of "tangible" alteration of status that gives rise to such "truly serious" due process claims.  See id.  Plaintiff also alleges that the delay in ultimately granting clearance caused the loss of some employment opportunities.  Am. Compl. ¶ 28 (alleging that certain offers were either never made or were withdrawn, and that plaintiff could not attend job fairs requiring a security clearance "for several months").  As the D.C. Circuit ruled in Krc, however, "the 'loss of some employment opportunities do[es] not ... amount to an alteration of a legal right,' particularly when the loss of employment flows directly from the modification of a security clearance, which itself represents only a change in the terms of an agency's exercise of its discretion."[9]  See id. (citing, inter alia,

---

[9]  In fact, plaintiff has not even really alleged that he "lost" anything, since he did not have a security clearance or government job at the time he commenced the security clearance process.

Egan, 484 U.S. at 528). See also Siegert v. Gilley, 500 U.S. 226, 233 (1991).

Second, plaintiff has also failed to allege any actionable reputational harm or stigma. Plaintiff has not stated a "reputation-plus" claim because he has not identified any public accusations that will damage his standing and associations in the community. See Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989); M.K. v. Tenet, 196 F. Supp. 2d 8, 15 (D.D.C. 2001). At best, plaintiff alleges (in one of the Privacy Act counts), that the CIA told unidentified "government contractors" there were "security clearance issues." Am. Compl. ¶ 59. But even if defendant had informed certain government contractors about the denial, it would not amount to the kind of "public" dissemination required. See Molerio v. FBI, 749 F.2d 815, 824 (D.C. Cir. 1984) ("it is doubtful" that "the government's confidential and unpublished denial of a security clearance, even for a specified defamatory reason, would be sufficiently disseminated to constitute the sort of 'stigmatizing' that the Paul v. Davis line of cases had in mind"). More fundamentally, however, the disclosure of the security clearance denial would lack the requisite defamatory content necessary to make out a reputation-plus claim. See id. As the Supreme Court in Egan explained, "a clearance does not equate with passing judgment on an individual's character." Egan, 484 U.S. at 528. See also Molerio, 749 F.2d at 824 ("to be denied [a security clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic"). Consequently, "the loss of security clearance and termination of employment" do not "sufficiently damage a plaintiff's reputation" to give rise to a liberty interest claim. M.K., 196 F. Supp. 2d at 15.[10] It follows, a fortiori, that a non-final (and subsequently reversed) denial

_____

[10] See also Jamil v. Sec'y of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990) ("because of the inherently discretionary judgment required in the decisionmaking process, 'no one has a right to a security clearance,' and revocation does not constitute an adjudication of one's character");

of a security clearance that is unaccompanied by any termination or other adverse action is also insufficient.

Plaintiff also cannot make out a "stigma or disability" claim because his allegations do not show that he has been automatically excluded from a definite range of employment opportunities with the government or that he has been broadly precluded from pursuing his chosen profession.  See id.  The complaint contains no allegations, for example, that he was unable to obtain employment (or even that he sought employment) since the events in question. To the contrary, the complaint specifically alleges (1) that the CIA's security clearance denial was reversed early in the appeals process, Am. Compl. ¶¶ 24-26; (2) that plaintiff subsequently obtained a security clearance, Am. Compl. ¶¶ 28, 70; and (3) that his inability to go to job fairs that require a security clearance was only temporary, Am. Compl. ¶ 28.  Quite simply, "[t]here is nothing to suggest that [plaintiff] would be unable to gain employment in another government job, or in the private sector within [his] career field."  M.K., 196 F. Supp. 2d at 16 (dismissing liberty interest claims under Rule 12(b)(6)).[11]

---

Jones v. Department of the Navy, 978 F.2d 1223, 1226 (Fed. Cir. 1992) ("loss of [security clearance] did not reflect upon their character").

[11]  In any event, plaintiff's claims ignore the "obvious" point that no one has a right to a security clearance.  Egan, 484 U.S. at 528.  In Dorfmont v. Brown, 913 F.2d 1399, 1403-1404 (9th Cir. 1990), the court rejected plaintiff's claim that revocation of her security clearance deprived her of her ability to practice her chosen profession, since without it she could no longer obtain employment with a defense contractor.  The court found that "[t]he ability to pursue such employment stands on precisely the same footing as the security clearance itself.  If there is no protected interest in a security clearance, there is no liberty interest in employment requiring a security clearance."  Id.  Therefore, even if a plaintiff was precluded from obtaining employment in the area of national security because of his inability to meet CIA security requirements, he has not been deprived of a liberty interest.  See also  Hill, 844 F.2d at 1411 ("Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right").

26

Finally, even assuming (incorrectly) that plaintiff had alleged the denial of a liberty interest, he has not identified any deficiency in the process afforded him. The "process due" in the liberty interest context is simply an "opportunity" for a plaintiff "to clear his or her name." See Doe v. Casey, 796 F.2d 1508, 1524 (D.C. Cir. 1986), aff'd in part, rev'd in part on other grounds, Webster v. Doe, 486 U.S. 592 (1988). No "formal" or oral hearing is required, so long as plaintiff was provided "an opportunity to be heard in a meaningful manner." Id.

Here, the allegations in the amended complaint establish that plaintiff has already been afforded ample process in his security clearance proceedings, and that he successfully availed himself of that process by seeking and obtaining reversal of the CIA's initial security clearance decision. Id. In particular, plaintiff admits that (1) he provided information to the CIA on his SF-86, and participated in a polygraph exam, as well as an interview with a "security professional," Am. Compl. ¶¶ 11-16, 17, 22, (2) that he was notified of the initial denial decision and was provided with the unclassified redacted copy of the investigative file that was compiled during his security processing, Am. Compl. ¶ 21, (3) that he reviewed this file as part of the appeal process, Am. Compl. ¶ 22. Documents incorporated in the complaint further confirm that plaintiff was given notice of the specific concerns underlying the CIA's denial, namely, his admitted security violations and personal conduct, as well as an opportunity to (1) fully respond in writing, and at length, to the CIA's alleged concerns, (2) submit additional written argument and explanation after having reviewed his investigative file, and (3) identify what he believed to be mitigating circumstances. Exs. A, B, C to Tormey Decl. Indeed, that he was given a "meaningful opportunity to be heard" is established simply by virtue of plaintiff's own allegation that his appeal was successful, and that the CIA reversed its initial decision upon reviewing his

submissions.  Am. Compl. ¶¶ 22-26.  Particularly "[i]n the context of a very sensitive agency

such as the CIA," the Constitution requires nothing more.  Doe v. Casey, 796 F.2d at 1524.

Indeed, since plaintiff was afforded ample process in his administrative appeal, his Due Process

liberty interest challenge to the security clearance denial is moot and must be dismissed for lack

of jurisdiction.[12]  See Fed. R. Civ. P. 12(b)(1).

### C.    The Court Lacks Jurisdiction To Award Money Damages For Asserted Constitutional Violations

It is axiomatic that, absent a waiver of sovereign immunity, a district court lacks

jurisdiction over claims against the federal government.  United States v. Mitchell, 463 U.S. 206,

212 (1983).  Sovereign immunity bars "suits for money damages against officials in their official

capacity, including constitutional claims, absent a specific waiver by the government."  Clark v.

Library of Congress, 750 F.2d 89, 103-04 (D.C.Cir.1984).  As noted in the original motion to

dismiss, plaintiff fails to identify a waiver of sovereign immunity that would permit his money

damages claims under the Constitution, and those claims must therefore be dismissed.  See, e.g.,

Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006) (money damages claim for First

---

[12]  Moreover, plaintiff's claim must be dismissed because he fails to allege that he ever *requested* a more formal hearing.  See Quinn v. Shirey, 293 F.3d 315, 322 (6th Cir. 2002) (dismissing liberty interest claim for failure to allege that plaintiff requested a name-clearing hearing and was denied); Arrington v. County of Dallas, 970 F.2d 1441, 1447 (5th Cir.1992) (plaintiff must allege "that he requested a name-clearing hearing, and that the hearing was denied").  Indeed, where, as here, a plaintiff's appeal is successful in the earliest stages of review, the agency would obviously have no occasion to employ additional procedures, nor any reason to know that the already successful plaintiff would want to pursue them.  See Winskowski v. City of Stephen, 442 F.3d 1107, 1111 (8th Cir. 2006) ("Allowing an employee to claim damages for being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to-or even desires-one.  It would also reward employees for lying in wait and later asserting a right that the employer had no reason to suspect the employee wanted to exercise in the first place.")

Amendment retaliation barred by sovereign immunity).

Plaintiff now attempts to bury this issue by deleting from the original complaint his specific requests for money damages under the Constitution, and instead asking the Court to "award any appropriate relief to be determined in future proceedings." Am. Compl. Prayer for Relief. However, Supreme Court precedent requires the Court to decline plaintiff's invitation to ignore jurisdictional defects in the Complaint and forge ahead with the merits. Steel Co. v. Citizens for a Better Environment, 532 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'").

## III. PLAINTIFF'S RECENTLY ADDED APA CHALLENGE TO THE REVERSED SECURITY CLEARANCE DENIAL MUST BE DISMISSED

Count V of the Amended Complaint adds an APA challenge to the reversed security clearance denial. Plaintiff contends that the CIA "inappropriately and unlawfully denied Sullivan's security clearance by relying upon information derived from a polygraph examination and interview in violation of CIA regulations and the Fifth Amendment." Am. Compl. ¶ 71.

### A. Plaintiff's APA claim must be dismissed for lack of standing and mootness

Like plaintiff's First Amendment claim, plaintiff's APA claim fails because he has not alleged facts ("clearly and specifically" or otherwise) that demonstrate standing. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). As discussed supra Part II.A.1, plaintiff must establish standing to support his request for declaratory and/or injunctive relief by showing a "real and immediate" threat that he will be subjected to the alleged illegal harm again, Lyons, 461 U.S. 105, and that the feared harm is "certainly impending."[13] Whitmore v. Arkansas, 495 U.S. 149,

_____

[13] Plaintiff's claims for money damages under the APA must be dismissed since the APA does not waive sovereign immunity for money damages claims. See 5 U.S.C. § 702; see also

158 (1990). He cannot do so. Plaintiff characterizes the CIA's reversed security clearance denial as the supposedly "final agency decision" giving rise to his injury under the APA. Am. Compl. ¶ 71 (alleging that the denial was "inappropriate and unlawful"). However, there is no indication in the amended complaint that plaintiff will be subjected to another "inappropriate and unlawful" security clearance denial again in the near future, and there certainly is no suggestion that there is any "real and immediate" threat of such harm. Again, the facts in the complaint do not even "come close" to alleging standing. BMC Marketing Corp., 28 F.3d at 1273 (requiring dismissal where no indication that plaintiff will suffer illegality again).

For similar reasons, the APA claim should also be dismissed as moot. A matter is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Munsell, 509 F.3d at 583 (quoting 21st Century Telesis Joint Venture v. FCC, 318 F.3d 192, 198 (D.C. Cir.2003)). Here, the complaint states on its face that the challenged security clearance decision was reversed on appeal and that he ultimately was granted a security clearance. Am. Compl. ¶¶ 28, 70. As a result, even if the court were to "set aside" the challenged security clearance denial under the APA, see 5 U.S.C. § 706(2), it would make no difference whatsoever to plaintiff's rights.

**B.      Plaintiff's APA challenge to the security clearance denial must be dismissed because that decision is committed to agency discretion by law**

As with plaintiff's Privacy Act claims, the Court lacks jurisdiction over plaintiff's APA claim because it challenges the CIA's security clearance decision. In particular, plaintiff alleges that the CIA "inappropriately and unlawfully" denied his request for a security clearance. Am.

---

Wesselman v. United States, 501 F.Supp.2d 98, D.D.C.,2007 ("It is well settled . . .that the APA does not waive sovereign immunity with respect to suits for money damages.")

Compl. ¶ 71.  As discussed in Part I.A, such decisions are committed by law to the discretion of the agency responsible.  Egan, 488 U.S. at 528.  Accordingly, courts have repeatedly held that these sorts of decisions are not reviewable under the APA.[14]  See, e.g., Webster v. Doe, 486 U.S. 592, 601 (1988) (CIA director's decision to discharge employee for national security reasons under section 102(c) of the National Security Act was committed to agency discretion by law and thus not reviewable under the APA); United States Info. Agency v. Krc, 905 F.2d 389, 395-97 (D.C. Cir. 1990) (court lacked jurisdiction under the Administrative Procedure Act to review the decision of a security program manager to withdraw plaintiff from overseas postings); Dorfmont v. Brown, 913 F.2d 1399, 1401-1402 (9th Cir. 1990) (federal courts could not review Department of Defense security clearance decisions, including under the Administrative Procedure Act).

## C.    The Civil Service Reform Act precludes plaintiff's APA claim

Plaintiff's APA claim, like his Privacy Act claims, is precluded under the CSRA.  As explained in Part I.B, plaintiff was seeking employment at the CIA and failed to get a job, Am. Compl. ¶¶ 11, 28, so his claims fall within the purview of the CSRA.  In particular, plaintiff alleges that the CIA improperly conducted his security processing and wrongfully denied his request for a security clearance, and that as a result of this initial denial, he failed to obtain a job at the CIA's Clandestine Service Reserve Cadre.  The D.C. Circuit has repeatedly held that have held that such challenges to personnel actions are precluded because if courts were to review such actions, "the exhaustive remedial scheme of the CSRA would be impermissibly frustrated."

---

[14]  Plaintiff's reliance on the Fifth Amendment of the Constitution does not avoid this result because, as discussed supra Part II.B, plaintiff's Fifth Amendment claim is moot and fails to state a claim.

Carducci v. Regan, 714 F.2d 171, 174 (D.C.Cir.1983) (holding that no remedy was available under the APA for an employment claim as to which the CSRA provided no relief); see also Harrison v. Bowen, 815 F.2d 1505, 1513 (D.C.Cir.1987) (the CSRA "had the effect of depriving employees of a right of judicial review under the APA that they probably had prior to enactment of the CSRA."). The CSRA also precludes claims that, in taking a particular adverse personnel action, an agency violated its own regulations. Graham v. Ashcroft, 358 F.3d 931, 935-36 (D.C.Cir.2004). These are precisely the types of actions plaintiff challenges in his APA claim, and as a result, his APA claim must be dismissed for lack of jurisdiction. See id.

**D.    Plaintiff has not identified any final agency action reviewable under the APA**

Unless Congress provides otherwise, the APA confines judicial review to agency action that is "final." 5 U.S.C. § 704. The "core question," in determining whether agency action is "final," is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992). In this case, plaintiff identifies no final agency action whatsoever. Plaintiff's bald legal conclusion that the CIA's initial security clearance denial constituted a "final agency decision," Am. Compl. ¶ 71, is flatly refuted by his own allegations that the CIA *reversed* this decision on administrative appeal and granted him a security clearance, Am. Compl. ¶¶ 24, 26, 28, 70. At the risk of stating the obvious, an agency cannot be said to have "completed its decisionmaking process" if the decision in question is subject to reversal on appeal. See Franklin, 505 U.S. at 797.

**IV.    PLAINTIFF'S NEWLY ADDED PRIVACY ACT CLAIMS AGAINST THE CIA AND DOJ ARE BASELESS AND SHOULD BE DISMISSED**

In addition to the APA claim, Plaintiff added to his amended complaint six additional

money damages claims against the CIA and its litigation counsel, the DOJ. Am. Compl. Counts VII-XII. These claims are based on plaintiff's allegation that defendants violated the Privacy Act by attaching three documents pertaining to him to a declaration filed in support of the CIA's motion to dismiss plaintiff's original complaint. Those documents include the CIA security clearance denial that plaintiff challenges in this action, and plaintiff's submissions on his administrative appeal of that denial. These newly asserted Privacy Act claims do not challenge the accuracy of the underlying documents. Instead, they are based solely on the fact that the documents were attached to the CIA's motion to dismiss and filed with the Court, which plaintiff claims violated subsections 552a(b), 552a(e) and 552a(e)(10) of the Act.

These claims are entirely meritless. Indeed, as discussed further below, plaintiff's own counsel in this case made virtually identical claims on behalf of other clients and not only lost in the district court, but was ordered by the D.C. Circuit to show cause why he should not be sanctioned for filing a frivolous appeal. As the district court in that case found, and the D.C. Circuit agreed, these sorts of litigation disclosures fall squarely within the "Routine Use" exception to the Privacy Act. For the same reason, and for a host of other reasons as well, plaintiff's newly added Privacy Act claims should be dismissed.

