**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN F. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:07-cv-00685 (RWR) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff's opposition to the motion to dismiss only highlights the deficiencies in the

amended complaint.  Indeed, most of plaintiff's remaining claims (six out of ten) are identical to

claims the D.C. Circuit previously identified as "frivolous" when plaintiff's counsel asserted

them on behalf of other clients in Eddington v. CIA, 221 F.3d 195 (D.C. Cir. 2000) (unpublished

disposition).  His other four claims are also subject to dismissal on numerous grounds.  Plaintiff

urges this Court to wait until later to dismiss so that he can take discovery.  But plaintiff's mere

desire to prolong this action is not a basis to order discovery.  His claims are all jurisdictionally

and legally defective, and should be dismissed with prejudice.

**ARGUMENT**

**I.    PLAINTIFF'S REMAINING PRIVACY ACT CHALLENGE TO THE**
**REVERSED SECURITY CLEARANCE DENIAL SHOULD BE DISMISSED**

Plaintiff's amended complaint purports to assert two accuracy claims under the Privacy

Act, one under 5 U.S.C. § 552a(e)(5) (maintaining inaccurate records), and another under §

552a(e)(6) (disseminating inaccurate records).  Plaintiff now "abandons" his claim under §

552a(e)(5), Opp. 9 n. 1.  His claim under § 552a(e)(6), however, also requires him to show

inaccuracies in his records, and is subject to dismissal for exactly the same reasons.

A.    **Plaintiff's Privacy Act challenges to the CIA's security clearance denial must
      be dismissed on separation of powers grounds**

As explained previously, plaintiff's accuracy claim under the dissemination provision, §

552a(e)(6), would require the Court to assess the merits of the CIA's security clearance denial,

and it is thus barred under Department of Navy v. Egan, 484 U.S. 518 (1988).  Mot. 9-11.

Plaintiff wrongly argues that Egan and its progeny do not preclude statutory challenges to the

merits of a security clearance decision, but stand only for the proposition that "certain specific

statutes, in and of themselves," do not confer authority to review the merits of such decisions.

Opp. 11-13.  As the D.C. Circuit itself has explained, the law in this area is dictated not by

"parsing" the particular statute at issue, but rather by Egan's separation-of-powers holding that

security clearance decisions "must be committed to the broad discretion of the agency

responsible" and that "it is not reasonably possible for an outside nonexpert body to review the

substance of such a judgment." Weber v. U.S., 209 F.3d 756, 759-60 (D.C. Cir. 2000).  See also,

e.g., Ryan v. Reno, 168 F.3d 520, 523 (D.C. Cir. 1999) ("Because the district court below could

not proceed with the appellants' discrimination action without reviewing the merits of DOJ's

decision not to grant a clearance, the court was foreclosed from proceeding at all.").

Plaintiff also asserts without explanation that his remaining accuracy claim does not

challenge the merits of the CIA's security clearance decision.  Opp. 14 & n. 4.  That position,

however, is refuted by his own allegations.  In particular, plaintiff asserts that the CIA violated §

552a(e)(6) by telling "government contractors" that there were "issues" relating to plaintiff's

security clearance when in fact there were no "legitimate" issues, Am. Compl. ¶ 59, and by incorrectly implying that "information existed that would preclude the granting of a security clearance," ¶ 58.  See also id. ¶ 28 (alleging that plaintiff was "wrongfully denied his security clearance"); ¶ 39 (CIA "sabotag[ed] the granting of his security clearance") ¶ 44 (CIA "falsely" denied plaintiff a security clearance); ¶ 44 (initial decision "lacked a substantive basis").  Thus, even assuming (contrary to reality) that these sorts of "inaccuracies" are subject to challenge under the Privacy Act, plaintiff's claim would require the Court to assess the merits of the agency's security clearance decision – i.e., whether there were, in fact, "legitimate" issues with plaintiff's security clearance, and whether information did in fact exist that would "preclude the granting of a security clearance."  See Webb v. Magaw, 880 F.Supp. 20 (D.D.C. 1995) (§ 552a(e)(6) claim requires showing that disseminated record was inaccurate).  This sort of judicial assessment is precisely what the Supreme Court prohibited in Egan.[1]

**B.**    **Plaintiff's Privacy Act challenges to the security clearance denial are precluded by the Civil Service Reform Act**

Plaintiff attempts to portray his Privacy Act claim as a "narrowly focused" on his allegations that the CIA "disseminat[ed] inaccurate information to third parties." Opp. 13-15.  As discussed above, however, plaintiff's own allegations in support of his dissemination claim are predicated entirely on his merits-based challenge to the CIA's initial security clearance decision – a decision which, according to plaintiff's own allegations, was made in connection with an

---

[1]  Plaintiff's newly drafted declaration submitted in opposition to the Motion to Dismiss cannot change this result because: (1) it should not be considered for the reasons stated, infra 4-5; and (2) it does not state a claim for dissemination of inaccurate records, infra 6-7.

unsuccessful application for employment with the CIA, Am. Compl. ¶¶ 11 & 28.  Accordingly, the claim falls within the purview of the CSRA.  Moreover, plaintiff has not identified any inaccuracies in any allegedly disseminated record, let alone identified the "causation link" between such inaccuracies and his claimed harm.  The "bad fit between the facts asserted by [plaintiff] and a colorable Privacy Act claim" shows that at best "his complaint really alleges only a wrongful personnel decision," and is thus precluded by the CSRA.  Mot. 11-13.

**C.    Plaintiff's Privacy Act challenges to the security clearance denial are time-barred**

As demonstrated previously, plaintiff's remaining accuracy claim is time-barred because his own amended complaint demonstrates that he knew of allegedly inaccurate records, and harm resulting therefrom, at the latest, by February or March of 2005 – more than two years before filing suit, Mot. 14-15.  Citing a newly drafted declaration, plaintiff now asserts that his § 552a(e)(6) claim is timely because he did not know about the "improper release" of the allegedly inaccurate information in his records "until in or around sometime in the Fall of 2005."  Opp. 15.