**A.     The disclosures fall squarely within the "Routine Use" exception to the Privacy Act**

Although the Privacy Act generally prohibits disclosure of personal information about a person without their consent, the Act is subject to a number of exceptions, including a routine use exception. Department of the Air Force v. Federal Labor Relations Authority ("FLRA"), 104 F.3d 1396, 1401 (D.C. Cir. 1997) (citing 5 U.S.C. §§ 552a(b)(3) and (e)(4)). A "routine use" is defined as the use of a record "for a purpose which is compatible with the purpose for

which it is collected."  5 U.S.C. § 552a(a)(7).  The Privacy Act requires an agency to publish

"routine uses" of its Privacy Act systems of records in the Federal Register.  <u>FLRA</u>, 104 F.3d at

1401.  Pursuant to this requirement, the CIA and DOJ, like many agencies, have published

routine uses that allow for precisely the sort of litigation disclosures that occurred here.  First,

the CIA's general routine uses (which are applicable to all systems of records maintained by the

CIA) permits the CIA to disclose records to the DOJ in connection with a court proceeding, and

also to disclose records in the course of presenting information and evidence to a court.[15]  <u>See</u> 70

Fed. Reg. 42418 (July 22, 2005) (Routine Uses #4 & 11).  The DOJ's Civil Division, in turn, has

a routine use allowing it to disclose "arguably relevant" records to a court in litigation when it is

representing an agency.[16]  <u>See</u> 63 Fed. Reg. 8659, 8665-66 (February 20, 1998); <u>see also</u> 66 Fed.

Reg. 36593-94 (July 12, 2001).

The disclosures plaintiff now challenges fall squarely within the cited CIA and DOJ

routine uses, and are thus permissible under the Privacy Act.  Indeed, the CIA's security

clearance denial and plaintiff's appeals letters challenging that denial are more than just

---

[15]  <u>See</u> 70 Fed. Reg. 42418 (July 22, 2005) (Routine Uses #4 & 11) ("11.  A record . . . may be disclosed, as a routine use, to representatives of the Department of Justice or of any other entity responsible for representing the interests of the Central Intelligence Agency in connection with judicial, administrative or other proceedings. . . . ."); ("4.  A record from a system of records maintained by the Central Intelligence Agency may be disclosed, as a routine use, in the course of presenting information or evidence to a court, magistrate, special master, administrative law judge, or administrative board or panel, including disclosures made pursuant to statutes or regulations governing the conduct of such proceedings.")

[16]  <u>See</u> 63 Fed. Reg. 8659, 8665-66 (February 20, 1998) ("a record, or any facts derived therefrom, may be disclosed . . . in a proceeding before a court or adjudicative body before which the Civil Division is authorized to appear when the United States, or any agency or subdivision thereof, is a party to litigation and such records are determined by the Civil Division to be arguably relevant to the litigation.").

"arguably relevant" to the litigation.  They form the very basis of plaintiff's litigation, and are

central to plaintiff's claims in both the original and amended complaints.  At the same time,

these documents are also "relevant" in the sense that they demonstrate some of the reasons why

such claims are jurisdictionally defective and meritless.  See, e.g., supra at 11, 14-15, 16 n.6, 17,

27.  Defendants' inadvertent failure to redact a social security number (or any other particular

personal details) from one of the documents before filing does not somehow convert these

routine uses into Privacy Act violations.  Courts (including the D.C. Circuit) routinely, and often

summarily, dismiss Privacy Act challenges to such litigation disclosures on the basis of similarly

applicable routine uses, even where the disclosures involve highly sensitive, personal

information.  See, e.g., Gardner v. United States, 213 F.3d 735, 741 n. 5 (D.C. Cir. 2000) (citing

Department of Treasury's routine use provision and summarily affirming Rule 12(b)(6) dismissal

of Privacy Act claims for alleged disclosures, including "defamatory statements," made by IRS

officials during administrative proceedings brought by plaintiff to challenge his termination).

See also, e.g., Mangino v. Department of the Army, 1994 WL 477260 at *3-6 (D. Kan. Aug. 24,

1994) (Rule 12(b)(6) dismissal of claim for disclosure in Court of records pertaining to

plaintiff's challenged security clearance, including "private and confidential medical, dental,

confidential CCF security records, Army personnel records, and restricted DIS security

records"); Sheptin v. Department of Justice, 1992 US DIST LEXIS 6221 at *7-8 (D.D.C. April

30, 1992) (Rule 12(b)(6) dismissal of Privacy Act claims against Department of Justice for

disclosing plaintiff's presentence report during course of habeas corpus proceeding brought by

plaintiff); Jackson v. Federal Bureau of Investigation, 2007 WL 2492069 at *8-*9 (N.D. Ill. Aug.

28, 2007) (Rule 12(b)(6) dismissal of claims that U.S. Attorney's Office improperly disclosed

plaintiff's special agent application and personal information contained therein by filing it as an

exhibit with the court); LeMaster v. Thomson, 1993 WL 189846 at *2 (N.D. Ill. 1993)

(disclosure of plaintiff's social security records to court (and U.S. Attorney) permissible because

disclosures were within routine use exception to Privacy Act).[17]

Indeed, plaintiff's own counsel in this case has previously asserted Privacy Act claims

virtually identical to those asserted here, only to face summary dismissal in the district court on

routine use grounds, and a sua sponte order from the D.C. Circuit to show cause why he should

not be sanctioned for filing a frivolous appeal.  In Eddington v. Central Intelligence Agency,

C.A. No. 97-0872 (D.D.C.  Feb. 16, 1999) (see Exhibit A), plaintiff's counsel argued on behalf

of two other former CIA employees that the CIA violated the Privacy Act when it attached

plaintiffs' FOIA/Privacy Act requests to a stay motion in a FOIA case plaintiffs had brought

against the CIA.  The documents attached to the CIA's motion in that case revealed personal

information about plaintiffs, including a social security number, address, an unlisted phone

number, and an employee identification number.  The plaintiffs asserted violations of precisely

the same three Privacy Act provisions as plaintiff does here, namely, 5 U.S.C. §§ 552a(b),

552a(e)(9) and 552a(e)(10).  The district court dismissed the case with prejudice in an

unpublished order pursuant to Fed. R. Civ. P. 12(b)(6), citing an earlier version of the same CIA

---

[17]  See also Shayestehv. Raty, 2007 WL 2317435 (D. Utah Aug. 7, 2007) (Rule 12(b)(6)
dismissal on routine use grounds of Privacy Act challenge to use of Pre-Sentence Investigation
Report during forfeiture proceeding); Russell v. General Services Administration, 935 F. Supp.
1142 (D. Colo. 1996) (applying Civil Division's routine use provision to reject Privacy Act
challenge to disclosure in public pleadings and proceedings that plaintiff was under
investigation).  See also Pippinger v. Rubin, 129 F.3d 519, 532 (10th Cir. 1997); Mandel v.
Office of Personnel Management, 244 F. Supp. 2d 146, 152-53 (E.D.N.Y. 2003); Benham v.
Rice, 2005 WL 691871 at *5 (D.D.C. March 24, 2005).

routine use relied upon in this case.  On appeal, the DC Circuit affirmed in an unpublished order

"substantially for the reasons stated by the district court," and ordered plaintiffs to show cause

why they should not be sanctioned for filing a frivolous appeal.  See Eddington v. C.I.A., 221

F.3d 195 (D.C. Cir. 2000) (unpublished disposition) (Exhibit B).  The order to show cause was

later discharged after plaintiff's counsel argued, inter alia, that sanctions were unwarranted

because his arguments were in "good faith" and his behavior had not been "repetitious."  See

Appellant's Response to Court's February 18, 2000, Order to Show Cause ("App. Resp. to

Order") at 3, 8 (Exhibit C).

       Plaintiff's Privacy Act claims in this case are virtually identical to those rejected in

Eddington.  If anything, the claims asserted here are even more baseless,[18] especially since

plaintiff's counsel has now been put on notice by the D.C. Circuit that such claims have no

merit.[19]  As in Eddington, these claims should be dismissed with prejudice under Fed. R. Civ.

---

       [18] For example, in explaining why the D.C. Circuit should not sanction him in
Eddington, plaintiff's counsel pointed out that plaintiffs had only named the CIA, not its counsel,
the DOJ, because plaintiffs had "not want[ed] to burden the judicial system or impose penalties
against an agency simply because an attorney represented the interests of his client."  App. Resp.
To Order at 5 (see Attachment C).  In this case, by contrast, plaintiff evidently had no qualms
about burdening the judicial system and punishing agencies for representing their clients, since
he did in fact name DOJ as a defendant.  Moreover, whereas the disclosures in Eddington were
attached to defendant's motion to stay, the documents in this case were filed in support of a
dispositive motion to dismiss, and were therefore more directly relevant to the merits of the
litigation.  Finally, prior to plaintiff's filing his amended complaint, defendant in this case went
out of its way to help alleviate plaintiff's counsel's stated concern about the documents by
having them placed under seal, and then later filing redacted versions.

       [19] Plaintiff's counsel admitted in correspondence with defendant's counsel that the
Privacy Act claims in Eddington were "similar," but nonetheless refused to withdraw the claims
in this case, asserting without explanation that the "confusion" that he "unfortunately failed to
clarify before Judge Jackson" would not occur in this case.  See Bryce Decl. ¶ 7.

12(b)(6).[20]

**B.    Plaintiff has waived his right to challenge these disclosures by placing these documents at issue in this litigation**

Wholly apart from the fact that these disclosures were permitted routine uses, courts have repeatedly rejected claims like these where the plaintiff's own litigation puts the documents at issue in litigation.  See, e.g., Mangino, 1994 WL 477260 at *4-5 (rejecting Privacy Act claims for disclosure of security clearance records, including "private and confidential medical, dental, confidential CCF security records, Army personnel records, and restricted DIS security records," because plaintiff placed such records at issue when he challenged security clearance decision in court); LeMaster, 1993 WL 189846 at *3-6 (disclosure of plaintiff's social security records to court (and U.S. Attorney) permissible because plaintiff "placed the records in issue" by initiating suit against the Social Security Administration);  Russell, 935 F. Supp. at 1146 (rejecting Privacy Act claim and noting that "Major Russell opened the door to the discussion involving this

---

[20]  Plaintiff's claims under 5 U.S.C. 552a(e)(9) and (10) are subject to dismissal for numerous independent reasons as well. Subsection 552a(e)(9) requires an agency to "establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and penalties for noncompliance." 5 U.S.C. § 552a(e)(9). Subsection 552a(e)(10) requires an agency to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records ...." 5 U.S.C. § 552a(e)(10).  Plaintiff asserts no independent allegations in support of these claims, and they must therefore be dismissed for failure to state a claim.  Even if plaintiff could predicate these claims solely on the allegedly improper litigation disclosure, they would fail for the same reasons that plaintiff's disclosure claims fail.  See text Part IV.A, B, C, D.  Finally, these claims also fail because both the DOJ and the CIA have promulgated "extensive regulations" codified at 28 C.F.R. §§ 16 et seq., and 32 C.F.R. §§ 1900 et seq. that safeguard their records.  See Krieger v. U.S. Dept. of Justice, --- F. Supp. 2d ----, 2008 WL 62627 at *18 (D.D.C. Jan. 7, 2008).

investigation"). As explained previously, the security clearance decision and administrative appeal submissions attached to the CIA's motion to dismiss form the basis of plaintiff's action against the CIA, and are incorporated by reference into the complaint. Indeed, plaintiff's accuracy claims under the Privacy Act, as well as his constitutional claims, directly challenged the security clearance decision in question, and plaintiff purported to rely on his own successful administrative appeal challenging that decision to argue that the initial decision was "seriously flawed." Under these circumstances, plaintiff's Privacy Act claims should be dismissed because he himself put these records at issue when he filed his complaint.

**C.      Plaintiff's Privacy Act claims do not meet the willful and intentional requirement**

These money damages claims under the Privacy Act also fail because plaintiff has failed to allege a factual basis for concluding that any violation was willful and intentional. 5 U.S.C. § 552a(g)(4). An agency satisfies the willful intent requirement by "committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." White v. Office of Personnel Management, 840 F.2d 85, 87 (D.C. Cir. 1988). The act must be "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful.' " Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Here, the CIA and DOJ had ample reason to believe it was lawful and appropriate to attach these documents to the motion to dismiss. As already discussed, the plain language of the agencies' published routine uses squarely authorized the disclosure of the security clearance denial and appeals submissions. It is also clear that these documents were relevant (indeed, absolutely central) to the litigation generally, and also to the motion to dismiss. Although the amended complaint accuses various DOJ and CIA officials, including the undersigned litigation counsel, of

39

"willfully and intentionally" violating the Privacy Act, the complaint contains no factual basis whatsoever for such a conclusion, and these Privacy Act claims should therefore be dismissed under Fed. R. Civ. P. 12(b)(6). White, 840 F.2d at 87 (granting summary affirmance of 12(b)(6) dismissal of Privacy Act claims because the complaint showed no "factual basis" for concluding that agency's conduct was intentional or willful); Nathanson v. FDIC, 1996 WL 79479, at *2 (1st Cir. Feb.22, 1996) (per curiam) (holding that published routine use notice "afforded reasonable grounds for believing that [the disclosure] was lawful" )

The record demonstrates in any event that defendants would also be entitled to summary judgment on the "willful and intentional" requirement.[21]  In this regard, defendant's good faith is more than sufficiently established by the squarely applicable, apparently valid routine uses, the clear relevance of the documents both to the litigation as a whole and to the motion to dismiss, and plaintiff's having put these documents directly at issue in the litigation. See Nathanson, 1996 WL 79479, at *2 (applicable routine use sufficient to establish disclosure not "willful and intentional"); see also, e.g., Cotton v. Heyman, 63 F.3d 1115, 1121 (D.C. Cir. 1995) (concluding that Smithsonian's position that it was not an agency for FOIA purposes was reasonable because the issue had not been conclusively decided by Circuit precedent).  The parties' conduct in this case further confirms defendants' good faith.  Indeed, plaintiff's counsel himself evidently saw no issue with these documents until the night before his opposition brief was due, over two months after they were filed.  Bryce Decl. ¶¶ 2-4.  When plaintiff's counsel finally did alert

---

[21] The willful and intentional issue (and various other issues pertaining to these claims) can appropriately be resolved on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), see White, 840 F.2d at 87, but if this Court chooses to consider matters outside the pleadings, it may convert the motion to one for summary judgment, see, e.g., Wasserman v. Rodacker, 2007 WL 2071649 at *3 (D.D.C. 2007) (Roberts, J.).

defendant's counsel about his concerns, and in particular, that one of the documents contained

his client's social security number, defendant's counsel immediately provided assistance by

contacting the court and having the documents placed under seal until redacted copies could be

filed.  Id. ¶ 5.  In sum, plaintiff cannot show that the filing of these documents was anything

other than a legitimate effort to defend a lawsuit brought by plaintiff himself against the CIA,

and in a manner fully authorized by the CIA's and the DOJ's published routine uses.

**D.    Plaintiff has failed to allege any adverse effect as a result of the disclosure, and has failed to allege actual damages**

Plaintiff's Privacy Act claims also fail because he has failed to identify any adverse

effect, or actual damages, resulting from the disclosures.  It is well settled that a Privacy Act

plaintiff claiming money damages for wrongful disclosure must identify (and ultimately prove)

some adverse effect resulting from the wrongful disclosure.  See Tijerina v. Walters, 821 F.2d

789, 794 (D.C. Cir. 1987).  The adverse effect requirement serves to ensure that plaintiff meets

the injury-in-fact and causation requirements of Article III of the constitution.  Doe v. Chao, 540

U.S. 614, 624 (2004).  Plaintiff must also show "actual damages" resulting from the disclosure, a

requirement that the Supreme Court has now confirmed is separate and independent from the

"adverse effect" requirement necessary to show standing.  See id.  Here, although plaintiff

asserts that he suffered "adverse and harmful affects [sic]," the amended complaint does not

identify any such effect, and provides no factual basis whatsoever for concluding that one

occurred, or that it was caused by the alleged disclosure.  Nor does plaintiff allege actual

damages.  Accordingly, the claims must be dismissed for lack of standing and/or failure to state a

claim.  See id. (adverse effect necessary to show Article III standing; actual damages necessary

element of cause of action); Tijerina, 821 F.2d at 794 (Privacy Act claims properly dismissed

41

where plaintiff failed to identify any adverse effects to plaintiff resulting from agency's disclosure of personal information about her).

## **CONCLUSION**

For the reasons set forth above, defendants respectfully ask the Court to dismiss this action in its entirety.