Plaintiff's attempt to circumvent the statute of limitations on the basis of this declaration is improper for several reasons.  First, it is "axiomatic" that plaintiff cannot amend his (already-amended) complaint with statements made in opposition to a motion to a dismiss.  E.g., Arbitraje Casa de Cambio v. Postal Service, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (factual assertions in opposition briefs and exhibits cannot be considered) (citing cases); Calvetti v. Antcliff, 346 F. Supp. 2d 92, 107 (D.D.C. 2004) (tactic is "clearly impermissible").  Plaintiff's declaration is also improper because it appears to *affirmatively contradict* allegations in his pleading.  The declaration asserts, for example, that Raytheon approached him about a job in "[i]n or around Fall 2005," Sull. Decl. ¶ 10, but his amended complaint states that this occurred in "August

2004," Am. Compl. ¶ 18.  The allegations in his complaint are binding judicial admissions which

plaintiff is not now permitted to contradict.  Yesudian v. Howard University, 153 F.3d 731, 748

(D.C. Cir. 1998).  Further, as discussed below, infra 6-7, the declaration does not allege anything

close to a § 552a(e)(6) claim because, inter alia, it does not allege an inaccuracy in his records.

More fundamentally, however, plaintiff concedes that the "critical issue" is "the time at

which 'the plaintiff first knew or had reason to know that allegedly inaccurate records were

being maintained,'" Opp. 15, not when he first knew about any subsequent "improper release" of

information.  The statute of limitations under the Privacy Act does not restart every time a

plaintiff is harmed by an allegedly inaccurate record or records.  Doe v. Thompson, 332 F. Supp.

2d 124, 132-34 (D.D.C. 2004) (citing cases).  More to the point, plaintiff cannot now avoid the

statute of limitations by abandoning his § 552a(e)(5) claim and pursuing only his dissemination

claim under § 552a(e)(6).  Id. (rejecting § 552a(e)(6) claim as time-barred even though

dissemination occurred within two-year window because plaintiff knew about the allegedly

inaccurate records more than two years before filing).  Because his own amended complaint

establishes that he knew about any alleged inaccuracies in his records, and alleged harm

therefrom,[2] more than two years before filing suit, his Privacy Act claim is time-barred.  See id.

### D.    Plaintiff Has Failed To State A Privacy Act Claim

As explained previously, plaintiff's accuracy claims fail because he has not alleged any

inaccuracies in his records, and has not alleged causation, Mot. 15-18.  Even now, plaintiff does

---

[2]  Plaintiff claims to have been harmed by the denial itself, and admits he learned of it as early as February 11, 2005.  Also, plaintiff's February 15, 2005 appeal submission, which is incorporated by reference into the complaint, Mot. 5 n. 2, claims pecuniary harm, Ex. B to Tormey Decl. (claiming to have lost money as a result of the challenged denial).

not attempt to identify any allegedly inaccurate records ("disseminated" or otherwise) in the

amended complaint, or explain how such inaccuracies caused him any harm.  Again, the only

"inaccuracies" identified in the pleading are his own merits-based challenges to the agency's

reversed security clearance denial, none of which are actionable under the Privacy Act.  See

Krieger v. U.S. Dept. of Justice, 529 F. Supp. 2d 29, 50 n. 10 (D.D.C. 2008) (§ 552a(e)(6) claim

fails because it is grounded not in inaccuracies but in unverifiable matters of opinion);  Webb,

880 F.Supp. at 24-25 (same).  Contrary to plaintiff's suggestion, courts routinely dismiss these

sorts of defective Privacy Act claims without ordering discovery.  See, e.g., cases cited in Mot.

15-17.  See also James v. Reno, 39 F. Supp. 2d 37 40 n. 1 (D.D.C. 1999). (Roberts, J.) (to raise

an accuracy claim, plaintiff would have to "identify any incorrect information" in his file . . . .

The Privacy Act "is not, however, a vehicle for amending the judgments of federal officials or ...

other[s] ... as those judgments are reflected in records maintained by federal agencies.").

        Plaintiff's recently submitted declaration does not change this conclusion.  First, the

Court should not consider this submission for the reasons stated supra 4-5.  In any event, it does

not assert anything remotely resembling a § 552a(e)(6) claim.  The declaration states:

> I was told by Karen S., a personnel officer with the Overseas Cadre, [an Office
> within the CIA], that they had been told I had cancelled my security clearance
> processing. This was flatly inaccurate as I never done [sic] any such thing. Based
> on this experience I believe that Raytheon was similarly falsely told that I did not
> have a current eligibility for access to classified information.

Sull. Decl. ¶ 10.  These allegations, which find no support in the amended complaint, assert at

best that (plaintiff "believes") the CIA incorrectly informed Raytheon about the status of

plaintiff's security clearance, not that there was an inaccuracy in a disseminated *record* (or any

record for that matter).  See Krieger, 529 F. Supp. 2d at 50 (§ 552a(e)(6) claim only applies to

"records" in a "system of records").  To the contrary, plaintiff seems to imply that the alleged

statement was *inconsistent* with his records, and thus that his records are in fact accurate on this

point.  Nor is there any suggestion that any allegedly inaccurate records were contained within a

"system of records," see id., or that the imagined misstatement was "willful and intentional," see

White v. Office of Personnel Management, 840 F.2d 85, 87 (D.C. Cir. 1988).

## II.    PLAINTIFF'S CONSTITUTIONAL CHALLENGES TO THE REVERSED SECURITY CLEARANCE DENIAL SHOULD BE DISMISSED

### A.    Plaintiff's Money Damages Claims Under the Constitution Should Be Dismissed For Lack of Jurisdiction

Plaintiff does not deny that his money damages claims under the Constitution are barred

by sovereign immunity, see Mot. 28-29.  Therefore, the Court should dismiss those claims and

need only consider whether plaintiff has viable, jurisdictionally proper claims for prospective

relief (i.e., declaratory or injunctive relief) under the First and/or Fifth Amendments.  As already

demonstrated, Mot. 18-28, and as further explained below, he does not.