Dated: January 31, 2008                                  Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

 /s/ Peter Bryce_____
ELIZABETH J. SHAPIRO (D.C. Bar 418925)
Peter Bryce (NY and IL Bars)
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 616-8335
Fax:  (202) 616-8470
E-mail: Peter.Bryce@usdoj.gov

*Counsel for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendants. | ) |
| | ) |

PROPOSED ORDER

Upon consideration of defendants' Motion to Dismiss the First Amended Complaint (the "Motion"), the briefing of the parties, and the entire record herein, it is hereby:

ORDERED that defendants' Motion is GRANTED;

ORDERED that this action is DISMISSED WITH PREJUDICE.

Dated: _____, 2008

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN F. SULLIVAN,        )
                         )
      Plaintiff,       )
                         )
    v.                 )    1:07-CV-00685
                         )
CENTRAL INTELLIGENCE AGENCY,  )
GENERAL MICHAEL V. HAYDEN,   )
DOES 1-10 and the DEPARTMENT  )
OF JUSTICE,             )
                         )
      Defendants.      )
                         )

## DECLARATION OF KATHLEEN B. TORMEY, INFORMATION REVIEW ANALYST, OFFICE OF SECURITY CENTRAL INTELLIGENCE AGENCY

I, Kathleen B. Tormey, hereby declare and say:

1. I am the Information Review Analyst of the Office of Security of the Central Intelligence Agency (CIA). I have been employed at the CIA since 1976.

2. I have attached to this declaration redacted copies of the following correspondence between the CIA and Mr. John F. Sullivan, the plaintiff in the above-titled litigation:

    Exhibit A:     A letter, with an attachment, from the CIA to Mr. Sullivan dated 28 January 2005.

    Exhibit B:     A letter, with an attachment, from Mr. Sullivan to the CIA dated 15 February 2005.

Exhibit C:    A letter from Mr. Sullivan to the CIA
dated 15 March 2005.

3.  I have also attached, as Exhibit D, a blank Form

SF-86 ("Questionnaire for National Security Positions").

The section entitled "Privacy Act Routine Uses" on the

second page of this form is identical to the same section

in the same SF-86 Form most recently signed by Mr. Sullivan

on 14 November 2003.

\*    \*    \*

I hereby declare under penalty of perjury that the

foregoing is true and correct.

Executed this 30 day of January, 2008.

Kathleen B. Tormey
Information Review Analyst
Office of Security
Central Intelligence Agency

**EXHIBIT A TO TORMEY DECLARATION**

(                                    (

JAN 2 8 2005

Mr. John F. Sullivan



Dear Mr. Sullivan:

The Agency disapproved you for access to classified information. This letter provides the reasons for the Agency's security decision and explains how to request a review of your case.

People who are given access to classified information must meet strict security standards as outlined in the enclosed attachment. Any doubt about whether an individual should receive access to classified information must be resolved in favor of national security.

The Agency considered you for access to classified information between November 2003 and November 2004, after your employer submitted you for access. On your National Security Form (SF-86), dated 14 November 2003, you indicated that the Central Intelligence Agency (CIA) had investigated your background and/or granted you a Top Secret and Sensitive Compartmentalized Information clearance in May 1999. You stated that you were employed by the CIA from June 1968 to September 1999 as a polygraph examiner, and again from February to April 2003 as an interviewer.

During your security testing on 11 March 2004, you admitted removing classified documents from the CIA when you retired in 1999. You admitted deliberately removing a book containing information classified as high as Secret, and an award citation classified Confidential. You also stated that you kept a document, classified Confidential, which you inadvertently removed at that time. During your second testing session you raised your voice and cursed the examiner after being questioned on the topic of compromise. You questioned the examiner's professional ability and wondered if there was a hidden agenda for the test. The results of your security testing indicate you may not have discussed the full extent of your concerns regarding the issue of compromise of classified information.

During an interview with a security professional on 25 March 2004, you reiterated taking home the classified

Mr. John F. Sullivan

information you discussed during security testing. You returned all classified material that you had kept to the security interviewer. These materials included five documents classified at the Confidential level, one document classified at the Secret level, and several other documents that you considered sensitive, but had no classification marks.

The Agency disapproved you for access to classified information based on the issues of security violations and personal conduct, as evidenced by the information stated above. Your behavior raises concerns about your judgment, candor, and willingness to follow rules and regulations.

You may request a review of the Agency's security determination. Please see the attached pages for information and instructions.

Sincerely,

Elizabeth V. York
Senior Adjudication Officer

2

# FACTORS USED TO DETERMINE
# ELIGIBILITY FOR A SECURITY CLEARANCE

The security adjudication process carefully reviews the issues below when considering a person for classified access. These issues are defined in Director of Central Intelligence Directive 6/4. All information, past and present, both favorable and unfavorable, is considered.

- Allegiance to the U.S.
- Foreign Influence
- Foreign Preference
- Sexual Behavior
- Personal Conduct-Judgment
- Financial Responsibility
- Alcohol Consumption
- Drug Involvement

- Emotional/Mental/Personality Disorders
- Criminal Conduct
- Security Violations
- Outside Activities-employment/organizations
- Misuse of Information Technology Systems

------------------------------------------------

# INSTRUCTIONS FOR REQUESTING AN INITIAL REVIEW

To request a review of the Agency's security decision, send your written request within 45 days to the following:

Elizabeth V. York
PO Box 6282
West Hyattsville, MD  20782

Your request should contain the following, if appropriate:

a.    A statement that the Agency's information is incorrect and why;

b.    Information that explains your situation;

c.    New information about the issues involved;

d.    Specific medical release forms if appropriate;

e.    A request for a personal appearance, which must be completed before the initial review (see next page for details); and/or

f.    A request for the "investigative file", which is a copy of the specific documents, records and/or reports used to reach the security decision (see next page for details).

As part of the review process, you may be asked to undergo additional security processing. The results of the review will be given to you in writing. If you are not satisfied with the result of the review, you will be offered the opportunity to appeal the decision to an appeal panel.

If your appeal is successful, the granting of a security clearance will not be immediate. Should you reapply for clearances, additional processing may be required.

## PERSONAL APPEARANCE AND INVESTIGATIVE FILE
## INITIAL REVIEW

### Personal Appearance

- You may, at your own expense, appear in person before a government representative to provide documents, materials or information about your case.

- You may also, at your own expense, use an attorney or another individual to act on your behalf.

- If you request a personal appearance, you will be contacted by this office to schedule your appearance. Your personal appearance must be made prior to the first-level review. Only you and/or your representative may attend. You must tell this office at the time your personal appearance is scheduled if you are bringing a representative with you.

- There will be no opportunity to present or cross-examine witnesses involved in the case. This is your opportunity to provide additional information relevant to your case. Information and documents you provide will be retained and considered in reviewing the security decision.

- Your personal appearance will be documented for use during the review process.

- Regulations prohibit bringing any photographic, recording or transmitting equipment of any kind while on government property and you may not bring these types of items to the personal appearance. For safety reasons, you and your representative will be asked to undergo a screening similar to an airport security inspection.

### Investigative File

- If you request a copy of the investigative file, you must send a statement signed under penalty of perjury (28 U.S.C. Sec. 1746) attesting to your identity, or an original notarized statement containing your place of birth and citizenship status.

- Within 30 days of receiving your request, a copy of the requested information will be sent to you. It will be released in the same manner as information is released under the Privacy Act or the Freedom of Information Act.

2

**EXHIBIT B TO TORMEY DECLARATION**

**JOHN F. SULLIVAN** 

February 15, 2005

Ms. Elizabeth V. York
P.O. Box 6082
West Hyattsville, MD  20782

Dear Ms. York:

Attached is a copy of my request for a review of the security decision to deny me a
security clearance.

Yours truly,

John F. Sullivan

Enclosure

MAR 0 9 2005

15 February 2005

Dear Sir or Madam:

In requesting a review of the security decision to deny me a security clearance, I do so for the following reasons:

1. At no time during my polygraph interview did I "curse" the examiner, as is claimed in the denial letter. Any emotion, or anger, that I displayed was directed at the situation and not the examiner.

   As I recall, the only language that may have been inappropriate was said in response to the examiner's contention that I had compromised classified material. My response, as I recall, was, "That's bull s---!" I fail to see how this could be interpreted as "cursing" the examiner.

2. The "book" that I removed did have an overall classification of SECRET. At the time I removed it, I believe that over 90 percent of the material therein had been automatically declassified, and certainly none of it was current. A box of those books was left on a table in the Polygraph Division (PD) facility in 1986 or 1987, and the examiners were invited to take a copy. That book sat in a box in my office until 31 August 1999.

   At the time I removed the book, I recognized that it was marked SECRET, but I also assumed that the material therein was declassified due to the 25-year-declassification rule, as I cannot recall any post Vietnam material in the book.

   I am certain that none of the material I removed was compromised. From the time I brought the book home until I returned it to the Security Professional, no one, except me, ever saw it. It was retained in a box, out of sight, in my office. The only time I can recall using that book was to look up the date of the Bay of Pigs invasion; information of public record.

   The material classified CONFIDENTIAL, with one exception, were documents relating to personnel actions which I kept for their sentimental value. I had not been under cover since 1987 and saw no potential for compromise in taking them home.

3. I do not recall questioning the examiner's competence. I did ask to see the charts, because I did not believe that my charts were showing indications of deception.

   That being said, I don't believe I said anything during the interview that was any kind of attack on his competence. I neither told him, nor even suggested to him, that I thought he was incompetent

My thoughts on there being a "hidden agenda" were based on the fact that I was tested outside the PD facility and by comments made by two security officers prior to my interview. Both told me that it was "strange" and questioned whether or not my upcoming test was an Agency test. One of them commented, "They're getting you for your book."

The comment that my denial of a security clearance was based, in part, on my personal conduct is very difficult to accept. I cannot believe that anything I said during my polygraph interview could be used as the basis for questioning my personal conduct. I was neither verbally abusive nor out of control during the interview; which the denial letter seems to imply.

Since my test on 11 March 2004, I have been asked to work on two Agency programs that require clearances. When I asked the recruiters to verify my clearance status with the Agency, they never called back. I have lost money, feel that my reputation has been put into question, and request a fair and unbiased review of this case.

John Sullivan

**EXHIBIT C TO TORMEY DECLARATION**

## JOHN F. SULLIVAN



15 March 2005

Ms. Elizabeth V. York
P.O. Box 6282
West Hyattsville, MD 20782

Dear Ms. York:

Thank you very much for your reply to my request for my investigative file. At this point, among the questions I have is, why wasn't I provided with all of the interviews in the Report of Investigation? Specifically, Page #3 of 9, and Page #6 of 9 in the Employment References of the Report of Investigation are blank. Were only two people interviewed? Were any of my references interviewed?

If only two interviews were interviewed, this is in and of itself surprising. The two men, whose interview reports were provided, were two people with whom I had minimal contact. Kent Holmes was gone for about six months during my time at Raytheon, and I had very little interaction with him. We worked in adjoining offices, and in the time I was at Raytheon, I doubt that I had more than ten conversations with him.

Warren Strothers is a friend with whom I had only casual contact. He noted that my wife was Vietnamese and that I married her in Vietnam. My wife is not Vietnamese, and we were not married in Vietnam. She was born in Laredo, Texas, and is a former CIA staff employee who accompanied me to Vietnam. In order to accompany me to Vietnam, my wife had to resign from the Agency and work as an Independent Contractor. While in Vietnam, her staff status was restored. All of this information, with the exception of the information re my wife's service in Vietnam, is in my SF-86. After Vietnam, my wife worked as an Independent Contractor, out of our home, from February 1980 until August 1998. My wife's place and date of birth are cited in my Standard Form 86 (SF-86). I am surprised that the investigator did not pick up on this and maybe try and interview someone who knew me better.

Two of my supervisors while I was an IC were listed in my SF-86 and know me better than either of the aforementioned. Apparently, they were not interviewed.

I don't know whether or not my interview with the Security Professional on 25 March 2004 was recorded, but when he noted that I received *The Central Agency: The First 30 Years, 1947–1977* in 1994-95, he is in error. I told him and the polygraph examiner that I

MAR 3 0 2005

had gotten the book in 1986–1987. That book remained in a box in my office for twelve or thirteen years. I also noted that no one, except me, had seen the book during the time it was in my home.

In presenting me with information re my polygraph test and security interview, comments seem to have been taken out of context and selectively chosen. Specifically, the last comment made to me by the Security Professional on 25 March was, "There is something about your book you are not telling us, and unless you do, I can't help you." Also, when the examiner asked me, at the end of the interview, "What do you think I should do," my answer was, "If you believe I am lying, that is what your report should say. Let your conscience be your guide. You are wrong, but I wouldn't have you do anything else."

Under "Mitigators" on Page 3 of Current Investigative Information, no mention was made of my insistence that from the time I removed the book until the day I returned it, no one except me, saw it.

Thank you for your consideration.

Yours truly,

John F. Sullivan

2

**EXHIBIT D TO TORMEY DECLARATION**

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4036
86-111

# Questionnaire for National Security Positions

Follow instructions fully or we cannot process your form. Be sure to sign and date the certification statement on Page 9 and the release on Page 10. *If you have any questions,* call the office that gave you the form.

## Purpose of this Form

The U.S. Government conducts background investigations and reinvestigations to establish that military personnel, applicants for or incumbents in national security positions, either employed by the Government or working for Government contractors, licensees, certificate holders, and grantees, are eligible for a required security clearance. Information from this form is used primarily as the basis for investigation for access to classified information or special nuclear information or material. Complete this form only after a conditional offer of employment has been made for a position requiring a security clearance.

Giving us the information we ask for is voluntary. However, we may not be able to complete your investigation, or complete it in a timely manner, if you don't give us each item of information we request. This may affect your placement or security clearance prospects.

## Authority to Request this Information

Depending upon the purpose of your investigation, the U.S. Government is authorized to ask for this information under Executive Orders 10450, 10865, 12333, and 12356; sections 3301 and 9101 of title 5, U.S. Code; sections 2165 and 2201 of title 42, U.S. Code; sections 781 to 887 of title 50, U.S. Code; and parts 5, 732, and 736 of Title 5, Code of Federal Regulations.

Your Social Security number is needed to keep records accurate, because other people may have the same name and birth date. Executive Order 9397 also asks Federal agencies to use this number to help identify individuals in agency records.

## The Investigative Process

Background investigations for national security positions are conducted to develop information to show whether you are reliable, trustworthy, of good conduct and character, and loyal to the United States. The information that you provide on this form is confirmed during the investigation. Investigation may extend beyond the time covered by this form when necessary to resolve issues. Your current employer must be contacted as part of the investigation, even if you have previously indicated on applications or other forms that you do not want this.

In addition to the questions on this form, inquiry also is made about a person's adherence to security requirements, honesty and integrity, vulnerability to exploitation or coercion, falsification, misrepresentation, and any other behavior, activities, or associations that tend to show the person is not reliable, trustworthy, or loyal.

## Your Personal Interview

Some investigations will include an interview with you as a normal part of the investigative process. This provides you the opportunity to update, clarify, and explain information on your form more completely, which often helps to complete your investigation faster. It is important that the interview be conducted as soon as possible after you are contacted. Postponements will delay the processing of your investigation, and declining to be interviewed may result in your investigation being delayed or canceled.

You will be asked to bring identification with your picture on it, such as a valid State driver's license, to the interview. There are other documents you may be asked to bring to verify your identity as well. These include documentation of any legal name change, Social Security card, and/or birth certificate.

You may also be asked to bring documents about information you provided on the form or other matters requiring specific attention. These matters include alien registration, delinquent loans or taxes, bankruptcy, judgments, liens, or other financial obligations, agreements involving child custody or support, alimony or property settlements, arrests, convictions, probation, and/or parole.

## Organization of this Form

This form has two parts. Part 1 asks for background information, including where you have lived, gone to school, and worked. Part 2 asks about your activities and such matters as firings from a job, criminal history record, use of illegal drugs, and abuse of alcohol.

In answering all questions on this form, keep in mind that your answers are considered together with the information obtained in the investigation to reach an appropriate adjudication.

## Instructions for Completing this Form

1. Follow the instructions given to you by the person who gave you the form and any other clarifying instructions furnished by that person to assist you in completion of the form. Find out how many copies of the form you are to turn in. You must sign and date, in black ink, the original and each copy you submit. You should retain a copy of the completed form for your records.

2. Type or legibly print your answers in black ink (if your form is not legible, it will not be accepted). You may also be asked to submit your form in an approved electronic format.

3. All questions on this form must be answered. If no response is necessary or applicable, indicate this on the form (for example, enter "None" or "N/A"). If you find that you cannot report an exact date, approximate or estimate the date to the best of your ability and indicate this by marking "APPROX." or "EST."