### B.    Plaintiff's First Amendment Claim Should Be Dismissed[3]

#### 1.    *Plaintiff's First Amendment Claim Should Be Dismissed For Lack of Article III Standing*

As demonstrated in the Motion, plaintiff lacks standing under Los Angeles v. Lyons, 461

U.S. 95, 102 (1983), to seek prospective relief for First Amendment retaliation because "the facts

as alleged in the complaint do not come close" to indicating that there is any "real and

---

[3] Although the Court need not reach the issue, it should be noted that plaintiff alleges nothing to support any claimed retaliatory motive.  Indeed, the amended complaint now admits that the supposedly controversial manuscript was not even submitted to the CIA until *after* the allegedly retaliatory polygraph examination took place.  Am. Compl. ¶ 13.  The original complaint falsely stated that it was submitted beforehand, Orig. Compl. ¶ 12.

immediate" threat that plaintiff "'will again be subjected to the alleged illegality.'" Mot. 18-20. See also, e.g., Munsell v. Department of Agriculture, 509 F.3d 572, 581 (D.C. Cir. 2007) (First Amendment retaliation claim for prospective relief dismissed under Lyons because of failure to allege likelihood that violation will recur); Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005) (same); Sampson v. Washington Metro. Area Transit Authority, 2007 WL 1098709 at *6 (D.D.C. 2007) (same). Although it is plaintiff's burden to "clearly and specifically" demonstrate standing, Mot. 18-19, he does not even attempt to show any "real and immediate" threat that the allegedly illegal conduct will recur. Instead, he makes a series of half-arguments predicated on: (1) the capable-of-repetition doctrine, (2) the purported "continuing, present adverse effects" of the alleged conduct, and (3) the supposed unavailability of other adequate remedies at law.

Plaintiff's reliance on the capable-of-repetition doctrine should be rejected for precisely the same reasons the Supreme Court rejected it in Lyons.[4] First, assuming plaintiff actually has a viable First Amendment retaliation claim (which he does not, see infra 11-13) then he could have pursued a money damages remedy under Bivens v. Six Unknown Named Fed. Narcotics Agents, 403 U.S. 388 (1971) against the responsible officials in their individual capacity. Accordingly, his claim does not "evade review." Lyons, 461 U.S. at 110 (opportunity to pursue claim for

---

[4] Similarly meritless is plaintiff's passing attempt to claim a "pattern and practice" of CIA retaliation, Opp. 19 n. 7, and to rely on "voluntary cessation" decisions, Opp. at 19. The supposed "pattern and practice" is asserted in his counsel's newly drafted declaration, which is in turn based on counsel's experience filing lawsuits against the CIA. Zaid Decl. ¶¶ 3-5. Such statements cannot be considered here, supra 4-5, and are also improper hearsay under Fed. R. Evid. 602 & 802. In any event, such "oblique" statements about pattern and practice are insufficient to create standing. BMC, 28 F.3d at 1274; Lyons, 461 U.S. at 1667. Plaintiff's reliance on "voluntary cessation" doctrine is also barred by Lyons because his lack of standing is based not on any "voluntary cessation" of allegedly wrongful conduct, but on his failure to show any "real and immediate" threat that the conduct will recur. Lyons, 461 U.S. at 110.

damages for past unconstitutional conduct means that the claim does not "evade" review).

Second, the capable of repetition doctrine applies only in "exceptional situations," and only

when plaintiff can show that "he will again be subjected to the alleged illegality." Id. As

already demonstrated in the Motion, plaintiff has made no such showing.[5]

Plaintiff also asserts that the allegedly illegal conduct has "continuing, present adverse

effects as Sullivan's exposure to the past misconduct has chilled his willingness to subject

himself to the same type of retaliatory conduct he previously experienced." Opp. 20. As

discussed below, infra 12-13, this claim of "chill" is refuted by his own complaint. In any event,

"[t]o pursue an injunction or a declaratory judgment," plaintiff "must allege a likelihood of

future *violations* of [his] rights" by defendant, "not simply future *effects* from past violations."

BMC Marketing Corp., 28 F.3d at 1273 (emphasis in original) (citing Lyons, 461 U.S. at 1668 n.

8)). Unlike the claim in Matthews v. District of Columbia, 521 F. Supp. 2d 79 (D.D.C. 2007),

where the failure to receive due process could constitute a "continuing" injury, id. at 82,

plaintiff's First Amendment retaliation claim does not allege any continuing violation.

Finally, plaintiff cannot predicate standing on his unsupported assertion that he lacks any

other adequate remedy for the claimed First Amendment retaliation. First, contrary to plaintiff's

suggestion, Opp. 18, 21, the unavailability of a remedy at law does not create standing that

otherwise does not exist under Lyons. The Lyons Court considered alternate remedy only in the

alternative, on the assumption that the plaintiff could demonstrate standing on the basis of a

---

[5] In any event, "the mootness exception for disputes capable of repetition yet evading review ... will not revive a dispute which became moot before the action commenced." See Renne v. Geary, 501 U.S. 312, 320 (1991). In this case, plaintiff lacked standing long before commencing this litigation, i.e., when his security clearance denial was reversed, or at the latest, when his book was approved for publication.

pending damages suit.  461 U.S. at 111.  In any event, as explained above, if plaintiff had a

viable First Amendment retaliation claim (which he does not) he *would* have an adequate remedy

at law under <u>Bivens</u>.  Thus, even if plaintiff did have standing, equitable relief would be

inappropriate.  <u>Id.</u> (equitable relief only appropriate in the absence of adequate legal remedy).

Again, plaintiff does not attempt to demonstrate a "real and immediate" threat that the

supposedly illegal conduct will recur, and he could not do so even if he tried.  Plaintiff's  brief

states that he "continues to seek employment in his chosen career for positions that ordinarily

require a security clearance," Opp. 21 (citing Am. Compl. ¶ 36), but the cited paragraph in the

pleading says no such thing, and even if it did, his amended complaint would also need to

demonstrate, <u>inter alia</u>, that he will seek another security a clearance from the CIA, that the CIA

will deny his request, and that it will use the security clearance proceedings to discourage him

from publishing a book in the same manner it allegedly did before.  <u>See</u>, <u>e.g.</u>, <u>Lyons</u>, 461 U.S. at

109 (plaintiff must show that there will be a "repetition of his experience" to obtain prospective

relief).  Any such assertion would be not only speculative but downright incredible, particularly

given his own allegations that he has already received a security clearance, Mot. 18-20.