4. Any changes that you make to this form after you sign it must be initialed and dated by you. Under certain limited circumstances, agencies may modify the form consistent with your intent.

5. You must use the State codes (abbreviations) listed on the back of this page when you fill out this form. Do not abbreviate the names of cities or foreign countries.

6. The 5-digit postal ZIP codes are needed to speed the processing of your investigation. The office that provided the form will assist you in completing the ZIP codes.

7. All telephone numbers must include area codes.

8. All dates provided on this form must be in Month/Day/Year or Month/Year format. Use numbers (1-12) to indicate months. For example, June 8, 1978, should be shown as 6/8/78.

9. Whenever "City (Country)" is shown in an address block, also provide in that block the name of the country when the address is outside the United States.

10. If you need additional space to list your residences or employments/self-employments/unemployments or education, you should use a continuation sheet, SF 86A. If additional space is needed to answer other items, use a blank piece of paper. Each blank piece of paper you use must contain your name and Social Security Number at the top of the page.

### Final Determination on Your Eligibility

Final determination on your eligibility for access to classified information is the responsibility of the Federal agency that requested your investigation. You may be provided the opportunity personally to explain, refute, or clarify any information before a final decision is made.

### Penalties for Inaccurate or False Statements

The U.S. Criminal Code (title 18, section 1001) provides that knowingly falsifying or concealing a material fact is a felony which may result in fines of up to $10,000, and/or 5 years' imprisonment, or both. In addition, Federal agencies generally fire, do not grant a security clearance, or disqualify individuals who have materially and deliberately falsified these forms, and this remains a part of the permanent record for future placements. Because the position for which you are being considered is a sensitive one, your trustworthiness is a very important consideration in deciding your eligibility for a security clearance.

Your prospects of placement or security clearance are better if you answer all questions truthfully and completely. You will have adequate opportunity to explain any information you give us on the form and to make your comments part of the record.

### Disclosure of Information

The information you give us is for the purpose of investigating you for a national security position; we will protect it from unauthorized disclosure. The collection, maintenance, and disclosure of background investigative information is governed by the Privacy Act. The agency which requested the investigation and the agency which conducted the investigation have published notices in the Federal Register describing the systems of records in which your records will be maintained. You may obtain copies of the relevant notices from the person who gave you this form. The information on this form, and information we collect during an investigation may be disclosed without your consent as permitted by the Privacy Act (5 USC 552a(b)) and as follows:

## PRIVACY ACT ROUTINE USES

1. To the Department of Justice when: (a) the agency or any component thereof, or (b) any employee of the agency in his or her official capacity; or (c) any employee of the agency in his or her individual capacity where the Department of Justice has agreed to represent the employee; or (d) the United States Government, is a party to litigation or has interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation and the use of such records by the Department of Justice is therefore deemed by the agency to be for a purpose that is compatible with the purpose for which the agency collected the records.

2. To a court or adjudicative body in a proceeding when: (a) the agency or any component thereof, or (b) any employee of the agency in his or her official capacity; or (c) any employee of the agency in his or her individual capacity where the Department of Justice has agreed to represent the employee; or (d) the United States Government, is a party to litigation or has interest in such litigation, and by careful review, the agency determines that the records are both relevant and necessary to the litigation and the use of such records is therefore deemed by the agency to be for a purpose that is compatible with the purpose for which the agency collected the records.

3. Except as noted in Question 24, when a record on its face, or in conjunction with other records, indicates a violation or potential violation of law, whether civil, criminal, or regulatory in nature, and whether arising by general statute, particular program statute, regulation, rule, or order issued pursuant thereto, the relevant records may be disclosed to the appropriate Federal, foreign, State, local, tribal, or other public authority responsible for enforcing, investigating or prosecuting such violation or charged with enforcing or implementing the statute, rule, regulation, or order.

4. To any source or potential source from which information is requested in the course of an investigation concerning the hiring or retention of an employee or other personnel action, or the issuing or retention of a security clearance, contract, grant, license, or other benefit, to the extent necessary to identify the individual, inform the source of the nature and purpose of the investigation, and to identify the type of information requested.

5. To a Federal, State, local, foreign, tribal, or other public authority the fact that this system of records contains information relevant to the retention of an employee, or the retention of a security clearance, contract, license, grant, or other benefit. The other agency or licensing organization may then make a request supported by written consent of the individual to the entire record if it so chooses. No disclosure will be made unless the information has been determined to be sufficiently reliable to support a referral to another office within the agency or to another Federal agency for criminal, civil, administrative, personnel, or regulatory action.

6. To contractors, grantees, experts, consultants, or volunteers when necessary to perform a function or service related to this record for which they have been engaged. Such recipients shall be required to comply with the Privacy Act of 1974, as amended.

7. To the news media or the general public, factual information the disclosure of which would be in the public interest and which would not constitute an unwarranted invasion of personal privacy.

8. To a Federal, State, or local agency, or other appropriate entities or individuals, or through established liaison channels to selected foreign governments, in order to enable an intelligence agency to carry out its responsibilities under the National Security Act of 1947 as amended, the CIA Act of 1949 as amended, Executive Order 12333 or any successor order, applicable national security directives, or classified implementing procedures approved by the Attorney General and promulgated pursuant to such statutes, orders or directives.

9. To a Member of Congress or a Congressional staff member in response to an inquiry of the Congressional office made at the written request of the constituent about whom the record is maintained.

10. To the National Archives and Records Administration for records management inspections conducted under 44 USC 2904 and 2906.

11. To the Office of Management and Budget when necessary to the review of private relief legislation.

## STATE CODES (ABBREVIATIONS)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Alabama | AL | Hawaii | HI | Massachusetts | MA | New Mexico | NM | South Dakota | SD |
| Alaska | AK | Idaho | ID | Michigan | MI | New York | NY | Tennessee | TN |
| Arizona | AZ | Illinois | IL | Minnesota | MN | North Carolina | NC | Texas | TX |
| Arkansas | AR | Indiana | IN | Mississippi | MS | North Dakota | ND | Utah | UT |
| California | CA | Iowa | IA | Missouri | MO | Ohio | OH | Vermont | VT |
| Colorado | CO | Kansas | KS | Montana | MT | Oklahoma | OK | Virginia | VA |
| Connecticut | CT | Kentucky | KY | Nebraska | NE | Oregon | OR | Washington | WA |
| Delaware | DE | Louisiana | LA | Nevada | NV | Pennsylvania | PA | West Virginia | WV |
| Florida | FL | Maine | ME | New Hampshire | NH | Rhode Island | RI | Wisconsin | WI |
| Georgia | GA | Maryland | MD | New Jersey | NJ | South Carolina | SC | Wyoming | WY |
| | | | | | | | | | |
| American Samoa | AS | Dist. of Columbia | DC | Guam | GU | Northern Marianas | CM | Puerto Rico | PR |
| Trust Territory | TT | Virgin Islands | VI | | | | | | |

## PUBLIC BURDEN INFORMATION

Public burden reporting for this collection of information is estimated to average 90 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Reports and Forms Management Officer, U.S. Office of Personnel Management, 1900 E Street, N.W., Room CHP-500, Washington, D.C. 20415. Do not send your completed form to this address.

Standard Form 86 (EG)
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

# QUESTIONNAIRE FOR NATIONAL SECURITY POSITIONS

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4036
86-111

**Part 1**

Investigating Agency Use Only

Agency Use Only (Complete Items A through F using instructions of using the investigating agency).

| A Type of Investigation Requested | B Extra Coverage | D Access | E Nature of Action Code | F Field of Month Day Year |
| --- | --- | --- | --- | --- |

Case Number _____  Codes _____

G Geographic Location

H Position Code

I Position Title

K Location of Official Personnel Folder

Noun NPRC AI SON

M Location of Security Folder

Noun NOIC AI SON NPI

Other Address _____ ZIP Code _____

L SOI

N OPAC-ALC Number

O Accounting Data and/or Agency Case Number

P Requesting Name and Title

Official _____

Signature _____  Telephone Number ( ) _____  Date _____

**Persons completing this form should begin with the questions below.**

1 FULL NAME — If you have only initials in your name, use them and state so (IO).
If you have no middle name, enter "NMN".
Last Name  First Name  Middle Name  Jr., II, etc.

2 DATE OF BIRTH — #1 If you have only initials in your name, enter "NMN". box after your middle name.
Month  Day  Year

3 PLACE OF BIRTH — Use the two letter code for the State.
City  County  State  Country (if not in the United States)

4 SOCIAL SECURITY

5 OTHER NAMES USED
Give other names you used and the period of time you used them (for example: your maiden name, name(s) by a former marriage, former name(s), alias(es), or nickname(s)). If the other name is your maiden name, put "nee" in front of it.
#1 Name  Month/Year  To  Month/Year
#3 Name  Month/Year  To  Month/Year
#2 Name  Month/Year  To  Month/Year
#4 Name  Month/Year  To  Month/Year

6 IDENTIFYING INFORMATION
Height (feet and inches)  Weight (pounds)  Hair Color  Eye Color  Sex (Mark one box)  Male  Female

7 TELEPHONE NUMBERS
Work (include Area Code and extension)  ( )  Day  Night
Home (include Area Code)  ( )  Day  Night

8 CITIZENSHIP  Your Mother's Maiden Name
I am a U.S. citizen or national by birth in the U.S. or U.S. territory/possession. (Answer items b and d)
I am a U.S. citizen, but I was NOT born in the U.S. (Answer items b, c and d)
I am not a U.S. citizen. (Answer item d)
Mark the box at the right that reflects your current citizenship status, and follow its instructions.

9 UNITED STATES CITIZENSHIP  If you are a U.S. citizen, but were not born in the U.S., provide information about one or more of the following proof of your citizenship.
Naturalization Certificate (Where were you naturalized?)
Court  City  State  Certificate Number  Month/Day/Year Issued
Citizenship Certificate (Where was the certificate issued?)
City  State  Certificate Number  Month/Day/Year Issued
State Department Form 240 - Report of Birth Abroad of a Citizen of the United States
Give the date this form was prepared and give an explanation, if needed.  Month/Day/Year  Explanation
U.S. Passport  This may be either a current or previous U.S. Passport.  Passport Number  Month/Day/Year Issued

d DUAL CITIZENSHIP  If you are (or were) a dual citizen of the United States and another country, provide the name of that country in the space to the right.  Country

e ALIEN  If you are an alien, provide the following information.
Place You Entered the United States:  City  State  Date You Entered U.S.  Month  Day  Year  Alien Registration Number  Country(ies) of Citizenship

Page 1

Exception to SF86, SF86P, SF85-P-S, SF86, and SF85A approved by GSA September, 1996.
Designed using Perform Pro, WHS/DIOR, Sep 96

**9**   **WHERE YOU HAVE LIVED**

List the places where you have lived, beginning with the most recent (#1) and working back 7 years. All periods must be accounted for in your list. Be sure to indicate the actual physical location of your residence: do not use a post office box as an address, do not list a permanent address when you were actually living at a school address, etc. Be sure to specify your location as closely as possible: for example, do not list only your base or ship, list your barracks number or home port. You may omit temporary military duty locations under 90 days (list your permanent address instead), and you should use your APO/FPO address if you lived overseas.

For any address in the last 5 years, list a person who knew you at that address, and who preferably still lives in that area (do not list people for residences completely outside this 5-year period, and do not list your spouse, former spouses, or other relatives). Also for addresses in the last five years, if the address is "General Delivery," a Rural or Star Route, or may be difficult to locate, provide directions for locating the residence on an attached continuation sheet.

| | Month/Year Month/Year | Street Address | Apt. # | City (Country) | | State | ZIP Code |
|---|---|---|---|---|---|---|---|
| #1 | To   Present | | | | | | |
| | Name of Person Who Knows You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #2 | Month/Year Month/Year To | Street Address | Apt. # | City (Country) | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #3 | Month/Year Month/Year To | Street Address | Apt. # | City (Country) | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #4 | Month/Year Month/Year To | Street Address | Apt. # | City (Country) | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #5 | Month/Year Month/Year To | Street Address | Apt. # | City (Country) | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |

**10**   **WHERE YOU WENT TO SCHOOL**

List the schools you have attended, beyond Junior High School, beginning with the most recent (#1) and working back 7 years. List College or University degrees and the dates they were received. If all of your education occurred more than 7 years ago, list your most recent education beyond high school, no matter when that education occurred.

★Use one of the following codes in the "Code" block:

    1 - High School      2 - College/University/Military College        3 - Vocational/Technical/Trade School

★For schools you attended in the past 3 years, list a person who knew you at school (an instructor, student, etc.). Do not list people for education completely outside this 3-year period.

★For correspondence schools and extension classes, provide the address where the records are maintained.

| | Month/Year Month/Year | Code | Name of School | | Degree/Diploma/Other | | Month/Year Awarded |
|---|---|---|---|---|---|---|---|
| #1 | To | | | | | | |
| | Street Address and City (Country) of School | | | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #2 | Month/Year Month/Year To | Code | Name of School | | Degree/Diploma/Other | | Month/Year Awarded |
| | Street Address and City (Country) of School | | | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |
| #3 | Month/Year Month/Year To | Code | Name of School | | Degree/Diploma/Other | | Month/Year Awarded |
| | Street Address and City (Country) of School | | | | | State | ZIP Code |
| | Name of Person Who Knew You | Street Address | Apt. # | City (Country) | State | ZIP Code | Telephone Number ( ) |

Enter your Social Security Number before going to the next page ⟶

**11**   **YOUR EMPLOYMENT ACTIVITIES**

List your employment activities, beginning with the present (#1) and working back 7 years. You should list all full-time work, part-time work, military service, temporary military duty locations over 90 days, self-employment, other paid work, and all periods of unemployment. The entire 7-year period must be accounted for without breaks, but you need not list employments before your 16th birthday. EXCEPTION: Show all Federal civilian service, whether it occurred within the last 7 years or not.

- **Code.** Use one of the codes listed below to identify the type of employment:

| | | |
|---|---|---|
| 1 - Active military duty stations | 5 - State Government (Non-Federal employment) | 7 - Unemployment (Include name of person who can verify) |
| 2 - National Guard/Reserve | | |
| 3 - U.S.P.H.S. Commissioned Corps | 6 - Self-employment (Include business name and/or name of person who can verify) | 8 - Federal Contractor (List Contractor, not Federal agency) |
| 4 - Other Federal employment | | 9 - Other |

- **Employer/Verifier Name.** List the business name of your employer or the name of the person who can verify your self-employment or unemployment in this block. If military service is being listed, include your duty location or home port here as well as your branch of service. You should provide separate listings to reflect changes in your military duty locations or home ports.