Nor can plaintiff base standing on the Publication Review Board's ("PRB") allegedly

retaliatory "delay" in approving his book for publication, Opp. 21.  First, plaintiff amended his

complaint to specifically *disclaim* any First Amendment challenge to the PRB's review process.

Am. Compl. ¶ 43. This disclaimer renders his complaint consistent with his own published book,

in which goes out of his way to thank the PRB for being "very accommodating" in the review

process, and defending the PRB from charges of "censorship" by other Agency authors.[6]  Even if plaintiff were permitted to retract this disclaimer, he still has not alleged a "real and immediate" threat that any allegedly retaliatory delay is likely recur.  To the contrary, plaintiff purports to describe two recent 2007 submissions to the PRB, and in neither instance does plaintiff suggest that the PRB's review was in any way delayed.[7]  Lyons, 461 U.S. at 1667 (no standing for prospective relief because complaint "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation . . . by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistence on his part").

> **2.    *Plaintiff Has Failed To Allege A First Amendment Retaliation Claim***

As discussed, Mot. 20-22, plaintiff fails to state a claim because plaintiff voluntarily submitted to the security clearance proceedings and publication review proceedings, and because neither proceeding resulted in any tangible adverse action being taken against him. Plaintiff essentially concedes that the cited decisions from other circuits would foreclose his First Amendment retaliation claim.  Opp. at 22 n.8.  He claims, however, that D.C. Circuit law is different, and allows him to bring a claim even though, according to his own allegations, the

---

[6]  See John F. Sullivan, Gatekeeper: Memoirs of a CIA Polygraph Examiner vii (Potomac Books, 2007) ("A final acknowledgement [sic] is to the CIA's Publications Review Board (PRB).  Of late, there has been some criticism of the PRB from Agency authors and *charges of censorship made against the Board.  My experience has been quite the opposite* in that I have found the PRB to have been *very accommodating.*  Redactions from manuscripts, articles, speeches, and lectures have been minimal, and I am most appreciative.") (emphasis added.)

[7]  In one of these encounters plaintiff claims that the PRB sent a letter that Sullivan "perceived" as intimidating.  Am. Compl. ¶ 36.  But this hardly reflects a "repetition of his experience" with alleged "delay."  Lyons, 461 U.S. at 109.  Also, plaintiff's "perception" is irrelevant. Lyons, 461 U.S. at 107 n. 8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").

allegedly "intimidating and harassing" security proceedings (to which he voluntarily submitted) resulted in favorable determinations. However, notwithstanding second-hand dicta about birthday parties in Tao v. Freeh, Opp. 21-22, D.C. Circuit *holdings* are fully consistent with other circuits (and with the Supreme Court) on this issue. See Penthouse Internat'l Ltd. v. Meese, 939 F.2d 1011 (D.C. Cir. 1990). See also Laird v. Tatum, 408 U.S. 1, 11 (1972) (First Amendment claims sustained only where there is some actual or threatened exercise of governmental power that is "regulatory, proscriptive, or compulsory in nature"). Here, exactly as in Penthouse, plaintiff's First Amendment claim fails because there simply is no "actual or threatened imposition of governmental power or sanction." Id. at 1015. According to plaintiff's own allegations, the security clearance denial was reversed early in the appeals process, his request for a security clearance was granted, and the publication of his book was approved. Plaintiff's assertion that the CIA has "authority" to impose and/or threaten sanctions, Opp. 22, therefore, is entirely irrelevant; it simply has not done so. See id.

Moreover, plaintiff's claim also fails because he has not alleged that defendant's supposed retaliation had any effect on his speech – in fact, his complaint conclusively demonstrates otherwise. Mot. 22-23. Plaintiff claims that the security clearance proceedings he chose to undertake were intimidating, and intended to discourage him from publishing his book, Am. Compl. ¶ 42. This Court need not decide, however, whether plaintiff (who claims to be an expert polygraph examiner and 30-year veteran of the CIA) was likely to have been "chilled" by such proceedings because his own complaint demonstrates that he was not. Plaintiff went ahead and published his book when the allegedly retaliatory proceedings were resolved in his favor. Am. Compl. ¶ 10. "And where a party can show no change in his behavior, he has quite plainly

shown no chilling of his First Amendment right to free speech." <u>Krieger</u>, 529 F. Supp.2d at 58

(internal formatting omitted); <u>Hatfill v. Ashcroft</u>, 404 F. Supp. 2d 104, 118-119 (D.D.C. 2005)

(dismissing First Amendment retaliation claim under Fed. R. Civ. P. 12(b)(6) because plaintiff

exercised First amendment rights after alleged retaliation occurred).

### B. Plaintiff's Due Process Liberty Interest Claim Should Be Dismissed

As demonstrated, plaintiff's due process claim is also jurisdictionally defective and

meritless. Mot. 23-28. Regarding jurisdiction, the claim should be dismissed for lack of

standing and mootness because even assuming that he has somehow been deprived of a liberty

interest, he has already been afforded more than sufficient process under the Fifth Amendment.

Mot. 27-28. Plaintiff does not deny that he was given notice of the CIA's security clearance

concerns and granted a "meaningful opportunity to be heard," but complains that the CIA has not

"agreed" that the information underlying its initial decision is inaccurate or provided him with

"assurances that the inaccurate information has been modified or otherwise corrected." Opp. 31-

32. But there is no reason for the CIA to "agree" that the information it relied on was

"inaccurate" because plaintiff himself has not denied the accuracy of the CIA's grounds for

denying a security clearance. To the contrary, plaintiff's appeal submissions show that he

himself *admits* that he removed classified documents from the CIA and that he used profanity

during his polygraph examination.[8] <u>See</u>, <u>e.g.</u>, Ex. B to Tormey Decl. (admitting to removal of

classified documents and use of profanity, albeit arguing that transgressions were not serious).