- **Previous Periods of Activity.** Complete these lines if you worked for an employer on more than one occasion at the same location. After entering the most recent period of employment in the initial numbered block, provide previous periods of employment at the same location on the additional lines provided. For example, if you worked at XY Plumbing in Denver, CO, during 3 separate periods of time, you would enter dates and information concerning the most recent period of employment first, and provide dates, position titles, and supervisors for the two previous periods of employment on the lines below that information.

| Month/Year #1    To    Month/Year Present | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|
| Employer's/Verifier's Street Address | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Street Address of Job Location (if different than Employer's Address) | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Supervisor's Name & Street Address (if different than Job Location) | | City (Country) | State | ZIP Code | Telephone Number ( ) | |

| PREVIOUS PERIODS OF ACTIVITY (Block #1) | Month/Year   To   Month/Year | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   To   Month/Year | Position Title | Supervisor |
| | Month/Year   To   Month/Year | Position Title | Supervisor |

| Month/Year #2    To | Month/Year | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|---|
| Employer's/Verifier's Street Address | | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Street Address of Job Location (if different than Employer's Address) | | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Supervisor's Name & Street Address (if different than Job Location) | | | City (Country) | State | ZIP Code | Telephone Number ( ) | |

| PREVIOUS PERIODS OF ACTIVITY (Block #2) | Month/Year   To   Month/Year | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   To   Month/Year | Position Title | Supervisor |
| | Month/Year   To   Month/Year | Position Title | Supervisor |

| Month/Year #3    To | Month/Year | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|---|
| Employer's/Verifier's Street Address | | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Street Address of Job Location (if different than Employer's Address) | | | City (Country) | State | ZIP Code | Telephone Number ( ) | |
| Supervisor's Name & Street Address (if different than Job Location) | | | City (Country) | State | ZIP Code | Telephone Number ( ) 0.00% | |

| PREVIOUS PERIODS OF ACTIVITY (Block #3) | Month/Year   To   Month/Year | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   To   Month/Year | Position Title | Supervisor |
| | Month/Year   To   Month/Year | Position Title | Supervisor |

Enter your Social Security Number before going to the next page————————————➤

**YOUR EMPLOYMENT ACTIVITIES** *(CONTINUED)*

| #4 | Month/Year   Month/Year To | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|---|
| | Employer's/Verifier's Street Address | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Street Address of Job Location (if different than Employer's Address) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Supervisor's Name & Street Address (if different than Job Location) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |

| PREVIOUS PERIODS OF ACTIVITY (Block #4) | Month/Year   Month/Year To | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   Month/Year To | Position Title | Supervisor |
| | Month/Year   Month/Year To | Position Title | Supervisor |

| #5 | Month/Year   Month/Year To | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|---|
| | Employer's/Verifier's Street Address | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Street Address of Job Location (if different than Employer's Address) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Supervisor's Name & Street Address (if different than Job Location) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |

| PREVIOUS PERIODS OF ACTIVITY (Block #5) | Month/Year   Month/Year To | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   Month/Year To | Position Title | Supervisor |
| | Month/Year   Month/Year To | Position Title | Supervisor |

| #6 | Month/Year   Month/Year To | Code | Employer/Verifier Name/Military Duty Location | | Your Position Title/Military Rank | | |
|---|---|---|---|---|---|---|---|
| | Employer's/Verifier's Street Address | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Street Address of Job Location (if different than Employer's Address) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |
| | Supervisor's Name & Street Address (if different than Job Location) | | | City (Country) | State | ZIP Code | Telephone Number ( ) |

| PREVIOUS PERIODS OF ACTIVITY (Block #6) | Month/Year   Month/Year To | Position Title | Supervisor |
|---|---|---|---|
| | Month/Year   Month/Year To | Position Title | Supervisor |
| | Month/Year   Month/Year To | Position Title | Supervisor |

**12  PEOPLE WHO KNOW YOU WELL**

List three people who know you well and live in the United States. They should be good friends, peers, colleagues, college roommates, etc., whose combined association with you covers as well as possible the last 7 years. Do not list your spouse, former spouse, or other relatives, and try not to list anyone who is listed elsewhere on this form.

| Name #1 | Dates Known Month/Year   Month/Year To | Telephone Number Day ( ) Night | | |
|---|---|---|---|---|
| Home or Work Address | | City (Country) | State | ZIP Code |

| Name #2 | Dates Known Month/Year   Month/Year To | Telephone Number Day ( ) Night | | |
|---|---|---|---|---|
| Home or Work Address | | City (Country) | State | ZIP Code |

| Name #3 | Dates Known Month/Year   Month/Year To | Telephone Number Day ( ) Night | | |
|---|---|---|---|---|
| Home or Work Address | | City (Country) | State | ZIP Code |

Enter your Social Security Number before going to the next page ⟶

**13  YOUR SPOUSE**

Mark one box to show your current marital status and provide information about your spouse(s) in items a. and/or b.

- [ ] 1 – Never married
- [ ] 2 – Married
- [ ] 3 – Separated
- [ ] 4 – Legally Separated
- [ ] 5 – Divorced
- [ ] 6 – Widowed

**a** Current Spouse  Complete the following about your current spouse only.

| Full Name | Date of Birth | Place of Birth (Include country if outside the U.S.) | Social Security Number |
|---|---|---|---|

| Other Names Used (Specify maiden name, names by other marriages, etc., and show dates used for each name) | | | Country(ies) of Citizenship |
|---|---|---|---|

| Date Married | Place Married (Include country if outside the U.S.) | | State |
|---|---|---|---|

| If Separated, Date of Separation | If Legally Separated, Where is the Record Located? City (Country) | | State |
|---|---|---|---|

| Address of Current Spouse, if different than your current address (Street, city, and country if outside the U.S.) | | State | ZIP Code |
|---|---|---|---|

**b** Former Spouse(s)  Complete the following about your former spouse(s), use blank sheets if needed.

| Full Name | Date of Birth | Place of Birth (Include country if outside the U.S.) | State |
|---|---|---|---|

| Country(ies) of Citizenship | Date Married | Place Married (Include country if outside the U.S.) | State |
|---|---|---|---|

| Check one, Then Give Date | Month/Day/Year | If Divorced, Where is the Record Located?  City (Country) | State |
|---|---|---|---|
| [ ] Divorced  [ ] Widowed | | | |

| Address of Former Spouse (Street, city, and country if outside the U.S.) | | | State | ZIP Code | Telephone Number ( ) |
|---|---|---|---|---|---|

**14  YOUR RELATIVES AND ASSOCIATES**

Give the full name, correct code, and other requested information for each of your relatives and associates, living or dead, specified below.

| | | |
|---|---|---|
| 1 - Mother (first) | 5 - Foster parent | 9 - Sister | 13 - Half-sister | 17 - Other Relative* |
| 2 - Father (second) | 6 - Child (adopted also) | 10 - Stepbrother | 14 - Father-in-law | 18 - Associate* |
| 3 - Stepmother | 7 - Stepchild | 11 - Stepsister | 15 - Mother-in-law | 19 - Adult Currently Living With You |
| 4 - Stepfather | 8 - Brother | 12 - Half-brother | 16 - Guardian | |

*Code 17 (Other Relative) - include only foreign national relatives not listed in 1 - 16 with whom you or your spouse are bound by affection, obligation, or close and continuing contact.  Code 18 (Associates) - include only foreign national associates with whom you or your spouse are bound by affection, obligation, or close and continuing contact.

| Full Name (If deceased, check box on the left before entering name) | Code | Date of Birth Month/Day/Year | Country of Birth | Country(ies) of Citizenship | Current Street Address and City (country) of Living Relatives | State |
|---|---|---|---|---|---|---|
| | 1 | | | | | |
| | 2 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Enter your Social Security Number before going to the next page ————————➤

**15**   CITIZENSHIP OF YOUR RELATIVES AND ASSOCIATES

If your mother, father, sister, brother, child, or current spouse or person with whom you have a spouse-like relationship is a U.S. citizen by other than birth, or an alien residing in the U.S., provide the nature of the individual's relationship to you (Spouse, Spouse-like, Mother, etc.), and the individual's name and date of birth on the first line. (This information is needed to pair it accurately with information in items 10 and 14.)

On the second line, provide the individual's naturalization certificate or alien registration number and use one of the document codes below to identify proof of citizenship status. Provide additional information on that line as requested.

   1 - Naturalization Certificate: Provide the date issued and the location where the person was naturalized (Court, City and State).
   2 - Citizenship Certificate: Provide the date and location issued (City and State).
   3 - Alien Registration: Provide the date and place where the person entered the U.S. (City and State).
   4 - Other: Provide an explanation in the "Additional Information" block.

| Association #1 | Name | Date of Birth *(Month/Day/Year)* |
|---|---|---|
| Certificate/Registration # | Document Code | Additional Information | |

| Association #2 | Name | Date of Birth *(Month/Day/Year)* |
|---|---|---|
| Certificate/Registration # | Document Code | Additional Information | |

**16**   YOUR MILITARY HISTORY

| | | Yes | No |
|---|---|---|---|
| **a** | Have you served in the United States military? | | |
| **b** | Have you served in the United States Merchant Marine? | | |

List all of your military service below, including service in Reserve, National Guard, and U.S. Merchant Marine. Start with the most recent period of service (#1) and work backward. If you had a break in service, each separate period should be listed.

•Code. Use one of the codes listed below to identify your branch of service:
 1 - Air Force    2 - Army    3 - Navy    4 - Marine Corps    5 - Coast Guard    6 - Merchant Marine    7 - National Guard
•O/E. Mark "O" block for Officer or "E" block for Enlisted.
•Status. "X" the appropriate block for the status of your service during the time that you served. If your service was in the National Guard, do not use an "X": use the two-letter code for the state to mark the block.
•Country. If your service was with other than the U.S. Armed Forces, identify the country for which you served.

| Month/Year | Month/Year | Code | Service/Certificate # | O | E | Status | | | | Country |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Active | Active Reserve | Inactive Reserve | National Guard *(State)* | |
| To | | | | | | | | | | |
| To | | | | | | | | | | |

**17**   YOUR FOREIGN ACTIVITIES

| | | Yes | No |
|---|---|---|---|
| **a** | Do you have any foreign property, business connections, or financial interests? | | |
| **b** | Are you now or have you ever been employed by or acted as a consultant for a foreign government, firm, or agency? | | |
| **c** | Have you ever had any contact with a foreign government, its establishments (embassies or consulates), or its representatives, whether inside or outside the U.S., other than on official U.S. Government business? *(Does not include routine visa applications and border crossing contacts.)* | | |
| **d** | In the last 7 years, have you had an active passport that was issued by a foreign government? | | |

If you answered "Yes" to a, b, c, or d above, explain in the space below: provide inclusive dates, names of firms and/or governments involved, and an explanation of your involvement.

| Month/Year | Month/Year | Firm and/or Government | Explanation |
|---|---|---|---|
| To | | | |
| To | | | |

**18**   FOREIGN COUNTRIES YOU HAVE VISITED

List foreign countries you have visited, except on travel under official Government orders, beginning with the most current (#1) and working back 7 years. *(Travel as a dependent or contractor must be listed.)*
•Use one of these codes to indicate the purpose of your visit:  1 - Business    2 - Pleasure    3 - Education    4 - Other
•Include short trips to Canada or Mexico. If you have lived near a border and have made short (one day or less) trips to the neighboring country, you do not need to list each trip. Instead, provide the time period, the code, the country, and a note, "Many Short Trips".
•Do not repeat travel covered in items 9, 10, or 11.

| | Month/Year | Month/Year | Code | Country | | Month/Year | Month/Year | Code | Country |
|---|---|---|---|---|---|---|---|---|---|
| #1 | To | | | | #3 | To | | | |
| #2 | To | | | | #4 | To | | | |

This concludes Part 1 of this form. If you have used Page 9, continuation sheets, or blank sheets to complete any of the questions in Part 1, give the number for those questions in the space to the right.

Enter your Social Security Number before going to the next page  ——————▶

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

# QUESTIONNAIRE FOR
# NATIONAL SECURITY POSITIONS

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4036
86-111

| **Part 2** | OFFICIAL USE ONLY |
|---|---|

| | | Yes | No |
|---|---|---|---|
| **19** | **YOUR MILITARY RECORD** | | |
| | Have you ever received other than an honorable discharge from the military? If "Yes," provide the date of discharge and type of discharge below. | | |

| Month/Year | Type of Discharge |
|---|---|
| | |

| | | Yes | No |
|---|---|---|---|
| **20** | **YOUR SELECTIVE SERVICE RECORD** | | |
| **a** | Are you a male born after December 31, 1959? If "No," go to 21. If "Yes," go to b. | | |
| **b** | Have you registered with the Selective Service System? If "Yes," provide your registration number. If "No," show the reason for your legal exemption below. | | |

| Registration Number | Legal Exemption Explanation |
|---|---|
| | |

| | | Yes | No |
|---|---|---|---|
| **21** | **YOUR MEDICAL RECORD** | | |
| | In the last 7 years, have you consulted with a mental health professional (psychiatrist, psychologist, counselor, etc.) or have you consulted with another health care provider about a mental health related condition? | | |

If you answered "Yes," provide the dates of treatment and the name and address of the therapist or doctor below, unless the consultation(s) involved only marital, family, or grief counseling, not related to violence by you.

| Month/Year | Month/Year | Name/Address of Therapist or Doctor | State | ZIP Code |
|---|---|---|---|---|
| To | | | | |
| To | | | | |

| | | Yes | No |
|---|---|---|---|
| **22** | **YOUR EMPLOYMENT RECORD** | | |
| | Has any of the following happened to you in the last 7 years? If "Yes," begin with the most recent occurrence and go backward, providing date fired, quit, or left, and other information requested. | | |

Use the following codes and explain the reason your employment was ended:

1 - Fired from a job
2 - Quit a job after being told you'd be fired
3 - Left a job by mutual agreement following allegations of misconduct
4 - Left a job by mutual agreement following allegations of unsatisfactory performance
5 - Left a job for other reasons under unfavorable circumstances

| Month/Year | Code | Specify Reason | Employer's Name and Address (include city/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

| | | Yes | No |
|---|---|---|---|
| **23** | **YOUR POLICE RECORD** | | |
| | For this item, report information regardless of whether the record in your case has been "sealed" or otherwise stricken from the court record. The single exception to this requirement is for certain convictions under the Federal Controlled Substances Act for which the court issued an expungement order under the authority of 21 U.S.C. 844 or 18 U.S.C. 3607. | | |
| **a** | Have you ever been charged with or convicted of any felony offense? (include those under Uniform Code of Military Justice) | | |
| **b** | Have you ever been charged with or convicted of a firearms or explosives offense? | | |
| **c** | Are there currently any charges pending against you for any criminal offense? | | |
| **d** | Have you ever been charged with or convicted of any offense(s) related to alcohol or drugs? | | |
| **e** | In the last 7 years, have you been subject to court martial or other disciplinary proceedings under the Uniform Code of Military Justice? (include non-judicial, Captain's mast, etc.) | | |
| **f** | In the last 7 years, have you been arrested for, charged with, or convicted of any offense(s) not listed in response to a, b, c, d, or e above? (Leave out traffic fines of less than $150 unless the violation was alcohol or drug related.) | | |

If you answered "Yes" to a, b, c, d, e, or f above, explain below. Under "Offense," do not list specific penalty codes, list the actual offense or violation (for example, prison, theft, etc.).

| Month/Year | Offense | Action Taken | Law Enforcement Authority/Court (include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

Enter your Social Security Number before going to the next page ⟶

**24**   **YOUR USE OF ILLEGAL DRUGS AND DRUG ACTIVITY**

| | Yes | No |
|---|---|---|
| The following questions pertain to the illegal use of drugs or drug activity. You are required to answer the questions fully and truthfully, and your failure to do so could be grounds for an adverse employment decision or action against you, but neither your truthful responses nor information derived from your responses will be used as evidence against you in any subsequent criminal proceeding. | | |
| **a** Since the age of 16 or in the last 7 years, whichever is shorter, have you illegally used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.), or prescription drugs? | | |
| **b** Have you ever illegally used a controlled substance while employed as a law enforcement officer, prosecutor, or courtroom official; while possessing a security clearance; or while in a position directly and immediately affecting the public safety? | | |
| **c** In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis for your own intended profit or that of another? | | |

If you answered "Yes" to a or b above, provide the date(s), identify the controlled substance(s) and/or prescription drugs used, and the number of times each was used.

| Month/Year | Month/Year | Controlled Substance/Prescription Drug Used | Number of Times Used |
|---|---|---|---|
| | To | | |
| | | | |

**25**   **YOUR USE OF ALCOHOL**

| | Yes | No |
|---|---|---|
| In the last 7 years, has your use of alcoholic beverages (such as liquor, beer, wine) resulted in any alcohol-related treatment or counseling (such as for alcohol abuse or alcoholism)? | | |

If you answered "Yes," provide the dates of treatment and the name and address of the counselor or doctor below. Do not repeat information reported in response to Item 21 above.

| Month/Year | Month/Year | Name/Address of Counselor or Doctor | State | ZIP Code |
|---|---|---|---|---|
| | To | | | |
| | To | | | |

**26**   **YOUR INVESTIGATIONS RECORD**

| | Yes | No |
|---|---|---|
| **a** Has the United States Government ever investigated your background and/or granted you a security clearance? If "Yes," use the codes that follow to provide the requested information below. If "Yes," but you can't recall the investigating agency and/or the security clearance received, enter "Other" agency code or clearance code, as appropriate, and "Don't know" or "Don't recall" under the "Other Agency" heading, below. If your response is "No," or you don't know or can't recall if you were investigated and cleared, check the "No" box. | | |

| Codes for Investigating Agency | | Codes for Security Clearance Received | | |
|---|---|---|---|---|
| 1 - Defense Department | 4 - FBI | 0 - Not Required | 3 - Top Secret | 6 - L |
| 2 - State Department | 5 - Treasury Department | 1 - Confidential | 4 - Sensitive Compartmented Information | 7 - Other |
| 3 - Office of Personnel Management | 6 - Other (Specify) | 2 - Secret | 5 - Q | |

| Month/Year | Agency Code | Other Agency | Clearance Code | Month/Year | Agency Code | Other Agency | Clearance Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

| | Yes | No |
|---|---|---|
| **b** To your knowledge, have you ever had a clearance or access authorization denied, suspended, or revoked, or have you ever been debarred from government employment? If "Yes," give date of action and agency. Note: An administrative downgrade or termination of a security clearance is not a revocation. | | |

| Month/Year | Department or Agency Taking Action | Month/Year | Department or Agency Taking Action |
|---|---|---|---|
| | | | |

**27**   **YOUR FINANCIAL RECORD**

| | Yes | No |
|---|---|---|
| **a** In the last 7 years, have you filed a petition under any chapter of the bankruptcy code (to include Chapter 13)? | | |
| **b** In the last 7 years, have you had your wages garnished or had any property repossessed for any reason? | | |
| **c** In the last 7 years, have you had a lien placed against your property for failing to pay taxes or other debts? | | |
| **d** In the last 7 years, have you had any judgments against you that have not been paid? | | |

If you answered "Yes" to a, b, c, or d, provide the information requested below:

| Month/Year | Type of Action | Amount | Name Action Occurred Under | Name/Address of Court or Agency Handling Case | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |

**Enter your Social Security Number before going to the next page** _____

## 28 YOUR FINANCIAL DELINQUENCIES

| | Yes | No |
|---|---|---|
| **a** In the last 7 years, have you been over 180 days delinquent on any debt(s)? | | |
| **b** Are you currently over 90 days delinquent on any debt(s)? | | |

If you answered "Yes" to a or b, provide the information requested below:

| Incurred Month/Year | Satisfied Month/Year | Amount | Type of Loan or Obligation and Account Number | Name/Address of Creditor or Obligee | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

## 29 PUBLIC RECORD CIVIL COURT ACTIONS

| | Yes | No |
|---|---|---|
| In the last 7 years, have you been a party to any public record civil court actions not listed elsewhere on this form? | | |

If you answered "Yes," provide the information about the public record civil court action requested below:

| Month/Year | Nature of Action | Result of Action | Name of Parties Involved | Court (Include City and county/country if outside U.S.) | State | ZIP Code |
|---|---|---|---|---|---|---|
| | | | | | | |

## 30 YOUR ASSOCIATION RECORD

| | Yes | No |
|---|---|---|
| **a** Have you ever been an officer or a member or made a contribution to an organization dedicated to the violent overthrow of the United States Government and which engages in illegal activities to that end, knowing that the organization engages in such activities with the specific intent to further such activities? | | |
| **b** Have you ever knowingly engaged in any acts or activities designed to overthrow the United States Government by force? | | |

If you answered "Yes" to a or b, explain in the space below.