Further, the Court could not in any event assess the accuracy of the stated reasons for denying

---

[8] Indeed, plaintiff's failure to allege any inaccuracies is an independent reason to
dismiss this claim. <u>See</u> <u>Codd v. Velger</u>, 429 U.S. 624, 627-29 (1977).

the security clearance because doing so is flatly prohibited by the Supreme Court's decision in

Egan, and its progeny, which prohibits review of the merits of a security clearance.

        More fundamentally, there simply is no due process requirement whatsoever that plaintiff

be provided "notice" as to whether any perceived inaccuracies have been corrected, and certainly

no requirement that an agency "agree" with plaintiff's views and modify records accordingly.

Again, the "process due" in the liberty interest context, is simply a "name-clearing hearing."

See Doe v. Casey, 796 F.2d 1508, 1524 (D.C. Cir. 1986), aff'd in part, rev'd in part on other

grounds, Webster v. Doe, 486 U.S. 592 (1988).  "The sole purpose of this 'name-clearing

hearing' is to do just that – give the employee an opportunity to clear his or her name."  Id.  It

need not be formal, nor oral – "the fundamental requirement is that [plaintiff] have an

opportunity to be heard in a meaningful manner."  Id.; see also Doe v. Cheney, 885 F.2d 898,

910 (D.C. Cir. 1989); Dickson v. Office of Personnel Management, 828 F.2d 32, 41-42 (D.C.

Cir. 1987).  As explained in detail in the Motion, and as made clear from plaintiff's own

amended complaint and documents incorporated therein by reference, plaintiff received ample

process by these standards, Mot. 27-28.  Accordingly, since plaintiff already received all the

process that he could possibly be due, he lacks standing and his claim is moot (and has been

since 2005).  Munsell, 509 F.3d at 583 (where favorable decision cannot affect parties' rights,

claim is moot).

        Plaintiff's liberty interest claim is also subject to dismissal under Fed. R. Civ. P. 12(b)(6)

for a host of other reasons, Mot. 23-28.  First, plaintiff's attempt to claim a "tangible" alteration

in status on the basis of lost employment opportunities fails because "the 'loss of some

employment opportunities do[es] not . . . amount to an alteration of a legal right,' particularly

when the loss of employment flows directly from the modification of a security clearance, which itself represents only a change in the terms of an agency's exercise of its discretion." United States Information Agency v. Krc, 905 F.2d 389, 397 (D.C. Cir. 1990) (citing cases); see also, e.g., Mosrie v. Barry, 718 F.2d 1151, 1162 (D.C. Cir. 1983) ("financial loss and loss of some employment opportunities," including lecturing opportunities at several institutions where plaintiff had lectured previously, does not "amount to an alteration of a legal right.") Plaintiff argues otherwise, relying on an inaccurately altered quotation from a district court decision. See Ranger v. Tenet, 274 F. Supp. 2d 1, 7 (D.D.C. 2003). But the status change in Ranger was plaintiff's being fired from his job. See id. at 7-8. Plaintiff by contrast, can allege none of the recognized status changes, such as "a discharge from government employment or at least a demotion in rank and pay." See Smith v. Harvey, --- F.Supp.2d ---, 2008 WL 754863 at *5 (D.D.C. 2008) (Roberts, J.) (dismissing liberty interest claim for failure to allege status change) (quoting O'Donnell v. Barry, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998)).

Second, as explained, plaintiff has not alleged any liberty interest worthy of protection. Plaintiff's "reputation-plus" claim fails because, for one thing, he has not alleged a sufficiently public dissemination, Mot. 25. Plaintiff purports to distinguish Doe v. Cheney, on the ground that the plaintiff in that case consented to the dissemination, Opp. 27 n. 9, but plaintiff's own submissions now show that he too consented to dissemination of his security clearance status. Sull. Decl ¶ 10 (stating that he provided Raytheon with a Privacy Act waiver so they could inquire about his "clearance eligibility"). Also, the allegedly disseminated statement is not sufficiently defamatory because the denial of a security clearance does not bear on his character for honesty and integrity, Mot. 25. Plaintiff now alleges that he "believes" the CIA told

15

Raytheon that he did not have "current eligibility for access to classified information," Sull. Decl. 10. But even if the Court were to consider this improper attempt to amend his complaint, supra 4-5, the speculated statement to Raytheon is if anything even *less* stigmatizing than a statement that he was denied a security clearance, since it could simply mean that he had withdrawn his security clearance request, or not applied at all.

Plaintiff's "stigma" claim also fails, Mot. 26 & n. 11. Plaintiff's repeated assertions that the CIA continues to maintain unspecified "inaccurate" information about him is irrelevant because plaintiff has never identified any such "inaccurate" information, and has admitted the truth of the CIA's stated reasons for the security clearance denial, supra 13. In any event, there are no allegations suggesting that he has been automatically excluded from a definite range of employment opportunities, or that he has been broadly precluded from pursuing his chosen profession. See M.K. v. Tenet, 196 F. Supp. 2d 8, 16 (D.D.C. 2001) (citing O'Donnell, 148 F.3d at 1140-42). Plaintiff does not even claim to have pursued any employment opportunities since his security clearance denial was reversed, let alone indicate that he has been unsuccessful in that regard.[9] Quite simply, there is "nothing to suggest that [plaintiff] would be unable to gain employment in another government job, or in the private sector within [his] career field." Id. (dismissing under Rule 12(b)(6)). See also Logan v. Department of Veterans Affairs, 357 F. Supp. 2d 149, 156 (D.D.C. 2004) (liberty interest claim dismissed under Rule 12(b)(6) despite allegations that defendant maintained inaccurate report and was "compiling and disseminating inaccurate, derogatory information"); Croddy v. FBI, 2006 WL 2844261 *4 n. 5 (D.D.C. 2006)

---

[9] Plaintiff's counsel now admits that plaintiff is permitted to tell potential employers that he has never been denied a security clearance. Zaid Decl. ¶ 7.

(rejecting argument that merely "having damaging information in personnel files is sufficient to show that access to a profession has been foreclosed").