### Continuation Space

Use the continuation sheet(s) (SF86A) for additional answers to items 9, 10, and 11. Use the space below to continue answers to all other items and any information you would like to add. If more space is needed than is provided below, use a blank sheet(s) of paper. Start each sheet with your name and Social Security Number. Before each answer, identify the number of the item.

After completing Parts 1 and 2 of this form and any attachments, you should review your answers to all questions to make sure the form is complete and accurate, and then sign and date the following certification and sign and date the release on Page 10.

## Certification That My Answers Are True

My statements on this form, and any attachments to it, are true, complete, and correct to the best of my knowledge and belief and are made in good faith. I understand that a knowing and willful false statement on this form can be punished by fine or imprisonment or both. (See section 1001 of title 18, United States Code).

| Signature (Sign in ink) | Date |
|---|---|
| | |

Enter your Social Security Number before going to the next page ⎯⎯⎯⎯⎯⎯→

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4035
86-111

# UNITED STATES OF AMERICA

## AUTHORIZATION FOR RELEASE OF INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

I **Authorize** any investigator, special agent, or other duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information. I authorize the Federal agency conducting my investigation to disclose the record of my background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance.

I **Understand** that, for financial or lending institutions, medical institutions, hospitals, health care professionals, and other sources of information, a separate specific release will be needed, and I may be contacted for such a release at a later date. Where a separate release is requested for information relating to mental health treatment or counseling, the release will contain a list of the specific questions, relevant to the job description, which the doctor or therapist will be asked.

I **Further Authorize** any investigator, special agent, or other duly accredited representative of the U.S. Office of Personnel Management, the Federal Bureau of Investigation, the Department of Defense, the Defense Investigative Service, and any other authorized Federal agency, to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for access to classified information and/or for assignment to, or retention in a sensitive National Security position, in accordance with 5 U.S.C. 9101. I understand that I may request a copy of such records as may be available to me under the law.

I **Authorize** custodians of records and sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.

I **Understand** that the information released by records custodians and sources of information is for official use by the Federal Government only for the purposes provided in this Standard Form 86, and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for five (5) years from the date signed or upon the termination of my affiliation with the Federal Government, whichever is sooner. Read, sign and date the release on the next page if you answered "Yes" to question 21.

| Signature (Sign in ink) | Full Name (Type or Print Legibly) | Date Signed |
| --- | --- | --- |
| Other Names Used | | Social Security Number |

| Current Address (Street, City) | State | ZIP Code | Home Telephone Number (Include Area Code) ( ) |
| --- | --- | --- | --- |

Standard Form 86
Revised September 1995
U.S. Office of Personnel Management
5 CFR Parts 731, 732, and 736

Form approved:
OMB No. 3206-0007
NSN 7540-00-634-4036
86-111

# UNITED STATES OF AMERICA

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

**Instructions for Completing this Release**

This is a release for the investigator to ask your health practitioner(s) the three questions below concerning your mental health consultations. Your signature will allow the practitioner(s) to answer only these questions.

I am seeking assignment to or retention in a position with the Federal government which requires access to classified national security information or special nuclear information or material. As part of the clearance process, I hereby authorize the investigator, special agent, or duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain the following information relating to my mental health consultations:

Does the person under investigation have a condition or treatment that could impair his/her judgment or reliability, particularly in the context of safeguarding classified national security information or special nuclear information or material?

If so, please describe the nature of the condition and the extent and duration of the impairment or treatment.

What is the prognosis?

I understand the information released pursuant to this release is for use by the Federal Government only for purposes provided in the Standard Form 86 and that it may be redisclosed by the Government only as authorized by law.

Copies of this authorization that show my signature are as valid as the original release signed by me. This authorization is valid for I year from the date signed or upon termination of my affiliation with the Federal Government, whichever is sooner.

| Signature (Sign in ink) | Full Name (Type or Print Legibly) | Date Signed |
|---|---|---|
| Other Names Used | | Social Security Number |
| Current Address (Street, City) | State | ZIP Code | Home Telephone Number (Include Area Code) (    ) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN,<br><br>       Plaintiff,<br><br>       v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>       and<br><br>GENERAL MICHAEL V. HAYDEN<br>Director, Central Intelligence Agency<br><br>       and<br><br>DOES 1-10<br>(Employees of the Central Intelligence Agency,<br>whose exact identity is unknown to Plaintiff<br>at this time and/or classified)<br><br>       and<br><br>DEPARTMENT OF JUSTICE<br><br>       Defendants. | Case No. 1:07-cv-00685 (RWR) |

## DECLARATION OF PETER M. BRYCE

1.     I am currently employed as a Trial Attorney in the Federal Programs Branch, Civil

Division, United States Department of Justice, and am primary counsel of record for federal

defendants in the above-captioned case.  I make this declaration based on personal knowledge.

2.     On August 31, 2007, the CIA moved to dismiss for lack of jurisdiction and failure

to state a claim.  In support of this motion, the CIA submitted the declaration of Kathleen B.

Tormey, which I filed with the Court on the CIA's behalf.  Attached to the Tormey Declaration

were three documents, including the CIA's security clearance denial that plaintiff challenges in

this case, dated January 28, 2005, and two administrative appeal submissions, dated February 15,

2005 and March 15, 2005, in which plaintiff challenged that security clearance denial. These

documents supported various grounds to dismiss the complaint.

      3.     On September 29, 2007, approximately thirty days after defendant filed the

motion to dismiss, plaintiff filed a motion to extend the time to respond. Prior to filing this

motion, plaintiff's counsel had spoken with me via e-mail and telephone to seek consent to the

request, which I gave. During this time, plaintiff's counsel did not raise any concerns about the

documents filed with the CIA's motion to dismiss. The Court thereafter granted plaintiff's

extension motion, giving him until Monday, November 5, 2007 to respond to defendant's

motion.

      4.     Late at night on November 4, 2007, plaintiff's counsel sent me an e-mail

informing me of concerns regarding the documents filed in support of the CIA's motion to

dismiss. Specifically, plaintiff's counsel informed me that the documents contained certain

"Privacy Act protected information," including plaintiff's social security number, home address,

e-mail address, and phone number. Claiming that he was not seeking any admission that a

Privacy Act violation had occurred, plaintiff's counsel stated that he was instead requesting my

assistance in minimizing his concerns about possible identity theft by getting the information off

the public docket. See Exhibit A.

      5.     After receiving counsel's e-mail the next morning and checking the documents in

question, I responded by e-mail the next morning that I understood counsel's concerns, and

would take steps to ask the Court to put the documents under seal. Immediately thereafter, I

contacted the court's ECF help line and spoke to a court employee, who placed the documents

under seal during the conversation, and advised me to refile redacted versions of the documents

along with an "errata." I did so later that day after allowing plaintiff's counsel to review the

redacted versions of the documents. <u>See</u> Exhibit B.

      6.     That same day, shortly after the documents had been placed under seal, plaintiff's

counsel notified me for the first time that he was filing an amended complaint which added the

DOJ as a defendant. <u>See</u> Exhibit A. The amended complaint added six new money damages

claims under the Privacy Act against the CIA and DOJ, all purportedly based on the documents

filed in support of the CIA's motion to dismiss.  Plaintiff also re-asserted his prior challenges to

the reversed security clearance denial under the Privacy Act and Constitution, as well as adding a

new challenge under the Administrative Procedure Act ("APA").  Am. Compl. ¶¶ 66, 68-70.

      6.     In filing the declaration and attached documents with the Court, I did not intend to

harm plaintiff.  I did not notice that one of the documents contained plaintiff's social security

number at the time of filing, nor to the best of my knowledge and belief did anyone else at the

CIA or DOJ.  Had I noticed, I would have redacted it from the document.  I filed these

documents because they were central to the claims in plaintiff's complaint, because they support

various grounds to dismiss his claims, and because the Civil Division permits the filing of

documents relevant to the Civil Division's defense of litigation.  I did not believe at the time of

filing, nor do I believe now, that filing these documents in support of the motion to dismiss was a

violation of the Privacy Act.

      7.     After the amended complaint was filed, I exchanged several e-mails and letters

with plaintiff's counsel about the merits of the newly added Privacy Act claims.  In one such

letter, I reminded plaintiff's counsel that he had previously advanced virtually identical Privacy

Act claims on behalf of other clients in <u>Eddington v. Central Intelligence Agency</u>, C.A. No. 97-

0872 (D.D.C.  Feb. 16, 1999), that such claims had been summarily rejected in the district court

and D.C. Circuit, and that the D.C. Circuit had ordered him to show cause why he should not be

sanctioned for filing a frivolous appeal.  <u>See</u> Exhibit C.  Plaintiff's counsel nonetheless refused to

withdraw the newly added Privacy Act claims.  Although he admitted that he lost on a "similar

claim" in <u>Eddington</u>, he stated that the "confusion" that he "unfortunately failed to clarify before

Judge Jackson" in <u>Eddington</u> would not occur in this case.  He also stated that because the D.C.

Circuit did not ultimately make a "determination of frivolity," one could "just as easily expound"

that "the D.C. held that the claim was <u>not</u> frivolous."  <u>See</u> Exhibit D.

  I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 31, 2008           <u>/s/ Peter M. Bryce   </u>
                   Peter M. Bryce

4

**EXHIBIT A TO BRYCE DECLARATION**

**Bryce, Peter (CIV)**

| | |
|---|---|
| **From:** | Mark S. Zaid [mark@markzaid.com] |
| **Sent:** | Monday, November 05, 2007 12:00 PM |
| **To:** | Bryce, Peter (CIV) |
| **Cc:** | mark@markzaid.com; 'Bradley P. Moss, Esq.' |
| **Subject:** | RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED |

Peter, I appreciate your prompt response and full cooperation.

As I just stated in my vm, you will see that I am filing a First Amended Complaint today that includes several counts addressing the PA disclosure. I want to reiterate that your action to seal the documents does not, in any way, constitute a legal or factual concession that I will rely upon as proof of any inappropriate prior steps. If you wish to have the Motion filed jointly and explicitly state this promise, I will gladly do so.

Thanks again.

Mark

---

**From:** Bryce, Peter (CIV) [mailto:Peter.Bryce@usdoj.gov]
**Sent:** Monday, November 05, 2007 11:12 AM
**To:** Mark S. Zaid
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Mark,

Without addressing the legal positions suggested in your email, I completely understand your underlying concerns and will prepare a motion to put the exhibits under seal.

Feel free to call me if you wish to discuss this further.

Peter

Peter M. Bryce
Trial Attorney
Federal Programs Branch
Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: (202) 616-8335
Fax: (202) 616-8470

---

**From:** Mark S. Zaid [mailto:mark@markzaid.com]
**Sent:** Sunday, November 04, 2007 10:53 PM
**To:** Bryce, Peter (CIV)
**Cc:** mark@markzaid.com; 'Bradley P. Moss, Esq.'
**Subject:** Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Peter –

Please see the attached letter, the text of which has been reproduced below for your convenience. Thanks.

Mark

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

November 4, 2007

<u>VIA E-MAIL</u>

Peter Bryce
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C. 20530

Re: <u>Sullivan v. CIA et al.</u>, Civil Action No. 07-0685 (RWR)

Dear Peter:

The three documents you filed as exhibits to the Tormey Declaration contain Privacy Act protected information; namely, Mr. Sullivan's home address, telephone number, e-mail address and social security number.

I am writing today to request immediate action by the Department of Justice to either withdraw these three exhibits from public view and substitute redacted copies, or move to have the three documents filed under seal. I am most concerned, for what should be obvious reasons, with having Mr. Sullivan's social security number available for anyone who wishes to commit identity fraud.

I am neither requesting that you agree with my assertion that this information is privacy protected, nor that the Privacy Act was violated by the CIA/DOJ having filed the documents in the first place, but merely to understand the legitimate concerns my client has with respect to having the information so easily available and the vulnerability that may exist. With that in mind, I am respectfully seeking your cooperation to minimize these concerns.

I would appreciate hearing back from you as promptly as possible as to the Department's willingness to assist in this matter. Otherwise I will need to take immediate steps of my own to seal the exhibits. Thank you for you consideration, and I look forward to hearing from you soon. Best to reach me via e-mail or cell at 202-498-0011.

Sincerely,

/s/

Mark S. Zaid

cc: John Sullivan

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purposes is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone, facsimile or e-mail and purge the original and all copies thereof. Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

**EXHIBIT B TO BRYCE DECLARATION**

**Bryce, Peter (CIV)**

**From:** Mark S. Zaid [mark@markzaid.com]
**Sent:** Monday, November 05, 2007 4:18 PM
**To:** Bryce, Peter (CIV)
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

They look fine Peter. Thanks again.

Mark

---

**From:** Bryce, Peter (CIV) [mailto:Peter.Bryce@usdoj.gov]
**Sent:** Monday, November 05, 2007 3:59 PM
**To:** Mark S. Zaid
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Mark,

As you requested, we've redacted references to home address, telephone number, e-mail address and social security number.  I'm attaching the redacted versions to this e-mail so you can double check to make sure we haven't missed anything.  Please let me know one way or the other by the end of the business day so I can get this on file in accordance with the clerks' office instructions.

Peter

Peter M. Bryce
Trial Attorney
Federal Programs Branch
Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: (202) 616-8335
Fax: (202) 616-8470

---

**From:** Mark S. Zaid [mailto:mark@markzaid.com]
**Sent:** Monday, November 05, 2007 2:34 PM
**To:** Bryce, Peter (CIV)
**Cc:** Shapiro, Elizabeth (CIV); mark@markzaid.com; 'Bradley P. Moss, Esq.'; acilman@aol.com
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

---

**From:** Bryce, Peter (CIV) [mailto:Peter.Bryce@usdoj.gov]
**Sent:** Monday, November 05, 2007 2:18 PM
**To:** Bryce, Peter (CIV); Mark S. Zaid
**Cc:** Shapiro, Elizabeth (CIV)
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Mark,

Following up, I spoke to the clerk's office earlier this morning about your request to redact exhibit references to plaintiff's home address, telephone number, e-mail address and social security number.  The employee with whom I spoke informed me that she has now placed the exhibits under seal and that I should file redacted versions of those exhibits, which I intend to do as soon as possible.

Peter, thank you very much for attending to this matter so promptly. Your cooperation was both professional and appreciated. We, of course, consent to the filing of copies redacted of all Privacy Act protected information.

This took place before I knew about your proposed amended complaint, which I intend to address separately in a letter to you.