Finally, plaintiff's claim is also subject to dismissal under Rule 12(b)(6) because, as explained previously, he received ample process, <u>supra</u> 13-14, and also because he never requested a more formal name-clearing hearing after successfully appealing his security clearance denial, Mot. 28 n.12.  Plaintiff's response to the latter point, i.e., that he requested a "personal appearance" *before* the reversal, is irrelevant because the CIA could not possibly have known that plaintiff would still want a personal appearance after fully succeeding in the earliest stages of the appeal process, <u>see</u> cases cited in Mot. 28 n. 12.  Also, and in any event, due process in this context does not require a personal appearance, even if requested.  <u>Supra</u> 14.

### III.   THE RECENTLY ADDED APA CHALLENGE TO THE REVERSED SECURITY CLEARANCE DENIAL SHOULD BE DISMISSED

As explained, plaintiff's APA claim is also subject to dismissal on numerous grounds. First, he lacks standing to seek prospective relief because there is no alleged likelihood that the allegedly retaliatory security clearance proceedings/denial will recur, Mot. 29-30.  Second, his claim is moot because the supposedly "final" agency action he purports to challenge – i.e., the "inappropriately and unlawfully denied" security clearance, Am. Compl. ¶ 71 – was reversed on his own administrative appeal, Mot. 29-30.  The capable-of-repetition doctrine is inapplicable for several reasons: (1) the doctrine does not apply to revive claims, such as this one, rendered moot before litigation was commenced, <u>supra</u> 9 n. 5; (2) since the mootness was brought about by plaintiff's own actions (i.e., his successful administrative appeal), the challenged security clearance denial does not "evade" review, <u>Pharmachemie B.V. v. Barr Laboratories, Inc.</u>, 276 F.3d 627, 633 (D.C. Cir. 2002) (challenged conduct must "by its very nature" be so short in

duration as to evade review); (3) he has alleged no likelihood that the challenged conduct will

recur, Lyons, 461 U.S. at 110.  Plaintiff's unexplained claim that there is still "inaccurate"

information in his records is irrelevant because the agency action challenged is the security

clearance denial, Am. Compl. ¶ 71, not the unidentified and allegedly inaccurate records.[10]

His APA claim is also subject to dismissal under Egan and the CSRA.  Contradicting his

own complaint, id. ¶¶ 28, 71, plaintiff now asserts that his APA claim does not challenge the

merits of the agency's security clearance decision, and is therefore not barred by Egan.  This

argument waives and thus requires dismissal of his APA claim to the extent that it relies on his

assertion that the security clearance denial is grounded in "inaccurate" information.  In any

event, his claim is subject to dismissal in its entirety because it is precluded by the CSRA.  See,

e.g., cases cited in Mot. 32.  Plaintiff's only response (ironically) is to cite Egan and assert that

security clearance denials do not constitute "adverse actions" under the CSRA.  But even if

security clearance decisions and proceedings are not "adverse actions" under the CSRA, it would

not mean that they are subject to judicial review.  To the contrary, the "failure to include" any

relief "within the remedial scheme of so comprehensive a piece of legislation reflects a

congressional intent that no judicial relief be available."  Fornaro v. James, 416 F.3d 63, 67

---

[10]  Plaintiff cannot use the APA to try to correct inaccuracies in his records for numerous reasons: (1) he has identified no inaccuracy, and has in fact, admitted the truth of the CIA's stated grounds for denying the security clearance; (2) Egan prohibits this Court from reviewing the accuracy of the records underlying the security clearance; (3) maintaining inaccurate records is not "final" agency action reviewable under the APA, El-Shifa Pharmaceutical Industries Co. v. U.S. 2007 WL 950082 at *1 (D.D.C. 2007) (Roberts, J.) (defamatory statements not "final agency action"); (4) the Privacy Act already provides an "adequate remedy" for this challenge, so it is not subject to APA review, see, e.g., Mittleman v. King, 1997 WL 911801 at *4 (D.D.C. 1997); and (5) as noted infra, plaintiff opposition brief waives any APA claim that the security clearance denial is grounded in "inaccurate" information.

(D.C. Cir. 2005) (quoting Carducci v. Regan, 714 F.2d 171, 174-75 (D.C.Cir.1983)).  See also

Rollins v. Marsh, 937 F.2d 134, 137-40 (5th Cir. 1991) (Bivens claims and federal tort claims

based on allegedly retaliatory revocation of security clearance precluded by the CSRA).

　　　Finally, and perhaps most obviously, plaintiff's APA claim must be dismissed because

the challenged security clearance denial, which was reversed on direct administrative appeal,

does not constitute "final" agency action.  Mot. 32.  Contrary to plaintiff's suggestion, Opp. 38-

39, his alleged failure to get a position with the CIA does not render the challenged decision any

more "final" (though it does confirm that his APA claim is also precluded under the CSRA).

The challenged decision was by its terms subject to appeal, and plaintiff in fact succeeded in

reversing it on appeal, thus rendering it unmistakably clear that the agency had not "completed

its decision-making process."  Franklin v. Massachusetts, 505 U.S. 788, 797 (1992).

## IV.　PLAINTIFF'S NEWLY ADDED PRIVACY ACT CLAIMS AGAINST THE CIA AND DOJ ARE BASELESS AND SHOULD BE DISMISSED

　　　Plaintiff's counsel devotes nearly fifteen pages of his 55-page brief to repeating Privacy

Act arguments that the district court and D.C. Circuit rejected in Eddington v. CIA, C.A. No. 97-

0872 (D.D.C. 1999), aff'd 221 F.3d 195 (D.C. Cir. 2000) (unpublished disposition). Indeed, after

giving "full consideration" to these and other arguments, the D.C. Circuit ordered plaintiff's

counsel to show cause why he should not be sanctioned for filing a frivolous appeal.  Eddington,

221 F.3d 195.  The Privacy Act claims asserted here should be rejected for the same reasons.[11]

---

[11] While the government certainly agrees with the D.C. Circuit that these claims and
arguments are "frivolous," it never threatened to seek Rule 11 sanctions against plaintiff's
counsel, Opp. 40.  See Exs. A-I to Zaid Decl.  Defendant's counsel did ask plaintiff's counsel to
withdraw these claims, and to explain his good faith basis for asserting them under Rule 11.
These requests, however, were intended both as a courtesy to opposing counsel (in light of the
Court's inherent power to impose sanctions sua sponte), and to avoid the inevitable waste of