Understood. As I said, this was not part of an attempt to attain any legal or factual concessions from the Govt, and I will gladly ensure that is clear to the Court.

Mark

---

**From:** Bryce, Peter (CIV)
**Sent:** Monday, November 05, 2007 11:12 AM
**To:** 'Mark S. Zaid'
**Subject:** RE: Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Mark,

Without addressing the legal positions suggested in your email, I completely understand your underlying concerns and will prepare a motion to put the exhibits under seal.

Feel free to call me if you wish to discuss this further.

Peter

Peter M. Bryce
Trial Attorney
Federal Programs Branch
Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: (202) 616-8335
Fax: (202) 616-8470

---

**From:** Mark S. Zaid [mailto:mark@markzaid.com]
**Sent:** Sunday, November 04, 2007 10:53 PM
**To:** Bryce, Peter (CIV)
**Cc:** mark@markzaid.com; 'Bradley P. Moss, Esq.'
**Subject:** Sullivan v. CIA - IMMEDIATE ATTENTION REQUESTED

Peter –

Please see the attached letter, the text of which has been reproduced below for your convenience. Thanks.

Mark

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

November 4, 2007

<u>VIA E-MAIL</u>

Peter Bryce
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C. 20530

Re: <u>Sullivan v. CIA et al.</u>, Civil Action No. 07-0685 (RWR)

Dear Peter:

    The three documents you filed as exhibits to the Tormey Declaration contain Privacy Act protected information; namely, Mr. Sullivan's home address, telephone number, e-mail address and social security number.

    I am writing today to request immediate action by the Department of Justice to either withdraw these three exhibits from public view and substitute redacted copies, or move to have the three documents filed under seal. I am most concerned, for what should be obvious reasons, with having Mr. Sullivan's social security number available for anyone who wishes to commit identity fraud.

    I am neither requesting that you agree with my assertion that this information is privacy protected, nor that the Privacy Act was violated by the CIA/DOJ having filed the documents in the first place, but merely to understand the legitimate concerns my client has with respect to having the information so easily available and the vulnerability that may exist. With that in mind, I am respectfully seeking your cooperation to minimize these concerns.

I would appreciate hearing back from you as promptly as possible as to the Department's willingness to assist in this matter. Otherwise I will need to take immediate steps of my own to seal the exhibits. Thank you for you consideration, and I look forward to hearing from you soon. Best to reach me via e-mail or cell at 202-498-0011.

Sincerely,

/s/

Mark S. Zaid

cc: John Sullivan

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purpose is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone, facsimile or e-mail and purge the original and all copies thereof. Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

1/31/2008

**EXHIBIT C TO BRYCE DECLARATION**



U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW, Room 7308
Washington, D.C. 20001

---

Peter Bryce
Trial Attorney

Tel: (202) 616-8335
Fax: (202) 616-8470
peter.bryce@usdoj.gov

January 3, 2008

**VIA E-MAIL AND OVERNIGHT DELIVERY**

Mark S. Zaid
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

Re:    Sullivan v. Central Intelligence Agency, et al., 1:07-cv-00685

Dear Mark,

As you requested, I write to respond to your various letters of November 20 and 21, and December 26. I have reviewed these letters, including the block quotes and statements in your letters of November 20 and 21. While I do not think a point-by-point response would be a productive use of your time or mine, I can tell you that for reasons stated in our earlier letter, among others, we remain convinced that your new Privacy Act claims do not comply with the standards of Fed. R. Civ. P. 11.

As a courtesy, I would also draw your attention to a particular case I have now found in this circuit, Patrick Eddington, et al., v. Central Intelligence Agency, et al., C.A. No. 97-0872 (D.D.C.) (Jackson, J.). The decisions and other papers in that case show: (1) that you have previously advanced virtually identical claims on behalf of other clients; (2) that such claims were summarily rejected in the district court and on appeal; and (3) that you were required by the D.C. Circuit to show cause why you should not be sanctioned under Fed. R. App. P. 38 for filing a frivolous appeal. I point this out not to make you feel "insulted," but simply to remind you that you have been put on notice before about the relative merit (or lack thereof) of this sort of claim.

Accordingly, we reiterate our request that you withdraw the claims at issue.

As an additional courtesy, moreover, I will advise you that Department of Justice records do not support your most recent representation that you have properly served the

amended complaint on the Department of Justice.

Sincerely,

Peter Bryce

**EXHIBIT D TO BRYCE DECLARATION**

# MARK S. ZAID, P.C.

### ATTORNEY-AT-LAW

1250 CONNECTICUT AVENUE, N.W.
SUITE 200
WASHINGTON, DC 20036

———

TELEPHONE: (202) 454-2809
FACSIMILE: (202) 330-5610

MARK S. ZAID, MANAGING PARTNER
E-MAIL: MARK@MARKZAID.COM
BRADLEY P. MOSS, ASSOCIATE
E-MAIL: BRAD@MARKZAID.COM

January 17, 2008

VIA E-MAIL AND FACSIMILE

Peter Bryce
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C. 20530

Re: Sullivan v. CIA et al., Civil Action No. 07-0685 (RWR)

Dear Peter:

I am writing with respect to your letter of January 3, 2008.

We will not be withdrawing our new Privacy Act claims surrounding the release of my client's social security number into the public domain. Notwithstanding the fact that I presented you with detailed legal and factual analysis (as well as some thoughtful questions such as why the CIA redacts SSNs in Privacy Act responses to the actual individual but did not do so here), you have provided absolutely no reason other than "because we said so" to support your assertion that these claims violate the tenets of Rule 11. That is simply insufficient.

I am obviously well aware of what transpired in Patrick Eddington, et al., v. Central Intelligence Agency, et al., C.A. No. 97-0872 (D.D.C.)(Jackson, J.), and I believe the confusion that existed that I unfortunately failed to clarify before Judge Jackson will not occur in this case. Moreover, while the D.C. Circuit, for reasons unknown, did issue an order to show cause as to why the appeal should not be considered frivolous, I would point out to you that, in fact, there was no determination of frivolity ever reached. Ergo, one can just as easily expound that, although in Eddington a similar Privacy Act claim substantively lost, the D.C. Circuit held the claim was not frivolous.

Furthermore, I have consulted with several colleagues who are quite familiar with privacy issues and the Privacy Act. They have reviewed the First Amended Complaint and the correspondence between us. While they share the same view as I do, to which I freely admit, that

these types of claims are very difficult, they all believed the claim was legitimate and will execute declarations under penalty of perjury attesting to that position

I will openly reiterate that, in light of all the existing facts, I will view any filing by your office to seek Rule 11 sanctions in this matter to be itself a violation of Rule 11 and reciprocally respond. I truly hope that this path is not one that is pursued as I find it doubtful that the Court will appreciate the attempts from either side.

With respect to service upon the Department of Justice, a new Summons and First Amended Complaint is being mailed today to the U.S. Attorney for the District of Columbia. As you know, however, the Department received its copy of the Summons and First Amended Complaint on December 17, 2007.

Sincerely,

Mark S. Zaid

cc: Elizabeth Shapiro, Esq.
        Federal Programs Branch, DOJ
    Vincent Garvey, Esq.
        Federal Programs Branch, DOJ
    John Sullivan
    Alan Cilman, Esq.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendants. | ) |
| | ) |

## EXHIBIT A TO DEFENDANT'S
## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK G. EDDINGTON, et al.,                )
                                             )
         Plaintiffs,                         )
                                             )
    v.                                       )    Civil Action No. 97-0872(TPJ)
                                             )
CENTRAL INTELLIGENCE AGENCY,                 )    FILED
         et al.,                             )
                                             )    FEB 16 1999
         Defendants.                         )
                                             )    NANCY MAYER-WHITTINGTON, CLERK
                                                  U.S. DISTRICT COURT

MEMORANDUM AND ORDER

This is one of three actions plaintiffs have pending before this Court[1]. In this case,

plaintiffs Patrick G. Eddington and Robin Eddington, who are husband and wife and are both

former employees of the Central Intelligence Agency ("CIA"), bring suit against the CIA seeking

damages and injunctive relief for alleged violations of the Eddingtons' privacy rights under the

Privacy Act, 5 U.S.C. § 552a. This case is before this Court on the motion of defendant Central

Intelligence Agency ("CIA") to dismiss[2].

In 1996, the Eddingtons filed requests under the Freedom of Information Act ("FOIA")

and the Privacy Act for various CIA records and records from other government agencies.

Dissatisfied with the government's responses, the Eddingtons filed suit for access to the records.

---

[1]      The other two are Freedom of Information Act and Privacy Act cases: C.A. No.
97-0108, Patrick G. Eddington, et al. v. Central Intelligence Agency, et al. and C.A. No. 97-
2958, Patrick G. Eddington v. Central Intelligence Agency, et al.

[2]      At the May 12, 1998 oral argument, counsel for plaintiffs conceded that this
action should be dismissed as to all other defendants, Lee S. Strickland, Jill S. Ruhnke, and Does
1-50.

1

#2(
N)

Patrick G. Eddington and Robin Eddington v. Central Intelligence Agency, et al., C.A. No. 97-0108. At the March 20, 1997 status conference in that case, it was agreed the defendants CIA and Defense Intelligence Agency ("DIA") would file a motion to stay the proceedings as to certain counts of the complaint, pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).

The CIA and DIA filed their Motion for a Partial Stay of Proceedings on March 25, 1997. In support of the motion, the agencies submitted the declaration of Lee S. Strickland, Information and Privacy Coordinator for the United States Central Intelligence Agency. Among the exhibits to the Strickland Declaration were copies of some of the Eddingtons' Privacy Act requests[3]. Those Privacy Act requests included the Eddingtons' home address, their CIA employee identification numbers, Robin Eddington's social security number, and Patrick Eddington's unlisted home phone number. In this suit, the Eddingtons allege intentional violations of the Privacy Act in connection with the release of this personal information that occurred when their Privacy Act requests were publicly filed as exhibits to the CIA's Open America motion[4].

---

[3]     Although Patrick Eddington's requests were denominated Privacy Act requests, they were processed by the agency pursuant to both the Privacy Act and FOIA. See Strickland Declaration, Exh. 18.

[4]     The Eddingtons' Privacy Act requests were only available to the public from March 25, 1997 to April 4, 1997, the day this Court entered an order placing the exhibits to the Strickland declaration under seal.

The Privacy Act requires that:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains....

5 U.S.C. § 552a(b).

The CIA concedes that it did not obtain written permission before attaching the Eddingtons' Privacy Act requests as exhibits to its motion for an <u>Open America</u> stay. The Eddingtons concede that they are not challenging the actions of the Assistant United States Attorney in placing the Privacy Act requests in the public record. (Pltfs.' Oppo. at 8, n. 3). The Eddingtons claim they only find fault with the CIA employees' "transferring the documents to the Justice Department for the specific purpose of publicly disclosing" the documents. (Id.)

The CIA relies upon one of the eleven statutory exceptions to the Privacy Act, the "routine use" exception. 5 U.S.C. § 552a(b)(3). "Routine use" is defined as the use of a record "for a purpose which is compatible with the purpose for which it was collected...." 5 U.S.C. § 552a(a)(7). The Privacy Act requires an agency to publish the "routine uses" of its Privacy Act systems of records in the Federal Register, including the categories of users and the purpose of such use. 5 U.S.C. § 552a(b)(3), (e)(4)(D). Pursuant to that requirement, the CIA has published lists of the agency's Privacy Act systems of records. A system of records called "Privacy and Freedom of Information Acts Requesters" is designated "CIA-21," and contains the identities of individuals who make requests to the CIA under the Privacy Act and the FOIA. The system contains "all correspondence and other documents related to the receipt, processing, and final

3

disposition of" such requests. 42 Fed. Reg. 48050, 48058 (September 28, 1977). The enumerated routine uses of such records specifically include use for formulation of responses to FOIA and Privacy Act requests, and use for "reference in processing cases under appeal and litigation." Id. General routine uses of such records, which also are applicable to all CIA Privacy Act systems of records, include Routine Use No. 4, which permits use "in the course of presenting evidence to a court, ... including ... disclosures made pursuant to statutes or regulations governing the conduct of such proceedings." 49 Fed. Reg. 49125 (December 18, 1984).

Thus, this Court finds that the CIA's transferring the Eddington's Privacy Act requests to the Assistant United States Attorney to attach as exhibits to the motion for an Open America stay was appropriate under the "routine use" exception to the Privacy Act.

Wherefore, for the foregoing reasons, upon consideration of the motion by defendants to dismiss, plaintiffs' opposition thereto and plaintiffs' cross-motion for partial summary judgment, defendants' reply, the exhibits to those filings, the proceedings at the hearing of May 12, 1998, and the entire record herein, it is this 16th day of February, 1999,

ORDERED, that defendants' motion to dismiss is granted; and it is,

FURTHER ORDERED, that this action is dismissed with prejudice.

Thomas Penfield Jackson
U.S. District Judge

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| and | ) |
| | ) |
| GENERAL MICHAEL V. HAYDEN | ) |
| Director, Central Intelligence Agency | ) |
| | ) |
| and | ) |
| | ) |
| DOES 1-10 | ) |
| (Employees of the Central Intelligence Agency, | ) |
| whose exact identity is unknown to Plaintiff | ) |
| at this time and/or classified) | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF JUSTICE | ) |
| | ) |
| Defendants. | ) |
| | ) |

## EXHIBIT B TO DEFENDANT'S
## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

221 F.3d 195                                                                                                    **Page    1**
221 F.3d 195, 2000 WL 293226 (C.A.D.C.), 343 U.S.App.D.C. 50
**(Cite as: 221 F.3d 195, 221 F.3d 195 (Table))**

Eddington v. C.I.A.
C.A.D.C.,2000.
NOTICE:      THIS   IS   AN   UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTADC
Rule 28 and FI CTADC Rule 36 for rules regarding
the publication and citation of unpublished
opinions.)
United States Court of Appeals, District of
Columbia Circuit.
Patrick G. **EDDINGTON** and Robin **Eddington**,
Appellants,
v.
CENTRAL INTELLIGENCE AGENCY, et al.,
Appellees.
No. 99-5107.

Feb. 18, 2000.

Appeal from the United States District Court for the
District of Columbia.

Before   SILBERMAN,     WILLIAMS,     and
GINSBURG, Circuit Judges.

*JUDGMENT*

PER CURIAM.
**\*1** This cause was considered on the record from the
United States District Court for the District of
Columbia, and on the briefs filed by the parties.
While some of the issues presented occasion no need
for a published opinion, they have been accorded
full consideration by the Court. *See*D.C.Cir. R.
36(b). On consideration thereof, it is

ORDERED and ADJUDGED, by this Court, that
the judgment of the District Court appealed from in
this cause is hereby affirmed substantially for the
reasons stated by the district court. It is

FURTHER ORDERED, by this Court, that
appellants show cause within seven days from the
date of this order why they should not pay
appellees' double costs pursuant to Fed. R.App. P.
38, or appellees' costs, expenses, and attorneys' fees
pursuant to D.C.Cir. R. 38, for filing a frivolous
appeal. It is

FURTHER ORDERED, by this Court, *sua sponte,*

that the Clerk shall withhold issuance of the mandate
herein until seven days after disposition of any
timely petition for rehearing. *See*D.C.Cir. R.
41(a)(1). This instruction to the Clerk is without
prejudice to the right of any party at any time to
move for expedited issuance of the mandate for good
cause shown.

C.A.D.C.,2000.
Eddington v. C.I.A.
221 F.3d 195, 2000 WL 293226 (C.A.D.C.), 343
U.S.App.D.C. 50

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN F. SULLIVAN,                                )
                                                 )
       Plaintiff,                       )
                                                 )
       v.                               )
                                                 )  Case No. 1:07-cv-00685 (RWR)
CENTRAL INTELLIGENCE AGENCY,                     )
                                                 )
       and                              )
                                                 )
GENERAL MICHAEL V. HAYDEN                        )
Director, Central Intelligence Agency            )
                                                 )
       and                              )
                                                 )
DOES 1-10                                        )
(Employees of the Central Intelligence Agency,   )
whose exact identity is unknown to Plaintiff     )
at this time and/or classified)                  )
                                                 )
       and                              )
                                                 )
DEPARTMENT OF JUSTICE                            )
                                                 )
       Defendants.                      )
                                                 )

## EXHIBIT C TO DEFENDANT'S
## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## FIRST AMENDED COMPLAINT



Appeal No. 99-5107

In The

United States Court of Appeals for the District of Columbia Circuit

PATRICK G. EDDINGTON

Plaintiff-Appellant,

and

ROBIN EDDINGTON

Plaintiff-Appellant,

v.