**A.     The disclosures fall squarely within the "Routine Use" exception to the Privacy Act**

As demonstrated, the litigation disclosures that occurred were authorized by the litigation routine use provisions of the DOJ and CIA and were thus clearly permissible under the Privacy Act, Mot. 33-37.  Plaintiff does not challenge the validity of these published routine uses, nor does he deny that they authorize disclosure of the three records attached to the motion to dismiss. Instead, plaintiff simply announces that his challenge is not to the disclosure of the "broader records," but to the disclosure of specific "privacy protected information," particularly his social security number, Opp. 40, 44, but also his home address, e-mail address, and phone number. Opp. 7, 46 & n. 16.  The obvious flaw in this response is that the "specific" information plaintiff challenges is all contained within the three lawfully disclosed "broader records."  It is thus irrelevant whether, as plaintiff asserts, his social security number, or home phone number, would constitute a "record" within the meaning of the Privacy Act if it were to be separately disclosed, Opp. 42-43.  Plaintiff does not (and cannot) deny that disclosure of the three "broader records" was a permissible routine use, and his Privacy Act claims must therefore be dismissed.

Although his briefing suggests otherwise, plaintiff's counsel knows full well that he cannot circumvent the applicable routine use provisions by simply announcing that his challenge is to specific information contained within the "broader record."  He tried the same tactic in Eddington, and his arguments (which are available on Westlaw) were not only rejected, but identified as "frivolous" by the D.C. Circuit.  See, e.g., Appellant's Opening Brief Eddington v. CIA, 1999 WL 34835370 (D.C. Cir.) (Eddington Brief) (arguing in Part II of the brief that the "CIA's disclosure of the Eddingtons' home address, unlisted telephone number, social security

_____

resources that would result from the need to litigate these claims.

20

numbers and agency employee numbers was a clear violation of the Privacy Act."); id. at *26 (claiming that plaintiff's never sought "to bring their home address, private unlisted telephone number, Social Security numbers or Agency employee numbers into issue"); Appellant's Reply Brief Eddington v. CIA, 1999 WL 34835370 *10 (D.C. Cir.) ("Eddington Reply") (arguing that even if attaching documents to motion was permissible, "this still would not relieve the CIA of its lawful obligation under the Privacy Act to at least redact the privileged personal information contained" in those documents). The D.C. Circuit's negative reaction is hardly surprising, since it is self-evident that authorization to disclose a record necessarily extends to the contents of that record. Indeed, the Privacy Act specifically defines "record" in terms of the information it contains. See 5 U.S.C. § 552a(a)(4) (defining record by reference to "any item, collection, or grouping of information" about an individual). Were it otherwise, agencies could never rely on their routine use provisions, and plaintiffs could routinely circumvent them by simply characterizing their claim as a challenge not to the disclosed record, but to this or that bit of information contained within the record.

Plaintiff's counsel does not attempt to distinguish the claims and arguments here from those rejected in Eddington, but instead relies on two purported "changes" in the law. First, he refers vaguely to a group of decisions arising out of Doe v. Herman, 1999 U.S. Dist. LEXIS 17302 (W.D.Va. Oct. 29, 1999), a district court decision that preceded the D.C. Circuit's decision in Eddington. Far from reflecting a "change" in the applicable law, Herman is indistinguishable from cases that plaintiff's counsel attempted to rely on (unsuccessfully) in Eddington. The case held simply that disclosure of a social security number could, by itself, constitute a violation Privacy Act in the absence of an applicable routine use provision. See id.

at *35-37.  This holding is no different from that of Vargas v. Shalala, 907 F. Supp. 1128 (N.D.

Ohio 1995), which plaintiff's counsel attempted to rely on in Eddington.  See Eddington Brief,

1999 WL 34835370 at *26.  As the district court and D.C. Circuit evidently recognized, such

cases are inapplicable where, as here, a routine use clearly authorizes disclosure of the "broader

record" containing the information.  Second, plaintiff cites as a change in law this Court's

"Notice Regarding Privacy and Public Access to Electronic Civil Case Files."  But this is not a

change in Privacy Act law at all.  As plaintiff himself acknowledges, this Notice was

promulgated "[i]n compliance with the Judicial Conference of the United States, and the

E-Government Act of 2002, as amended."  It could not, and does not purport to change, or

otherwise affect, the Privacy Act law applied by the D.C. Circuit in Eddington.[12]

     The remainder of plaintiff's routine use discussion – much of which is boilerplate and

appears to have been cut and pasted from the briefs rejected in Eddington – is also meritless.

First, since the disclosures are not actionable under the Privacy Act, plaintiff's discussion of

agency/principal law and the CIA's relationship with its counsel, Opp. 48-49, is as irrelevant

now as it was in Eddington.  See Eddington Brief & Reply.  Plaintiff's counsel also argues that

under 552a(e)(3)(B)-(C), defendants did not inform plaintiff "of this intended use of his SSN."

Opp. 47.  Again, this argument rehashes argument from Eddington, Eddington Brief at *21-22;

Eddington Reply at *15-16, and fails because it is predicated on plaintiff's untenable attempt to

distinguish between disclosure of a record and disclosure of its contents.  As noted, the

applicable routine use provisions are published in the Federal Register in accordance with the

_____

    [12]  Accordingly, even assuming that there was a violation of this Notice, which
defendant's counsel certainly did not intend to do, it would not give rise to liability under the
Privacy Act, or render plaintiff's Privacy Act claims any less frivolous.

Privacy Act.[13]  Finally, plaintiff's passing attempt to claim that these disclosures do not meet the

"compatibility" requirement of the Privacy Act is another meritless repetition of an argument his

counsel made more forcefully in Eddington.  E.g., Eddington Brief at *13 et seq.  As plaintiff

himself recognizes, Opp. 46, the compatibility of these litigation routine uses is recognized in the

legislative history of the Act itself.  See 120 Cong. Rec. 40,405, 40,884 (1974) (noting that

Justice Department disclosure in court of tax information in the course of "present[ing] evidence

against [an] individual" would represent a routine use and meet the compatibility requirement).