CENTRAL INTELLIGENCE AGENCY

Defendant-Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, IN 97-CV-00872, JUDGE THOMAS P. JACKSON

————————————

**APPELLANTS' RESPONSE TO COURT'S
FEBRUARY 18, 2000, ORDER TO SHOW CAUSE**

————————————

MARK S. ZAID, P.C.
1275 K STREET, N.W.
SUITE 770
WASHINGTON, D.C. 20005
202-371-6626

**February 24, 2000**

## INTRODUCTION

By its judgment dated February 18, 2000, this Court *per curiam* summarily dismissed Plaintiff-Appellants Patrick and Robin Eddington's ("Eddingtons") appeal. No opinion or analysis setting forth the reason for this decision was provided. Instead, the Eddingtons and their counsel were ordered to show cause why they "should not pay appellees' double costs pursuant to Fed.R.App.38, or appellees' costs, expenses, and attorneys' fees pursuant to D.C.Cir.R. 38, for filing a frivolous appeal." Judgment at 1 (filed Feb. 18, 2000).

As shown below, such punishment would be wholly unjustified.

## PROCEDURAL BACKGROUND

The Eddingtons filed suit against the Defendant-Appellee Central Intelligence Agency ("CIA") in the United States District Court for the District of Columbia on April 28, 1997. The Eddingtons - two CIA Whistleblowers - alleged violations of the Privacy Act for the CIA having instructed its legal representative/agent to publicly disclose protected privacy information (Social Security number, home address, unlisted telephone number, Agency employee numbers).

The matter was fully briefed and oral arguments were heard on May 12, 1998, before the Honorable Thomas Penfield Jackson. The District Court granted the CIA's Motion to Dismiss on February 16, 1999, based on its opinion that the release of the information constituted an appropriate "routine use", and all claims were dismissed with prejudice. Final judgment was also entered on February 16, 1999. This appeal was timely filed on April 15, 1999.

Prior to full briefing before this Court, the CIA filed a Motion for Summary Affirmance on June 4, 1999. The CIA's Motion was denied on

August 16, 1999. Full briefing ensued and oral arguments were scheduled to take place on February 15, 2000. However, the parties were notified by Order dated February 4, 2000, that no oral arguments would be heard. The Court's Judgment was then issued on February 18, 2000, with an Order to Show Cause as to why sanctions should not be imposed against the Eddingtons and/or their counsel for filing a frivolous appeal.

## ARGUMENT

Notwithstanding the "strong presumption that each party should pay its own fees on appeal," Reliance Insurance Co. v. Sweeney Corp., 792 F.2d 1137, 1139 (D.C.Cir. 1986), Fed.R.App.P. 38 (and D.C.Cir.R.38), which essentially implement 28 U.S.C. §§ 1912 and 1927, permits a Court to assess against an appellant the doubling of costs, and against the appellant's attorney costs, expenses and attorney's fees, under certain limited circumstances that do not exist here.

While the Court's Judgment contained no analysis to inform the Eddingtons and their counsel what conduct could be considered frivolous, it is inferred that the Court questions the existence of an appellate issue. The Eddingtons' opening brief concisely set forth the two primary issues brought before this Court:

> (a) Whether or not the Appellee CIA's disclosure, through its legal representative/agent, of the Appellants' home address, unlisted telephone number, social security number and Agency employee numbers in open court pleadings constituted a violation of the Privacy Act, or was such action excused as a "routine use"? Should the act fall outside of the CIA's routine use exception, was the act willful and/or intentional?
> (b)  Whether, if the district court was unwilling to hold that the CIA had acted in a willful and/or intentional manner as



a matter of law so as to violate the Privacy Act, discovery
should have been permitted?

Brief of Plaintiffs-Appellants Patrick G. Eddington and Robin Eddington at 1
(filed Oct. 29, 1999).

As a matter of law, as more fully set forth below, neither the Eddingtons
or their counsel deserve sanctions under Rule 38. There was no bad faith
conduct or any pattern of questionable or obfuscating behavior. Neither the
District Court, the CIA or the Department of Justice ever raised the issue of
sanctions at any stage of this appeal, or even intimated that the issues raised
by the Eddingtons bordered on the frivolous.

I.  NO BEHAVIOR OF APPELLANTS' COUNSEL WAS SO
    FRIVOLOUS, REPETITIOUS OR SINGULARLY EGREGIOUS
    AS TO MERIT THE IMPOSITION OF SANCTIONS

Section 1927 of Title 28 states that:

> Any attorney or other person admitted to conduct cases in
> any court of the United States . . . who so multiplies the
> proceedings in any case unreasonably and vexatiously may
> be required by the court to satisfy personally the excess
> costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

28 U.S.C. § 1927 (1988). In essence, it recognizes a court's power to assess
attorney's fees against an attorney who frustrates the progress of judicial
proceedings. There is no dispute that this Court can impose sanctions when
justified. See Hutto v. Finney, 437 U.S. 678 (1978) ("An equity court has the
unquestioned power to award attorney's fees against a party who shows bad
faith by delaying or disrupting the litigation or by hampering enforcement of a
court order."). "Section 1927 primarily controls a lawyer's conduct in the
district court, but it also has been applied to attorneys who, without legal

justification, seek appellate review." Reliance, 792 F.2d at 1139. Given that the District Court never questioned the conduct of the Eddingtons' counsel, it is presumed that this Court questions whether any legal justification existed to bring this appeal, i.e., was this appeal frivolous?

It is well-settled that an appeal is "considered frivolous when its disposition is obvious, and the legal arguments are wholly without merit." E.N. Bisso & Son, Inc. v. NLRB, 84 F.3d 1443, 1445 (D.C.Cir. 1996), citing Reliance Insurance Co., 792 F.2d at 1138.[1] See also Garden State Broadcasting Ltd. Partnership v. FCC, 996 F.2d 386, 396 (D.C.Cir. 1993) (sanctionable conduct consists of "making objectively groundless legal arguments in briefs filed in this court."). Nothing of the sort exists here.

First, in determining whether a release of privacy protected information was through a lawful "routine use", it is a wholly tenable argument that the conduct of the Assistant U.S. Attorney is legally imputed to the CIA. This is a standard, well-accepted premise of agent-principle law. Thus, should the release have not been a "routine use", a violation of the Privacy Act occurred.[2] Moreover, neither party identified any cases in which the

---

[1]This standard appears to have widespread acceptance. See e.g. Pena v. Seguros La Comercial, S.A., 770 F.2d 815 (9th Cir. 1985); Johnson v. Allyn & Bacon, Inc., 731 F.2d 64 (1st Cir. 1984).

[2]The bottom line issue on appeal was whether or not the CIA had released information through a lawful "routine use". Even the CIA recognized this, although in a somewhat modified fashion. Brief for Appellee at vii ("Whether the District Court properly determined that the Central Intelligence Agency did not violate the Privacy Act when, in litigation regarding the Appellants' Freedom of Information Act and Privacy Act requests, the United States Attorney's Office attached to a motion seeking a stay of proceedings copies of these requests."). The Eddingtons properly challenged the District Court's interpretation that a lawful "routine use" applied to the CIA's conduct.

agent-principle issue had ever arisen before in the context of a Privacy Act case.

In light of the District Court's decision, there seems to be some confusion regarding the actual claims pursued by the Eddingtons. That the Eddingtons never sought to pursue their claim against the U.S. Attorneys Office and/or the Department of Justice has no legal effect on the liability created on behalf of the CIA by its attorney. The Privacy Act does not require limited application. In the instant matter, two separate violations occurred for which the Eddingtons could have sought damages : (1) against the Department of Justice for the actions taken by the Assistant U.S. Attorney for physically filing the relevant documents in court; and (2) against the CIA for the conduct of its attorney and officials for taking steps to intentionally and publicly file the relevant privacy protected documents. The Eddingtons, not wanting to burden the judicial system or impose penalities against an agency simply because an attorney represented the interests of his client, chose only to pursue the more important claim against the CIA. This was the Eddingtons' argument before the district court, although perhaps misunderstood, and it remains the Eddingtons' argument now.

Furthermore, the District Court issued a terse four page decision. There was no detailed legal analysis or exploration of the facts. On appeal, the Eddingtons' briefs analyzed numerous cases in challenging the District Court's ruling. This situation is nothing like in American Security Vanlines, Inc., 782 F.2d 1056 (D.C.Cir. 1986), where the appellant and his attorney only "repeated implausible, far-fetched, or tardily-raised objections" to the district court's detailed and cogent memorandum. Id.

Second, that no "evidence" was ever presented that the CIA had acted willfully or intentionally should be of no surprise or even relevance because

5



the Eddingtons were denied the opportunity to pursue discovery; an act generally granted as a matter of right in Privacy Act cases. How else could the Eddingtons have presented such evidence without being permitted to take depositions or submit interrogatories? Challenging the preclusion of discovery below was certainly an appropriate argument to raise on appeal.

Finally, and perhaps most importantly, this Court did not initially find this appeal to be frivolous. Had the appeal been so objectively groundless or wholly without merit, it would never have even reached this stage. Prior to full briefing, the CIA filed a Motion for Summary Affirmance on June 4, 1999. The same arguments, albeit in lesser detail, were briefed and presented to the Court for its consideration. Rather than grant summary affirmance immediately and call into question the conduct of the Eddingtons and/or their counsel, the Court denied the CIA's Motion on August 16, 1999. It ruled that "the merits of the parties' position are not so clear as to warrant summary action." Order at 1 (filed Aug. 16, 1999). This decision <u>alone</u> negates any likelihood that the Eddingtons' counsel undertook any actions that deserve punishment under Section 1927.[3] To require the Eddingtons and/or their attorney to pay double costs and attorney's fees for briefings authorized by the Court following its review of the summary affirmance pleadings would heighten the unfairness.

While the law of this circuit, reflecting a split in the circuits generally, is somewhat unsettled over whether a court must find an attorney's actions to be

---

[3]In fact, the Second Circuit Court of Appeals in <u>Pillay v. INS</u>, 45 F.3d 14 (2d Cir. 1995), recognized that where issues on appeal are "wholly frivolous" and not "arguable on their merits", it "routinely grants the government's motion for summary affirmance, without full briefing or oral argument." <u>Id</u>. at 16.

in bad faith before imposing sanctions under section 1927[4], it requires as a bare minimum that the conduct be reckless. Although recklessness is a less stringent standard than bad faith, it still requires a high threshold, U.S. v. Wallace, 964 F.2d 1214, 1219 (D.C.Cir. 1992), citing In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985)("our court long has treated reckless and intentional conduct as similar"). In general it "requires deliberate action in the

---

[4]See generally Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990)(noting split and collecting cases); Debra T. Landis, Annotation, What Conduct Constitutes Multiplying Proceedings Unreasonably and Vexatiously so as to Warrant Imposition of Liability on Counsel Under 28 U.S.C.[ ] § 1927 for Excess Costs, Expenses, and Attorney Fees, 81 A.L.R. Fed. 36 (1987)(same). However, most of the Circuits, including at times this one and its district courts, have found that bad faith *must* be present. See e.g. Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995)(section 1927 sanctions must be supported by a finding of bad faith); Baulch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995)(attorney must have acted in bad faith, with improper motive or with a reckless disregard); Pacific Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 120 (7th Cir. 1994)("Vexatious" conduct requires either subjective or objective bad faith); Hilton Hotels Corp. v. Banorc, 899 F.2d 40, 45 n.9 (D.C. Cir. 1990)("unlike Rule 11 ... section 1927 applies only when the attorney acts in subjective bad faith"); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987)(section 1927 requires finding of bad faith); Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985)(sanctions requiring a finding of "willful bad faith"); Kerner v. Cult Awareness Network, Washington, D.C., 843 F.Supp. 748, 750 (D.D.C. 1994)(bad faith required for imposition of sanctions); Cf. Reliance Ins. Co., 792 F.2d at 1138 ("While the language of § 1927 suggests deliberate misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim."). "Nevertheless, all of the courts, including those applying a lesser standard, at minimum agree that unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927." Cruz, 896 F.2d at 631 (citation omitted).

face of a known risk, the likelihood or impact of which the actor unexcusably underestimates or ignores." Wallace, 964 F.2d at 1220.

"The power to assess costs on the attorney involved 'is a power which the courts should exercise only in instances of serious and studied disregard for the orderly process of justice.'" Id. (citations omitted). See Roadway Express Inc. v. Piper, 447 U.S. 752, 767 ("attorney's fees should not be assessed lightly or without fair notice and an opportunity for a hearing on the record"). Personal responsibility should "flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court." Wallace, 964 F.2d at 1220.

In fact, where courts have employed section 1927, the attorney's behavior has been repeated or singularly egregious. In Fritz v. Honda Motor Co., 818 F.2d 924 (D.C. Cir. 1987), this Court upheld section 1927 sanctions where the attorney "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation." Id. at 925. Perhaps even more egregious was the conduct of the attorneys in Reliance, where orders of both the District Court and this Court were repeatedly ignored - including an Order to Show Cause why they should not be sanctioned - and its briefs, when submitted, offered only conclusory comments. 792 F.2d at 1139. See also Julien v. Zeringue, 864 F.2d 1572, 1575-76 (Fed. Cir. 1989)(sanctioning attorney who "continually missed deadlines, requested at least 10 extensions of time to file his briefs, and submitted a joint appendix 11 months after he was given extensive and explicit instructions"); Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 875 (5th Cir. 1988)(en banc)("section 1927 imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim"); In Re American President Lines, Ltd., 804 F.2d 1307,

1309 (D.C.Cir. 1986)(sanctions imposed following 20 year saga of relitigation of the same issues over and over); Jenkins v. Tatem, 795 F.2d 112, 112-13 (D.C.Cir. 1986)(parties embarked upon a "paper vendetta" over a mere $250); Toombs v. Leone, 777 F.2d 465, 471-72 (9th Cir. 1985) (counsel sanctioned for deliberately failing to meet pretrial brief deadline and then filing, on morning of trial, 148-page trial brief and 34-page exhibit list); Dallo v. INS, 765 F.2d 581, 589 (6th Cir. 1985)(counsel filed several petitions obviously without merit for the purposes of delay).

The Eddingtons' counsel has done nothing to justify sharing the fate of those attorneys whose misconduct is set forth above. The briefs submitted to this Court presented cogent arguments that respectfully challenged the interpretations and findings of the District Court. No arguments were proffered before this Court in bad faith.

## II. IMPOSITION OF DOUBLE COSTS UPON AN APPELLANT UNDER RULE 38 REQUIRES AN EXPLICIT SHOWING OF BAD FAITH WHICH IS LACKING HERE

Section 1912 of Title 28 reads:

> Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

28 U.S.C. § 1912. In order to impose double costs on an appellant under Rule 38 and/or 28 U.S.C. § 1912, courts have held that some evidence of bad faith be present. Ross v. City of Waukegan, 5 F.3d 1084, 1090 (7th Cir. 1993). See also Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 362 (9th Cir. 1993)(even in the face of precedent, appellants are entitled to make good faith arguments for reconsideration of existing law). At the very

9

least some affirmative act that contributed to the frivolousness must be noticeable. <u>Atwood v. Union Carbide Corp.</u>, 847 F.2d 278, 281 (5th Cir. 1988)(appellant ignored warnings of subsequent appellate decisions rendering claims moot and frivolous and failed to respond to appellee's settlement offer). <u>See also</u> <u>Montgomery v. US</u>, 933 F.2d 348, 350 (5th Cir. 1991)(at every turn appellant "disputes the indisputable and assails the unassailable ... he has consumed the valuable time and resources of this Court for his own self-indulgence.").

No evidence has been presented to this Court, or can reasonably be inferred by this Court, that the Eddingtons brought this appeal in bad faith or that any component of it was frivolous. The Eddingtons offered good faith arguments that the District Court had erred in its interpretation of the law and their arguments. The CIA, despite whether being legally culpable for its acts, placed the Eddingtons in potential physical and financial danger by unjustifiably releasing privacy protected information into the public domain. There is no bad faith in seeking accountability for such actions within the realm of the law.

## CONCLUSION

As this Court has previously stated, "[i]mposing a sanction of this sort is a serious step." <u>Reliance</u>, 792 F.2d at 1139. In the present action there has been absolutely no conduct by either the Eddingtons or their counsel to deserve the imposition of double costs or sanctions pursuant to Rule 38.

Date:  February 24, 2000

Respectfully submitted,

Mark S. Zaid, P.C.
Attorney-At-Law
D.C. Bar #440532
1275 K Street, N.W.
Suite 770
Washington, D.C.  20005
(202) 371-6626

Counsel For Appellants