**B.**  **Plaintiff's Privacy Act Challenges are Subject to Dismissal on Numerous Other Grounds As Well**

Although plaintiff's newly added Privacy Act claims are clearly subject to dismissal on

routine use grounds, they are also subject to dismissal on several additional grounds.  First, the

claims should be dismissed because plaintiff himself placed these records (i.e., the challenged

security clearance denial and his appeal submissions) at issue in his litigation – indeed, they are

incorporated by reference into the amended complaint, Mot. 5 n. 2, 38-39.

Second, plaintiff cannot, as a matter of law, meet the "willful and intentional"

requirement under the Privacy Act because, inter alia, both agencies were acting pursuant to

unchallenged routine use provisions which on their face authorized disclosure of the records in

question, Mot. 39-41.[14]  See also Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984)

---

[13]  In any event, the statutory provisions plaintiff relies on, 5 U.S.C. 552a(e)(3)(B)-(C), are inapplicable.  They do not apply to the DOJ because DOJ did not ask plaintiff "to supply information" at any point, § 552a(e)(3).  They also do not apply to the CIA, because the Director of Central Intelligence has, pursuant to authority granted under the Privacy Act, exempted all CIA systems of records from the requirements of these provisions.  32 C.F.R. 1901.62(b).

[14]  Since plaintiff's failure to meet the willful and intentional requirement is apparent on the face of the amended complaint, his assertion that defense counsel's declaration raises "a

(no liability where disclosure pursuant to agency's unchallenged regulations).  Plaintiff's only

response is to assert that the initial failure to redact the social security number from one of the

documents violated this Court's above-discussed "Notice," as well as some unspecified CIA

"practice and policy" of redacting social security numbers,[15] Opp. 51-52.  But the "intentional or

willful" requirement of the Privacy Act "refers only to the intentional or willful failure of the

agency to abide by the Act."  Albright, 732 F.2d at 189 (emphasis added).  There are no

allegations suggesting that the CIA's or DOJ's actions meet this standard.  See White v. Office

of Personnel Management, 840 F.2d 85, 87 (D.C. Cir. 1988) (claim that agency violated its own

internal policy is "irrelevant" because complaint lacked any alleged factual basis to conclude that

agency's conduct was willful and intentional under the Privacy Act).[16]

Finally, these claims should also be dismissed because plaintiff now essentially admits

---

question of fact to be explored through discovery," Opp. 53, is incorrect, White, 840 F.2d at 87.
Instead, such matters outside the pleading only confirm what is evident on the face of the
pleading.  Indeed, plaintiff does not now deny that defendant immediately addressed his
concerns by substituting redacted records, nor does he suggest any reason to doubt counsel's
declaration that the failure to redact the social security number was anything other than
inadvertent.

[15] Plaintiff does not establish the terms of any such "practice and policy," or even its
existence, relying on his lawyer's improperly submitted declaration, see supra 8 n. 4, which in
turn relies on a single redacted document his counsel claims to have received for another client.

[16] Plaintiff's counsel asserts that the DOJ should reassign another attorney because, in
his view, defendants' counsel is a "necessary" fact witness to plaintiff's newly asserted Privacy
Act claims, Opp. 53 n. 18.  This is a remarkable position, given that plaintiff's counsel has
submitted an extensive declaration in support of his own client's claims (all purportedly based on
his own experience filing lawsuits against the CIA).  Zaid Decl. ¶ 3. In any event, Rule 3.7
addresses being an advocate at trial, not in pretrial filings, and since plaintiff's Privacy Act
claims are subject to dismissal as a matter of law, defendants' counsel is not a "necessary" fact
witness.  Plaintiff's suggestion, if accepted, would enable plaintiffs to disqualify opposing
counsel simply by asserting frivolous claims against them, as plaintiff has done here.  See
Eddington, 221 F.3d 195.

that he has alleged neither adverse effect (i.e., standing) nor actual damages.  Opp. 54 n. 19.  He claims, however, that he can now demonstrate these requirements because after defendants filed their motion to dismiss pointing out the lack of adverse effect or actual damages, plaintiff went out and purchased a credit report for $29.95.  Opp. 54; Sull. Decl. ¶ 15.  Again, the Court should reject this improper attempt to amend the complaint in briefing, supra 4-5, as well as plaintiff's obvious attempt to manufacture a Privacy Act injury that did not exist at the time of filing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (standing must be determined on the basis of facts as they existed at the time of filing).  Indeed, it did not even occur to plaintiff to spend money on a credit report[17] until long after he had asserted his Privacy Act claims, when defendants pointed out his lack of adverse effect and actual damages.  See Cacho v. Chertoff, 2006 WL 3422548 at *6 (D.D.C. 2006) (no adverse effect as a matter of law because plaintiff did not learn about the alleged disclosure until after filing suit).  This "injury" is not traceable to, or caused by, any alleged Privacy Act violation; it is at best, a "litigation expense" designed to avoid dismissal of plaintiff's otherwise frivolous money damages claims under the Privacy Act. See, e.g., Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir.1990) (plaintiff cannot "manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.").

## CONCLUSION

For the reasons stated, defendants respectfully request that the Court dismiss this action in its entirety.

---

[17]  Such reports are readily available free of charge, including under federal law.  See 15 U.S.C. § 1681j(a) & (c) (requiring reports to be made available upon request for free at least annually).

Dated: April 28, 2008                                  Respectfully submitted,

                                                       JEFFREY S. BUCHOLTZ
                                                       Acting Assistant Attorney General

                                                       JEFFREY A. TAYLOR
                                                       United States Attorney

                                                        /s/ Peter Bryce
                                                       ELIZABETH J. SHAPIRO (D.C. Bar 418925)
                                                       Peter Bryce (NY and IL Bars)
                                                       Trial Attorney
                                                       United States Department of Justice
                                                       Civil Division, Rm. 7308
                                                       20 Massachusetts Ave, NW
                                                       Washington, D.C.  20530
                                                       Telephone:  (202) 616-8335
                                                       Fax:  (202) 616-8470
                                                       E-mail: Peter.Bryce@usdoj.gov

                                                       *Counsel for Federal Defendants*